**CBRE VALUATION & ADVISORY SERVICES**

# APPRAISAL REPORT

## CBRE VALUATION & ADVISORY SERVICES
RICK SMITH, MAI, AI-GRS, ASA
169 WEST 2710 SOUTH CIRCLE, STE. 204E
ST. GEORGE, UT 84790

## DOYLE RED CLIFFS NCA ACQUISITION
266.42 Acres Located Adjacent North of the city limits of St. George, St. George City, Utah 84780
CBRE GROUP, INC. FILE NO.:    21-224NW-0463-1
IVIS CASE NO.                 L200107
BLM AGENCY CASE ID:           UTU-Doyle 95204

EFFECTIVE DATE OF VALUE:       MAY 28, 2021

CLIENT: DEPARTMENT OF THE INTERIOR, APPRAISAL AND VALUATION SERVICES OFFICE (AVSO)

**CBRE**

VALUATION & ADVISORY SERVICES



169 W 2710 S Circle, Ste. 204E
St. George, UT  84790

T  435-668-0056

www.cbre.com

July 8, 2021

Mr. Steven C. Groh, MAI, Review Appraiser
Department of the Interior, Appraisal and Valuation Services Office (AVSO)
One Denver Federal Center, Bldg. 46, Ste. 102
Denver, Colorado  80225
Phone:  (303) 969-5367
Email:   steven_groh@ios.doi.gov

RE:     DOYLE RED CLIFFS NCA ACQUISITION
        266.42 Acres Located Adjacent North of the city limits of St. George
        St. George City, Washington County, Utah  84780
        CBRE, Inc. File No.:    21-224NW-0463-1
        IVIS Case No.:          L200107
        BLM Agency Case ID: UTU-Doyle 95203

Dear Mr. Groh:

At your request and authorization, CBRE, Inc. has prepared an appraisal of the referenced property. My analysis is presented in the following Appraisal Report.

It is my understanding the BLM intends to acquire a portion of the subject 266.42-acre parcel equal in value to $3,800,000. The appraisal problem is to estimate the acreage required to equal that value.

The north, east, and west boundaries of the proposed acquisition establish the current property boundaries. The appraisal problem requires the appraiser to determine the southern boundary, by establishing an east-west line defined by the acreage of a proposed acquisition which equals a market value of $3,800,000.

As will be shown, the remainder parcel will be 213.14 acres and the acquisition parcel will be 53.28 acres.

Since the purchase would be a partial acquisition. The *Uniform Appraisal Standards for Federal Land Acquisitions 2016* Section 4.3.4.1, applies:

> *Under the Federal Rule, compensation in partial acquisitions is measured by the difference in the market value of the landowner's property before and after the government's acquisition, as discussed in Section 4.6.*

© 2021 CBRE, Inc.

Mr. Steven C. Groh, MAI
July 8, 2021
Page 2

The intended use of the appraisal is "as the basis for determination of fair market value in order to assure that the Government will deal fairly and equitably with each landowner."[1] It is not intended for any other use.

The proposed acquisition consists of a part of a single irregularly-shaped tract of undeveloped land in relatively undisturbed condition, containing 266.42 acres. Situated in unincorporated Washington County, Utah, adjacent north of the St. George city limits, and approximately 5,366 LF east of the city limits of Washington City (Green Springs master planned community), the property is located within the 62,000 acres Red Cliffs Desert Reserve, which was established in 1996 to protect the federally threatened Mojave desert tortoise.

Paramount to solving the appraisal problem is the application of law, specifically Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

> *In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

The above is pertinent to this appraisal assignment due to the designation of the Mojave Desert tortoise, a Federally listed species designated as an endangered species on August 4, 1989, and formally listed as threatened on April 2, 1990 by an accumulation of human-and disease-related mortality accompanied by habitat destruction, degradation, and fragmentation.

Washington County is home to the highest density of Mojave Desert tortoises in the United States. In an attempt to comply with the requirements of the Endangered Species Act (Act), Washington County has prepared a Habitat Conservation Plan (HCP) that included an application to the U.S. Fish and Wildlife Service (USFWS) for a Section 10(a)(1)(B) Incidental Take Permit for Mojave Desert tortoise, a Federally listed species. The HCP includes an incidental take permit for 1,169 animals and 12,264 acres of desert tortoise habitat and 31,282 acres of potential habitat (geographically isolated areas with no documented desert tortoise sign). The HCP established a wildlife reserve of approximately 62,000 acres, including 38,787 acres of Mojave Desert tortoise habitat. Within this area, uses are carefully controlled and all management actions place the desert tortoise as the highest priority. Outside the reserve, development of desert tortoise habitat will be allowed in designated take areas. Consistent with the directive of Public Law No. 104-333, § 309(f), the subject will be appraised disregarding the presence of all species listed as threatened or endangered or any proposed or actual designation as critical habitat.

The subject of this appraisal is identified as Doyle Red Cliffs NCA Acquisition located adjacent north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development. The property is more specifically described later in this appraisal.

The appraisal report will be used by the Appraisal and Valuation Services Office (AVSO) and the Bureau of Land Management (BLM), on behalf of the United States of America. While the public is not an intended user of the appraisal report, the Freedom of Information Act (FOIA), BLM

---

[1] BLM Manual H-2100-1 –ACQUISITION, Chapter II - Policy and Guidance, II-15



© 2021 CBRE, Inc.

Mr. Steven C. Groh, MAI
July 8, 2021
Page 3

policy, state public records law, and/or the Agreement to Initiate a Land Exchange (ATI) may result in the release of all or part of the appraisal report to others. The ATI has a provision for the appraisal documents to be made available to the public as part of the Notice of Decision process.

The intended use of the appraisal is "as the basis for determination of fair market value in order to assure that the Government will deal fairly and equitably with each landowner." It is not intended for any other use.

This appraisal report was prepared in accordance with the guidelines and regulations of:

- Uniform Standards of Professional Appraisal Practice 2020-2021 (USPAP);

- Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition (UASFLA);

- Additional requirements set forth by the contract and Statement of Work; and

- The Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

Based on the analysis contained in the following report, the value indications in fee simple interest (surface estate only) is concluded as follows:

| MARKET VALUE CONCLUSIONS IN FEE SIMPLE INTEREST AS OF MAY 28, 2021 | | | |
|---|---|---|---|
| Appraisal Premise | Size (Acres) | Value Conclusion | Value Per Acre |
| Larger Parcel (Before Acquisition) | 266.42 | $19,000,000 | $71,316 |
| Remainder Parcel (After Acquisition) | 213.14 | $15,200,000 | $71,316 |
| Acquisition Parcel (Difference Between Before & After) | 53.28 | $3,800,000 | |
| Part Acquired | 53.28 | $3,800,000 | |
| Damages | | $0 | |
| Compiled by CBRE, Inc. | | | |

## Hypothetical Conditions

Per the Statement of Work, the appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

- The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq). The use of the above hypothetical condition may have affected the assignment results.

  *The use of the above hypothetical condition may have affected the assignment results.*

## Extraordinary Assumption

- None noted

## Jurisdictional Exception

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) <u>Comment</u> states: "When reasonable exposure time is a component of the definition for the value



© 2021 CBRE, Inc.

Mr. Steven C. Groh, MAI
July 8, 2021
Page 4

opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of value under these Standards to a specific opinion of <u>exposure time</u>, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a <u>jurisdictional exception</u> to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).

## Legal Instructions

The following legal instruction was provided to the appraiser. Applicable law must be considered, including Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

> *In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

## Concluding Remarks

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of, and inseparable from, this letter.

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value. The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute. It also conforms to Uniform Appraisal Standards for Federal Land Acquisitions, 6th Edition (UASFLA).

The intended use and user of my report are specifically identified in my report as agreed upon in my contract for services and/or reliance language found in the report. As a condition to being granted the status of an intended user, any intended user who has not entered into a written agreement with CBRE in connection with its use of my report agrees to be bound by the terms and conditions of the agreement between CBRE and the client who ordered the report. No other use or user of the report is permitted by any other party for any other purpose. Dissemination of this report by any party to any non-intended users does not extend reliance to any such party, and CBRE will not be responsible for any unauthorized use of or reliance upon the report, its conclusions or contents (or any portion thereof).



© 2021 CBRE, Inc.

Mr. Steven C. Groh, MAI
July 8, 2021
Page 5

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if CBRE can be of further service, please contact me.

Respectfully submitted,

CBRE - VALUATION & ADVISORY SERVICES

Rick Smith, MAI, AI-GRS, ASA | Director
UT Certified General Appraiser #5450513-CG00
www.cbre.us/people-and-offices/richard-c-smith
Phone: 435-668-0056
Email: Rick.Smith1@cbre.com



© 2021 CBRE, Inc.

# Table of Contents

Table of Contents ................................................................................................................ vi

Certification ...................................................................................................................... i

Subject Photographs (Photographs Taken March 4, 2021) ...................................................iv

Executive Summary ........................................................................................................ xvi

Description of Scope of Work ............................................................................................ 1

Area Analysis ................................................................................................................. 18

Site Analysis (Larger Parcel) ........................................................................................... 49

Washington County Zoning (Larger Parcel) ....................................................................... 64

Tax and Assessment Data (Larger Parcel) ......................................................................... 70

Highest and Best Use (Larger Parcel) ............................................................................... 71

Land Value (Larger Parcel) .............................................................................................. 77

Remainder Parcel Analysis ............................................................................................. 150

Reconciliation of Value .................................................................................................. 154

Assumptions and Limiting Conditions .............................................................................. 156

**ADDENDA**
    A  ENGAGEMENT CONTRACT
    B  STATEMENT OF WORK
    C  TITLE REPORT
    D  QUALIFICATIONS



© 2021 CBRE, Inc.

# Certification

I certify to the best of my knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  I have performed no appraisal assignments, as appraisers or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

9.  Rick Smith, MAI, AI-GRS, ASA has made a personal inspection of the property that is the subject of this report on March 30, 2021. The effective date of value is the date in which my final research was completed, or May 28, 2021.

10. Katie Smith provided assistance in data gathering and analysis of general market data.  No one else provided significant real property appraisal assistance to the person signing this certification.

11. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

12. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives, subject to the requirements of the UASFLA, Section 1.15 (pages 54 and 55).

13. As of the date of this report, Rick Smith, MAI, AI-GRS has completed the continuing education program for Designated Members of the Appraisal Institute.

14. The appraisal was developed, and the appraisal report was prepared in conformity with the Uniform Appraisal Standards for Federal Land Acquisitions.

15. The appraisal was developed, and the appraisal report prepared in conformance with the Appraisal Standards Board's Uniform Standards of Professional Appraisal Practice.

16. Rick Smith, MAI, AI-GRS, ASA has made a physical inspection of the property appraised and that the owner of the property (James Doyle) was given the opportunity to accompany the appraiser on the property inspection. Mr. The appraiser met with Mr. Doyle at the property at the commencement of inspection. Mr. Doyle did not accompany the appraiser during the inspection, but was accompanied by Kent Heideman, Mr. Doyle's representative.



© 2021 CBRE, Inc.

## Certification (Cont.)

It is my opinion that the Market Values of the fee simple interest (surface & mineral estate) of Doyle Red Cliffs NCA Acquisition, as of May 28, 2021, is:

| MARKET VALUE CONCLUSIONS IN FEE SIMPLE INTEREST AS OF MAY 28, 2021 | | | |
|---|---|---|---|
| Appraisal Premise | Size (Acres) | Value Conclusion | Value Per Acre |
| Larger Parcel (Before Acquisition) | 266.42 | $19,000,000 | $71,316 |
| Remainder Parcel (After Acquisition) | 213.14 | $15,200,000 | $71,316 |
| Acquisition Parcel (Difference Between Before & After) | 53.28 | $3,800,000 | |
| Part Acquired | 53.28 | $3,800,000 | |
| Damages | | $0 | |
| Compiled by CBRE, Inc. | | | |

### Hypothetical Conditions

Per the Statement of Work, the appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

*The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq)..*

*The use of the above hypothetical condition may have affected the assignment results.*

### Extraordinary Assumption

- None noted.

### Jurisdictional Exception

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) Comment states: "When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of value under these Standards to a specific opinion of exposure time, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a jurisdictional exception to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).



© 2021 CBRE, Inc.

## Certification (Cont.)

### Legal Instructions

The following legal instruction was provided to the appraiser. Applicable law must be considered, including Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

> *In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

The value conclusion reported above are subject to the Assumptions and Limiting Conditions identified in the attached appraisal report.

Rick Smith, MAI, AI-GRS, ASA | Director
UT Certified General Appraiser #5450513-CG00

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

## Subject Photographs (Photographs Taken March 4, 2021)



Aerial View (Washington County Mapping System) – Larger Parcel Identified

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



**Aerial View (Google Earth Mapping System)**

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

v



© 2021 CBRE, Inc.

**Subject Photographs**


Area 1 – Looking northerly


Area 1 – Looking northwesterly


Area 1 – Looking westerly


Area 2 – Looking westerly


Area 2 – Looking northwesterly


Area 2 – Looking northerly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



Area 2 – Looking northeasterly

Area 2 – Looking easterly





Area 3 – Looking northerly

Area 3 – Looking northeasterly

Area 3 – Looking easterly



Area 3 – Looking southeasterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Area 3 – Looking southerly

Area 3 – Looking southwesterly

Area 3 – Looking westerly

Area 3 – Looking northwesterly

Area 4 – Looking northerly

Area 4 – Looking northeasterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



Area 4 – Looking easterly

Area 4 – Looking southerly

Area 4 – Looking southwesterly

Area 4 – Looking westerly

Area 4 – Looking northwesterly

Area 5 – Looking northeasterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**


Area 5 – Looking northerly


Area 5 – Looking northwesterly


Area 5 – Looking westerly


Area 5 – Looking southwesterly


Area 5 – Looking southerly


Area 5 – Looking southeasterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

**CBRE**

© 2021 CBRE, Inc.

**Subject Photographs**



Area 5 – Looking easterly

Area 6 – Looking southeasterly

Area 6 – Looking southerly

Area 6 – Looking southwesterly

Area 6 – Looking westerly

Area 6 – Looking northwesterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



Area 6 – Looking northerly

Area 6 – Looking northeasterly

Area 6 – Looking easterly

Area 7 – Looking northerly

Area 7 – Looking northeasterly

Area 7 – Looking easterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



Area 7 – Looking southeasterly

Area 7 – Looking southerly

Area 7 – Looking southwesterly

Area 7 – Looking westerly

Area 8 – Looking southerly

Area 8 – Looking southwesterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Subject Photographs**



Area 8 – Looking westerly

Area 8 – Looking northwesterly

Area 8 – Looking northerly

Area 8 – Looking northeasterly

Area 8 – Looking easterly

Area 8 – Looking southeasterly

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Area 8 – Looking southerly (from Bluff Hill Drive)



Area 8 – Looking westerly along Bluff Hill Drive

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

# Executive Summary

| | |
|---|---|
| **Property Name** | Doyle Red Cliffs NCA Acquisition |
| **Location** | Adjacent north of the city limits of St. George, Unincorporated Washington County, UT 84780 |
| **Parcel Number(s)** | 6600-NP-1 |
| **Client** | Department of the Interior, Appraisal and Valuation Services Office (AVSO) |
| **Highest and Best Use** | |
| As Vacant (Before Condition) | Low Density, single-family residential development |
| As Vacant (After Condition) | Low Density, single-family residential development |
| **Property Rights Appraised** | Fee Simple Estate |
| **Date of Report** | July 8, 2021 |
| **Effective Date of Value** | May 28, 2021 |
| **Date of Inspection** | March 30, 2021 |
| **Larger Parcel** | 266.42 AC |
| **Zoning** | OST (Open Space Transitional), Red Cliffs Desert Reserve and Red Cliffs National Conservation Area |
| **Buyer Profile** | Developer |

| MARKET VALUE CONCLUSIONS IN FEE SIMPLE INTEREST AS OF MAY 28, 2021 | | | |
|---|---|---|---|
| Appraisal Premise | Size (Acres) | Value Conclusion | Value Per Acre |
| Larger Parcel (Before Acquisition) | 266.42 | $19,000,000 | $71,316 |
| Remainder Parcel (After Acquisition) | 213.14 | $15,200,000 | $71,316 |
| Acquisition Parcel (Difference Between Before & After) | 53.28 | $3,800,000 | |
| Part Acquired | 53.28 | $3,800,000 | |
| Damages | | $0 | |
| Compiled by CBRE, Inc. | | | |

## Hypothetical Conditions

- Per the Statement of Work, the appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996):

  *The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

  *The use of the above hypothetical condition may have affected the assignment results.*

## Extraordinary Assumption

- None noted.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

### Jurisdictional Exception

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) Comment states: "When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of value under these Standards to a specific opinion of exposure time, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a jurisdictional exception to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).

### Legal Instructions

The following legal instruction was provided to the appraiser. Applicable law must be considered, including Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

*In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

## STRENGTHS, WEAKNESSES, OPPORTUNITIES AND THREATS (SWOT)

### Strengths / Opportunities (As of May 28, 2021)

- Subject has legal access along a recorded access easement from Bluff Hill Drive.

- The subject is located in unincorporated Washington County, adjacent to the city limits of St. George. The subject is also within the city of St. George "annexation plan", and if annexed would have immediate accessibility to all public utilities.

- High demand for residential housing has increased demand for larger residential land parcels.

- Subject is located approximately 2.5 miles northeast of downtown St. George.

- Subject is located in the immediate growth path of St. George City/Washington City.

### Weaknesses / Threats (As of May 28, 2021)

- Improved road access is located to the east at Bluff Hill Drive. Bluff Hill Drive would require extension approximately 5,402 LF to subject.

- Existing water lines cross the northwesterly section of the property but would be best delivered to what would be the first takedown section of the subject if developed via the access easement along the southern portion of the site located 1,356 LF to the east at Water Line Road.

- Power crosses the subject parcel at the northwest corner of the property and crosses the subject along the south property line. However, power would be delivered from the substation

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

- located approximately 866 LF to the west and could be under-slung along the existing power poles.
- Sewer would be delivered to the subject along the existing access easement from Bluff Hill Drive approximately 5,402 LF from the east.

## OWNERSHIP AND PROPERTY HISTORY

The subject parcel is located within the Red Cliffs Desert Reserve (formally known as the Desert Tortoise Reserve or Habitat Conservation Plan) and is privately held by James P. Doyle. The following recorded transactions involving the subject were discovered:

- January 26, 2015 (WD Doc. 20150002700) – The property transferred from Environmental Land Technology LTD to James P. Doyle. This is a non-arm's length transfer of ownership between related parties.

The following is a summary of how Mr. Doyle obtained title to the subject property:

On June 30, 2010, a Settlement Agreement was approved by the U.S. Bankruptcy Court ordering a division of the 1,494.33 acres held by ELT.  Per the Agreement, on September 13, 2010, ELT transferred (1) 153.29 acres to Robert M. Brennan (principal with Brennan Holdings, LLC) via Document No. 20100030704 and 821.58 acres via Document No. 20100030706 (no monies exchanged), (2) 153.29 acres to His Family Matters (Alan Carter), and (3) 92.0 acres to the State of Utah.  ELT retained 274.17 acres of its holdings (includes the subject 266.42 acres).

In October 1995, title of lands that included the subject properties was transferred from Rocky Mountain Ventures to Environmental Land Technology LTD; however, this <u>was not</u> an arm's-length transaction since both entities are the same (James Doyle).

The most recent arm's-length transaction that included the subject property occurred on February 1, 1983 (agreement referenced in a recorded document dated December 16, 1986 and December 17, 1986 in Documents 00343937 00343938) via a "Special Use Lease Agreement" (Nos. 537 and 538) between Rocky Mountain Ventures (James Doyle – Environmental Land Technology LTD) and the State of Utah (Division of State Lands and Forestry).   The Lease Agreements involved 2,475 acres and were essentially a land development agreement that allowed the State of Utah to participate in the development of the property through shared revenues when individual lots/parcels were sold.   The Lease Agreement was for a term of 51 years that began on September 1, 1983 with renewal options.   The Lease Agreement during the Pre-Development Phase required payment to the lessor of $10.00 per acre or 0.2% of the market value of the property, whichever was greater. The Development Phase required a payment of $100 per acre, or 1% of the market value (per the County Assessor) of each unsubleased residential unit (excluding improvements), whichever was greater.  After occupation of completed improvements by lessee, the payment increased to 1.25% of the market value (per the County Assessor) of each improved

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

residential dwelling unit (excluding improvements), or $250 per single dwelling unit, whichever was greater.  The Agreement had default provisions allowing the State of Utah to take possession.  As noted previously, the State of Utah was part of the 2006 and 2010 Settlement Agreements.  Based on unpaid revenues owed, the State of Utah received 92.0 acres in the final 2010 Settlement Agreement.  The development agreement was not based on an established value but was a shared revenue agreement and does not contribute to my analysis to determine market value of the land.

Because of its location within the Red Cliffs Desert Reserve, land use restrictions prohibit development of the property. As such, it is the intent of the federal government to acquire the subject property. In October 1995, title was transferred from Rocky Mountain Ventures to Environmental Land Technology LTD; however, this was not an arm's length transaction since both entities are related to the same owner(s). Prior to this transfer, Rocky Mountain Ventures acquired the subject property as part of a larger tract from the State of Utah in 1989 (recorded in early 1990).

On November 12, 1996, President Clinton signed federal legislation (commonly referred to as the Parks Bill) into law. This legislation is identified by the following heading and contains the specific language given below that heading.

### PUBLIC LAW NO. 104-333/;110STAT.4093

*"In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such a property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973."*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

# Description of Scope of Work

This Appraisal Report is intended to comply with the reporting requirements set forth under Standards Rule 2 of USPAP.  The scope of the assignment relates to the extent and manner in which research is conducted, data is gathered, and analysis is applied.

## EFFECTIVE DATE OF VALUE

The subject was inspected on May 28, 2021. The date of completion of my research for this appraisal assignment was May 28, 2021, the effective date of value.

## PROPERTY CHARACTERISTICS

The subject property is identified as 266.42 acres held in ownership by James P. Doyle located adjacent north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development. The subject is "L" shaped with rolling topography. The parcel is within the growth path of St. George, located approximately 0.79 miles north of existing development (city of St. George), and approximately 1.02 miles west of the Green Springs master planned community (city of Washington). Thus, the subject parcel is considered to have near-term development potential.

## HYPOTHETICAL CONDITIONS

- The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of suck property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).

    *This hypothetical condition clarifies what is effectively established by the definition of market value, that the subject of this appraisal is appraised as if in private ownership and available to the open-market for its highest and best use.  Because of the directive to apply this hypothetical condition, its use may have affected the assignment results.*

## EXTRAORDINARY ASSUMPTION

- None noted.

## JURISDICTIONAL EXCEPTION

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) Comment states: "When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of value under these Standards to a specific opinion of exposure time, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a jurisdictional exception to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).

## INTENDED USE OF REPORT

The intended use of the appraisal is "as the basis for determination of fair market value in order to assure that the Government will deal fairly and equitably with each landowner." It is not intended for any other use. [2]

## CLIENT

The client is the Department of the Interior, Appraisal and Valuation Services Office (AVSO).

## INTENDED USER(S) OF REPORT

The appraisal report will be used by the Appraisal and Valuation Services Office (AVSO) and the Bureau of Land Management (BLM), on behalf of the United States of America.

> Intended Users - the intended user is the person (or entity) who the appraiser intends will use the results of the appraisal.  The client may provide the appraiser with information about other potential users of the appraisal, but the appraiser ultimately determines who the appropriate users are given the appraisal problem to be solved.  Identifying the intended users is necessary so that the appraiser can report the opinions and conclusions developed in the appraisal in a manner that is clear and understandable to the intended users.  Parties who receive or might receive a copy of the appraisal are not necessarily intended users.  The appraiser's responsibility is to the intended users identified in the report, not to all readers of the appraisal report. [3]

---

[2] BLM Manual H-2100-1 –ACQUISITION, Chapter II - Policy and Guidance, II-15

[3] Appraisal Institute, *The Appraisal of Real Estate*, 14th ed. (Chicago: Appraisal Institute, 2013), 50.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Scope of Work

## PURPOSE OF THE APPRAISAL



Note: Exhibit provided by client.

The BLM intends to acquire a portion of the subject 266.42-acre parcel (outlined in red) equal in value to $3,800,000. The appraisal problem is to estimate the acreage required to equal that value, with such acreage adopting the north, east, and west boundaries of the larger parcel.

The appraisal problem requires the appraiser to determine the southern boundary, by establishing an east-west line defined by the acreage of a proposed acquisition which equals a market value of $3,800,000.

Since the purchase would be a partial acquisition. The Uniform Appraisal Standards for Federal Land Acquisitions 2016 Section 4.3.4.1, applies:

> Under the Federal Rule, compensation in partial acquisitions is measured by the difference in the market value of the landowner's property before and after the government's acquisition, as discussed in Section 4.6.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

3

© 2021 CBRE, Inc.



Therefore, the appraiser must value the entire larger parcel, define a hypothetical parcel equal in value to $3,800,000, and appraise the remainder parcel (after extracting the hypothetical parcel from the larger parcel).

The hypothetical acquisition parcel would be established by the difference between the larger parcel and the hypothetical remainder.

## LEGAL DESCRIPTION (BEFORE CONDITION)

### Doyle Red Cliffs NCA Acquisition

The subject legal description provided by the client is as follows:

> *BEGINNING AT THE NORTH QUARTER (1/4) CORNER OF SECTION 8, TOWNSHIP 42 SOUTH, RANGE 15 WEST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE S 88°37'52" E ALONG THE NORTH LINE OF SAID SECTION 2694.40 FEET TO THE NORTHEAST CORNER OF SAID SECTION; THENCE S 1°19'07" W ALONG THE EAST LINE OF SAID SECTION 1989.90 FEET; THENCE N 88°43'56" W 824.18 FEET; THENCE S 1°20'06" W 665.27 FEET TO A POINT ON THE CENTER SECTION LINE OF SAID SECTION; THENCE S 1°21'42" W 2661.38 FEET TO A POINT ON THE SOUTH LINE OF SECTION SAID SECTION; THENCE N 88°49'37" W ALONG THE SOUTH LINE OF SAID SECTION 862.07 FEET; THENCE S 1°15'45" W 333.21 FEET; THENCE N 88°51'28" W 1012.04 FEET TO THE CENTER OF SECTION 17; THENCE N 1°15'14" E 333.75 FEET TO THE SOUTH QUARTER (1/4) CORNER OF SAID SECTION; THENCE N 1°23'04" E ALONG THE CENTER SECTION LINE OF SAID SECTION 2662.73 FEET TO THE COMMON CORNER OF FRACTIONAL LOTS 6, 7, 10, AND 11; THENCE N 1°23'04" E ALONG SAID CENTER SECTION LINE 2661.69 FEET TO THE POINT OF BEGINNING.*
>
> *LESS AND EXCEPTING THEREFROM the following described property as conveyed to the United States of America by Warranty Deed recorded as Doc. No. 20160036753 , Official Washington County Records, more particularly described as follows:*
>
> *A parcel of land situated in Government Lot 2 of Section 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, being more particularly described as follows:*
>
> *BEGINNING at the 1/4 Section corner of Sections 8 and 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, marked with a stone as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, identical with South Quarter (1/4) corner of Section 8, as described in Document No. 20150002700;*
>
> *THENCE, South 88°49'37" East, on the line between Sections 8 and 17, a distance of 1029.84 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the POINT OF BEGINNING as described in Document No. 20060046423, filed October 6, 2006, in the Official Records of Washington County, Utah.*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



*THENCE, South 1°10'23" West, a distance of 380.50 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the Southwest corner of the portion of Lot 2 described in Document No. 20060046423, and at intersection with the North boundary of the parcel described in Document No. 840052, filed September 11, 2003, in the Official Records of Washington County, Utah.*

*THENCE, North 88°57'01" West, a distance of 1030.38 feet, along a line, identical with the North boundary of the parcel described in Document No. 840052, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, at intersection with the North and South centerline of Section 17;*

*THENCE, North 1°15'14" East, along North and South centerline of Section 17, a distance of 382.72 feet, to the POINT OF BEGINNING.*

## LEGAL DESCRIPTION (AFTER CONDITION)

### Doyle Red Cliffs NCA Acquisition

The subject legal description provided by the client and appraiser are as follows:

*BEGINNING AT THE NORTH QUARTER (1/4) CORNER OF SECTION 8, TOWNSHIP 42 SOUTH, RANGE 15 WEST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE S 88°37'52" E ALONG THE NORTH LINE OF SAID SECTION 2694.40 FEET TO THE NORTHEAST CORNER OF SAID SECTION; THENCE S 1°19'07" W ALONG THE EAST LINE OF SAID SECTION 1989.90 FEET; THENCE N 88°43'56" W 824.18 FEET; THENCE S 1°20'06" W 665.27 FEET TO A POINT ON THE CENTER SECTION LINE OF SAID SECTION; THENCE S 1°21'42" W 2661.38 FEET TO A POINT ON THE SOUTH LINE OF SECTION SAID SECTION; THENCE N 88°49'37" W ALONG THE SOUTH LINE OF SAID SECTION 862.07 FEET; THENCE S 1°15'45" W 333.21 FEET; THENCE N 88°51'28" W 1012.04 FEET TO THE CENTER OF SECTION 17; THENCE N 1°15'14" E 333.75 FEET TO THE SOUTH QUARTER (1/4) CORNER OF SAID SECTION; THENCE N 1°23'04" E ALONG THE CENTER SECTION LINE OF SAID SECTION 2662.73 FEET TO THE COMMON CORNER OF FRACTIONAL LOTS 6, 7, 10, AND 11; THENCE N 1°23'04" E ALONG SAID CENTER SECTION LINE 2661.69 FEET TO THE POINT OF BEGINNING.*

*LESS AND EXCEPTING THEREFROM the following described property as conveyed to the United States of America by Warranty Deed recorded as Doc. No. 20160036753 , Official Washington County Records, more particularly described as follows:*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

*A parcel of land situated in Government Lot 2 of Section 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, being more particularly described as follows:*

*BEGINNING at the 1/4 Section corner of Sections 8 and 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, marked with a stone as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, identical with South Quarter (1/4) corner of Section 8, as described in Document No. 20150002700;*

*THENCE, South 88°49'37" East, on the line between Sections 8 and 17, a distance of 1029.84 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the POINT OF BEGINNING as described in Document No. 20060046423, filed October 6, 2006, in the Official Records of Washington County, Utah.*

*THENCE, South 1°10'23" West, a distance of 380.50 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the Southwest corner of the portion of Lot 2 described in Document No. 20060046423, and at intersection with the North boundary of the parcel described in Document No. 840052, filed September 11, 2003, in the Official Records of Washington County, Utah.*

*THENCE, North 88°57'01" West, a distance of 1030.38 feet, along a line, identical with the North boundary of the parcel described in Document No. 840052, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, at intersection with the North and South centerline of Section 17;*

*THENCE, North 1°15'14" East, along North and South centerline of Section 17, a distance of 382.72 feet, to the POINT OF BEGINNING.*

*LESS AND EXCEPTING THEREFROM* the following described property (Acquisition Parcel) described as follows:

Beginning at the North Quarter (1/4) Corner of Section 8, Township 42 South, Range 15 West, Salt Lake Base and Meridian, and running thence S 88°37'52" E along the north line of said Section 2,694.40 feet to the northeast corner of said Section; thence S 1°19'07" W along the east line of said section 861.44 feet; thence N 88°49'37" W 2,694.40 feet; thence N 1°23'04" E 861.44 feet to the Point of Beginning.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



Scope of Work

## Doyle Red Cliffs NCA Acquisition Identification Map



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

7

CBRE

© 2021 CBRE, Inc.

Scope of Work

## Assessor Parcel Map



As noted above, the subject site consisting of 266.42 acres, more or less, with some land area at the southwest portion of the subject considered unsuitable for development (steep hillside and flood zone). If incorporated in to the city of St. George, these areas would likely be included in the St. George Hillside Overlay (HDOZ). While land in HDOZ can be developed, proposed projects in the zone limits development densities and provides specific development incentives to transfer underlying zone densities from hillsides (sending areas), to less steep slopes or more safe development areas (receiving areas), within a development.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## DEFINITION OF MARKET VALUE

Market value is defined as:

*Market value is the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would have sold on the effective date of value, after a reasonable exposure time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property. [Interagency Land Acquisition Conference, Uniform Appraisal Standards for Federal Land Acquisitions, 6th ed., Section 1.2.4, p 10, The Appraisal Foundation, 2017].*

## PROPERTY INTEREST TO BE APPRAISED

Fee Simple Estate subject to reservations and exceptions of record (surface rights only). Fee simple estate is defined as:

*Fee Simple Estate* - Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat.[4]

## OUTSTANDING RIGHTS

### Reservations

The appraised property is to include fee simple estate subject to reservations of record. A Commitment for Title Insurance prepared by Southern Utah Title Company File No. 213147 dated April 2, 2018 was provided by the client and is included in the Addenda. The Title Report identifies 21 exceptions to title including property taxes, public utility easements and rights-of-way. The impact of these and exceptions to title on each parcel will be discussed later.

### Personal Property

None identified.

### Improvements

There are no structural improvements or significant site improvements.

### Property Access

According to the Statement of Work, the parcel has physical access described as follows:

*The nearest public road is Cottonwood Road. Because this property is within the Red Cliff's NCA and the Red Cliff Desert Reserve, access off the county road is prohibited except for administrative uses. Access to the parcel is via walking the power line maintenance road or the water line road. There is a trailhead that starts at the Middleton Water tank at the end of E. 1200 N. It is also possible to park near the Pacificorp substation along Cottonwood Road and walk easterly to the property.*

---

[4] Appraisal Institute, The Dictionary of Real Estate Appraisal, 6th ed. (Chicago: Appraisal Institute, 2015), 90.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

My research indicates that the only *legal access* to the subject is along a 5,402 LF access easement granted to James P. Doyle in June 2016 providing access from Bluff Hill Drive within the Westgate Hills Subdivision at Green Springs to the subject. The following shows the length of the 60' wide access easement beginning at Bluff Hill Drive and extending to the subject.



Note: The above legal is from the Doyle Access Easement per Grant of Easement recorded via Doc. No. 20160020340 in Washington County Records and drawn by the appraiser using DeedPlotter.



The above shows the Doyle access easement as drawn by the appraiser using DeedPlotter. It is not meant to be a survey but a general representation of the 60' wide easement commencing at Bluff Hill Drive and extending to the subject.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## Water

No water rights are associated with the subject parcel. Existing water lines cross the northwesterly section of the property but would be best delivered to what would be the first takedown section of the subject if developed via the access easement along the southern portion of the site located 1,356 LF to the east at Water Line Road.



The above shows the distance from the Water Line Road to the subject as drawn by the appraiser using the Washington County mapping tool. It is not meant to be a survey but a general representation of the distance commencing at Water Line Road and extending to the subject.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## Electric Power

Power crosses the subject parcel at the northwest corner of the property and also crosses the subject just inside the south property line as shown below. The southern easement is a 100' wide (high voltage) and subject to a Use Agreement for construction and Maintenance executed by and between PacifiCorp doing business in Utah as Utah Power & Light Company and Dixie Escalante Rural Electric Association, Inc.



Power crosses the subject parcel at the northwest corner of the property and crosses the subject along the south property line. Power would be delivered from the substation located approximately 866 LF to the west and could be under-slung along the existing power poles.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Sewer Service

Sewer would be delivered to the subject along the existing access easement from Bluff Hill Drive approximately 5,402 LF from the east.



Note: The above legal is from the Doyle Access Easement per Grant of Easement recorded via Doc. No. 20160020340 in Washington County Records drawn by appraiser using DeedPlotter.



The above shows the Doyle access easement as drawn by the appraiser using DeedPlotter. It is not meant to be a survey but a general representation of the 60' wide easement commencing at Bluff Hill Drive and extending to the subject.

## Mineral Rights

The BLM reports the following in the Statement of Work:

> There have not been any mineral reports completed for this private parcel. The minerals are not owned by the current landowner and therefore will not be transferred with the land. The parcel is within the Red Cliff's NCA which will not allow for mining in order to protect the natural resources of the area.

The mineral estate is intact. A Due Diligence Mineral Preview report dated September 18, 2020 was provided for the subject parcel. The Utah Geological Survey evaluated the mineral potential of the subject land parcel. The study was prepared by Maggie Silvertooth, Geologist (DME) with a report date of September 18, 2020. As of the date of Mineral Preview report, the geologist reported no evidence to support the existence of mineral resources with development potential on the subject property.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Timber

None identified.

## LEGAL INTRUCTIONS

Per the Statement of Work, the appraisal must be conducted in accordance with applicable law, including Public Law No. 104-333, § 309(f) (Nov. 12, 1996). That statute provides in relevant part:

> In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the [acquiring party] shall appraise, value, and offer to acquire such lands and interests <u>without regard to the presence of a species listed as threatened or endangered</u> or <u>any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered</u> pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq). (Emphasis added).

The above is pertinent to this appraisal assignment due to the designation of the Mojave Desert tortoise, a Federally listed species designated as an endangered species on August 4, 1989, and formally listed as threatened on April 2, 1990 by an accumulation of human-and disease-related mortality accompanied by habitat destruction, degradation, and fragmentation.

Washington County is home of the highest density of Mojave Desert tortoises in the United States. In an attempt to comply with the requirements of the Endangered Species Act (Act), Washington County has prepared a Habitat Conservation Plan (HCP) that included an application to the U.S. Fish and Wildlife Service (USFWS) for a Section 10(a)(1)(B) Incidental Take Permit for Mojave Desert tortoise, a Federally listed species. The HCP includes an incidental take permit for 1,169 animals and 12,264 acres of desert tortoise habitat and 31,282 acres of potential habitat (geographically isolated areas with no documented desert tortoise sign). The HCP established a wildlife reserve of approximately 62,000 acres, including 38,787 acres of Mojave Desert tortoise habitat. Within this area, uses are carefully controlled and all management actions place the desert tortoise as the highest priority. Outside the reserve, development of desert tortoise habitat will be allowed in designated take areas. Consistent with the directive of Public Law No. 104-333, § 309(f), the subject will be appraised disregarding the presence of all species listed as threatened or endangered or any proposed or actual designation as critical habitat.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Data Resources Utilized in the Analysis

| DATA SOURCES | |
|---|---|
| **Item:** | **Source(s):** |
| **Site Data** | |
| Size | Client - Legal Description & Washington County Assessor |
| **Other** | |
| Statement of Work | Client provided |
| Economic Data | ESRI, Utah Department of Workforce Services |
| Housing Statistics | Southern Utah Title Company's Good News Housing Report, MetroStudy, Washington County MLS |
| Plat Maps | Washington County |
| Flood Map | FEMA |
| Property Easements | Client & Title Report |
| Physical Access Description | Client, Title Report & Appraiser Research |
| Legal Access Description | Client, Title Report & Appraiser Research |
| Washington County Parkway Alignments | Washington County Maps |
| Topography Maps | Washington County & St. George City |
| Zoning Information | Washington County & St. George City |
| Land Use Maps | Washington County & St. George City |
| Tax Information | Washington County |
| Mineral Potential | Appraiser Research and Due Diligence Mineral Preview Report prepared by Maggie Silvertooth, Geologist (DME) |
| Property Photographs | CBRE, Inc. - Rick Smith |
| Other Sources | Washington City, St. George City, Washington County Maps, Google Earth & Google Maps |

Compiled by CBRE

## EXTENT TO WHICH THE PROPERTY IS IDENTIFIED

The property is identified through the following sources:

- Various maps provided by the client

The extent of the inspection included the following:

- Site inspection of the subject property and all of the market properties used in direct comparison.

The property owner and interested parties named in the Statement of Work were afforded the opportunity to participate in the inspection. The appraiser met the property owner, James Doyle, near the site prior to the inspection. The appraiser was accompanied by Kent Heideman, Mr. Doyle's representative during the early portions of the inspection.



© 2021 CBRE, Inc.

### Type and Extent of the Data Researched

The appraiser reviewed the following:

- Applicable Tax Data
- Zoning Requirements
- Flood Zone Status
- Demographics
- Comparable Data

### Type and Extent of Analysis Applied

The appraiser analyzed the data gathered through the use of appropriate and accepted appraisal methodology to arrive at a probable value indication. For vacant land, the sales comparison approach has been employed for this assignment.

## APPRAISAL METHODOLOGY

While all potential appraisal methodologies were considered, it was concluded that only the Sales Comparison Approach was applicable and necessary in deriving a reasonable and credible value opinion of the subject.

The Cost Approach may be an applicable approach to value when (1) buyers and sellers are relying on this approach to estimate value for properties similar to the subject, and/or (2) there is sufficient data to provide a credible opinion of value.  Because the subject does not include any building improvements or site improvements that would contribute to value, the Cost Approach is not applicable.

The Income Approach is used to determine the value of an income-producing property by conversion of expected benefits like cash flows and reversion to value.  The Income Approach in valuing land is applicable and necessary (1) when the subject is leased, (2) when there is sufficient land lease information available to provide credible assignment results, and (3) when land sales are scarce warranting the use of a subdivision analysis employing discounted cash flow technique.  In the subject's case, the subject site is not leased, and land leases of a comparable nature are non-existent in the market area.

In order to value the subject parcel, sales of comparable land parcels were researched, verified, analyzed and adjusted in the Sales Comparison Approach.  The subject property consists of vacant land with a highest and best use for near-term residential development. Because the parcel is located in close proximity to existing water and power sources, as well as public sewer service, near-term development is likely.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Market Data Search Parameters

Geographical Area Searched:        Washington County

Time Span Searched:        2017 thru May 2021

Type of Data Searched:        Residential Development Parcels

Extent of Data Confirmation:        Attempts were made to contact buyer and seller, as well as other parties knowledgeable of the sale. In some cases, confirmation was made with sources requesting anonymity, but believed to be knowledgeable of the sale transaction. <u>Note that Utah is a non-disclosure State and as such I have relied on both verbal confirmation in some cases, with verification of closings with the Washington County Recorder.</u>



© 2021 CBRE, Inc.

# Area Analysis



A market area is a portion of a larger community, or an entire community, in which there is a homogeneous grouping of inhabitants, buildings or business enterprises. Inhabitants of a neighborhood usually have a casual community of interests, as well as a similarity of economic level and cultural backgrounds. The market area boundaries may consist of well-defined nature or man-made barriers, or they may be less well defined by a distinct change in land use or in the character of the inhabitants.

The subject is located adjacent north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development

As a basis for the neighborhood analysis, I am presenting an overview of the St. George metro area. Factors such as surrounding land uses, economic and demographic trends, and the proximity of the area to demand generators must be considered in the analysis. The next step in the analysis is an assessment of the neighborhood in which the site is located.

## MARKET AREA BOUNDARIES

As noted, the subject property is vacant privately-held land located in unincorporated Washington County adjacent east of the city of Washington. The market area for the subject property can be defined by the following boundaries:

North:    The northern boundary of the Red Cliffs Desert Reserve and the southern boundary of the Dixie National Forest

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

South:    City of St. George and City of Washington to the south

West:    State Route 18

East:    City limits of Hurricane, La Verkin and Toquerville

Much of the area included in these boundaries is within unincorporated area of Washington County together with incorporated areas of the cities of Santa Clara, Ivins, St. George, Washington, Hurricane, La Verkin, and Toquerville. The market area covers about 290 square miles of mostly vacant land outside of the incorporated areas and is primarily under public ownership with existing development and privately held properties centered mostly within the city limits of Santa Clara, Ivins, St. George, Washington, Hurricane, La Verkin, and Toquerville.

## DEVELOPMENT TRENDS OF THE ST. GEORGE METRO AREA

General development trends for the St. George metro area support continued expansion of residential development in all incorporated sectors. Accordingly, development opportunities have been, and should continue to be, plentiful in the St. George area. There are several major concentrations of residential development including the following:

(1) The west, which includes Green Valley. The Green Valley area consists mostly of PUD (Planned Unit Development) and a mix of low and medium density residential subdivisions. Most new developments surround the 27-hole Sunbrook Golf Course. Adjacent south of Sunbrook is a proposed master planned development known as The Lakes at St. George (formerly known as the Plantations), which has been proposed to include approximately 3,196 homes together with large open space partially improved with lakes and arroyos. The Lakes proposed development consists of high, medium and low density residential, a commercial site and one church site.

(2) The Dixie Downs/Snow Canyon area, located north of the Green Valley area, consists of mostly medium-density developments of attached condo units and townhomes, as well as mobile home/RV parks along Dixie Downs Road. The most significant development in the area is the Entrada master-planned community near the entrance to Snow Canyon State Park. This 710-acre project includes the Johnny Miller signature golf course which opened in 1996. Including the golf course, approximately 50% of the project will be left as open space.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Area Analysis



Red Cliffs National Conservation Area (NCA)

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

20



(3) The Central/Downtown area is generally bounded by Bluff Street to the west, and Interstate 15 to the east. This area is a combination of pioneer homes dating back to the 1800's and newer construction of commercial developments along St. George Boulevard and Bluff Street. The most significant development is the IHC Hospital (River Road Campus) at 700 South and River Road. Redrock Commons is the most recent development along River Road and includes 135,000 square feet of retail space with the tenants including Dick's Sporting Goods, PetSmart, Old Navy, Gap Outlet, and Ulta.  In 2012, a new $75 million freeway interchange was completed (Exit 5) at Dixie Drive just south of the Bluff Street. This project should help alleviate traffic congestion on the south side of the downtown area.

(4) The Bloomington area includes residential development in the southwest quadrant of St. George along Interstate 15. This master-planned community includes a private 18-hole golf course with low-density housing. Ongoing development in this area includes Sun River St. George, an active-adult retirement community located southwest of Bloomington. This master-planned community comprises 597 acres and includes an 18-hole golf course, which opened in August 2000. Total build-out of this age-restricted community is projected at about 1,800.

(5) The Bloomington Hills area, located in the southeast quadrant of St. George, south of the Virgin River, includes mostly low-density residential development. This area is centered on the 18-hole St. George Golf Club. One of the more significant and costly developments in the area is the Stone Cliff gated-community located on a 400-acre hillside east of Bloomington Hills and south of the Virgin River. Development began in 1995 with an elaborate landscaped gated entry. Hidden Valley, a master planned community is a joint venture between Ivory Homes and SITLA (Utah School Institutional Trust Land Administration) that will include over 1,000 homes in six subdivisions southwest of Bloomington Hills.

(6) The east section of St. George, locally known as the Red Cliffs area, and the Washington Fields includes a mixture of medium- and low-density residential development. The area includes the Red Cliffs Mall and the Millcreek Industrial Park and is bounded to the east by the city of Washington. The most significant development in the area is the Green Springs golf course community situated northwest of the Washington/Interstate 15 interchange within the city limits of Washington. Total build-out of this project is approximately 1,100 homes. The Washington Fields area consists of flood-irrigated farmland turning over to low-density residential subdivisions.

Commercial development within St. George is concentrated along St. George Boulevard and Tabernacle Street in the downtown area, Bluff Street and Sunset Boulevard in the west, and River Road/Red Cliff Drive in the east. A major retail corridor has developed on Red Cliff Drive/River Road that includes the Promenade at Red Cliffs, the Outlets at Zion and the Red Cliffs Mall. Other major commercial developments in the area include a Target and Lowe's Home Improvement Center along River Road, and Kohl's, Bed Bath & Beyond, Best Buy, Costco, Walmart and Home Depot on Green Springs Drive and Telegraph Street near the Washington interchange.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



The central business district of St. George, which is the primary employment center for the area, is located along St. George Boulevard and Tabernacle Street at Main Street, in one of the older areas of the city. However, redevelopment in this area is occurring including a new library and courthouse. The majority of the governmental offices are located in this area, which generates an extensive amount of traffic.

Most industrial developments are concentrated within the St. George, Millcreek and Fort Pierce Industrial Parks. The St. George Industrial Park is concentrated north of St. George Boulevard and west of Interstate 15. Millcreek Industrial Park is located along 3050 East Street, north of the Virgin River and near the Interstate 15/Washington interchange. Fort Pierce Industrial Park, located south of Bloomington Hills, is the newest industrial park in the area. An 800,000-square-foot Family Dollar distribution center opened in 2013.

The subject is located in Washington County. Key information about the area is provided in the following tables.

## POPULATION

The area has a population of 190,266 and a median age of 35, with the largest population group in the 0-9 age range and the smallest population in 80+ age range.



Population has increased by 52,151 since 2010, reflecting an annual increase of 3.3%. Population is projected to increase by an additional 26,043 by 2025, reflecting 2.6% annual population growth.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

## INCOME

The area features an average household income of $83,603 and a median household income of $63,377. Over the next five years, median household income is expected to increase by 13.1%, or $1,657 per annum.



## EDUCATION

A total of 28.8% of individuals over the age of 24 have a college degree, with 18.3% holding a bachelor's degree and 10.5% holding a graduate degree.



## EMPLOYMENT



The area includes a total of 75,397 employees and has a 4.2% unemployment rate. The top three industries within the area are Retail Trade, Health Care/Social Assistance and Educational Services, which represent a combined total of 39% of the population.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## DEMOGRAPHICS

The following information is provided by the Utah Department of Workforce Services for the larger Washington County area. While dated April 29, 2021, it would be expected that the following indicators and trends would not be materially different as of May 28, 2021, the effective date of value.







© 2021 CBRE, Inc.





© 2021 CBRE, Inc.

**Area Analysis**





© 2021 CBRE, Inc.

Selected market area demographics within the 1-mile, 3-mile, 5-mile radii for the more immediate market area are compared to Washington County in the following tables:

| SELECTED NEIGHBORHOOD DEMOGRAPHICS | | | | | |
|---|---|---|---|---|---|
| Adjacent North of the city limits of St. George St. George, Utah 84780 | 3 Mile Radius | 5 Mile Radius | 84770 - Saint George | Utah | Washington County |
| Population | | | | | |
| 2025 Total Population | 20,064 | 99,111 | 54,293 | 3,667,764 | 216,309 |
| 2020 Total Population | 18,232 | 86,286 | 46,969 | 3,370,531 | 190,266 |
| 2010 Total Population | 14,187 | 70,148 | 39,668 | 2,763,885 | 138,115 |
| 2000 Total Population | 9,572 | 48,168 | 30,713 | 2,233,169 | 30,982 |
| *Annual Growth 2020 - 2025* | *1.93%* | *2.81%* | *2.94%* | *1.70%* | *2.60%* |
| *Annual Growth 2010 - 2020* | *2.54%* | *2.09%* | *1.70%* | *2.00%* | *3.26%* |
| *Annual Growth 2000 - 2010* | *4.01%* | *3.83%* | *2.59%* | *2.16%* | *16.12%* |
| Households | | | | | |
| 2025 Total Households | 7,170 | 34,315 | 19,273 | 1,159,519 | 72,963 |
| 2020 Total Households | 6,504 | 29,819 | 16,677 | 1,066,175 | 64,053 |
| 2010 Total Households | 4,947 | 23,938 | 13,890 | 877,692 | 46,334 |
| 2000 Total Households | 3,266 | 16,615 | 10,820 | 701,281 | 29,939 |
| *Annual Growth 2020 - 2025* | *1.97%* | *2.85%* | *2.94%* | *1.69%* | *2.64%* |
| *Annual Growth 2010 - 2020* | *2.77%* | *2.22%* | *1.85%* | *1.96%* | *3.29%* |
| *Annual Growth 2000 - 2010* | *4.24%* | *3.72%* | *2.53%* | *2.27%* | *4.46%* |
| Income | | | | | |
| 2020 Median Household Income | $57,053 | $59,334 | $57,493 | $76,052 | $63,377 |
| 2020 Average Household Income | $73,476 | $80,440 | $76,417 | $95,347 | $83,603 |
| 2020 Per Capita Income | $26,057 | $28,002 | $27,173 | $30,227 | $28,164 |
| 2020 Pop 25+ College Graduates | 3,789 | 15,354 | 8,578 | 704,735 | 34,334 |
| Age 25+ Percent College Graduates - 2020 | 32.1% | 28.9% | 29.2% | 35.1% | 28.8% |
| Source: ESRI | | | | | |

As shown above, market area demographics (centered on the subject location) for 3-mile and 5-mile radii suggest 2020 median household income ranging from $57,053 to $59,334, compared to the County average of $63,377$63,377.

The 2020 average household income ranges from $73,476 to $80,440, compared to the County average of $83,603.

The 2020 average per capita income ranges from $26,057 to $28,002, compared to the County average of $28,164.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

## POPULATION AND HOUSEHOLD PROJECTIONS

| Population | 3 Mile Radius | 5 Mile Radius | 84770 - Saint George | Utah | Washington County |
|---|---|---|---|---|---|
| 2025 Total Population | 20,064 | 99,111 | 54,293 | 3,667,764 | 216,309 |
| 2020 Total Population | 18,232 | 86,286 | 46,969 | 3,370,531 | 190,266 |
| 2010 Total Population | 14,187 | 70,148 | 39,668 | 2,763,885 | 138,115 |
| 2000 Total Population | 9,572 | 48,168 | 30,713 | 2,233,169 | 90,354 |
| *Annual Growth 2020 - 2025* | *1.93%* | *2.81%* | *2.94%* | *1.70%* | *2.60%* |
| *Annual Growth 2010 - 2020* | *2.54%* | *2.09%* | *1.70%* | *2.00%* | *3.26%* |
| *Annual Growth 2000 - 2010* | *4.01%* | *3.83%* | *2.59%* | *2.16%* | *4.33%* |
| Households | | | | | |
| 2025 Total Households | 7,170 | 34,315 | 19,273 | 1,159,519 | 72,963 |
| 2020 Total Households | 6,504 | 29,819 | 16,677 | 1,066,175 | 64,053 |
| 2010 Total Households | 4,947 | 23,938 | 13,890 | 877,692 | 46,334 |
| 2000 Total Households | 3,266 | 16,615 | 10,820 | 701,281 | 29,939 |
| *Annual Growth 2020 - 2025* | *1.97%* | *2.85%* | *2.94%* | *1.69%* | *2.64%* |
| *Annual Growth 2010 - 2020* | *2.77%* | *2.22%* | *1.85%* | *1.96%* | *3.29%* |
| *Annual Growth 2000 - 2010* | *4.24%* | *3.72%* | *2.53%* | *2.27%* | *4.46%* |

Source: ESRI

Population and household projections for 3-mile and 5-mile radii for the subject are compared to the County above. From 2010 to 2020, the 3-mile radius population had an annual growth of 2.54% per year. From 2020 to 2025, the 3-mile radius population is forecast to grow 1.93% per year. It would be expected that the indicators would not be materially different as of May 28, 2021, the effective date of value.

## HOUSEHOLD INCOME DISTRIBUTION

| Households by Income Distribution (2020) | 3 Mile Radius | 5 Mile Radius | 84770 - Saint George | Utah | Washington County |
|---|---|---|---|---|---|
| <$15,000 | 6.93% | 7.37% | 8.56% | 6.27% | 6.29% |
| $15,000 - $24,999 | 10.85% | 9.68% | 9.21% | 5.94% | 8.08% |
| $25,000 - $34,999 | 11.70% | 11.75% | 12.80% | 7.06% | 10.24% |
| $35,000 - $49,999 | 10.90% | 10.39% | 10.36% | 10.55% | 10.72% |
| $50,000 - $74,999 | 24.88% | 22.55% | 22.69% | 19.26% | 23.01% |
| $75,000 - $99,999 | 14.18% | 15.44% | 15.05% | 15.84% | 17.29% |
| $100,000 - $149,999 | 12.84% | 12.13% | 11.70% | 19.47% | 13.52% |
| $150,000 - $199,999 | 3.71% | 4.36% | 4.52% | 8.20% | 4.53% |
| $200,000+ | 4.01% | 6.31% | 5.11% | 7.40% | 6.32% |

Source: ESRI

The majority (62.8%) of households in a 3-mile radius have a household income of $35,000 to $149,999 range. This is compared to 64.5% for Washington County. The primary reason for

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

lower overall neighborhood income levels in the subject neighborhood when compared to Washington County is the fact that the master planned community of Green Springs to the east is heavily retirement-oriented with income levels generated from retirement income.

## MARKET AREA ACCESSIBILITY

Interstate 15 extends northeast and southwest through the market area.  The new Southern Parkway is a limited access freeway that runs east from Interstate 15 along the Utah-Arizona border to the newly completed St. George Municipal Airport.  An extension to the south end of the Washington Fields area and a segment from the east end of Washington to Sand Hollow Reservoir opened in January 2014.  A connecting segment though the Washington Fields area was completed in 2016.  The corridor has been extended around Sand Hollow Reservoir and connects to State Route 9 in Hurricane.

### Proposed Northern Corridor



The proposed Northern Corridor connects Interstate 15 via Washington Parkway on the east end and Red Hills Drive on the west end, cutting across parts of the Red Cliffs Desert Reserve and overlap Red Cliffs National Conservation Area. State and local road planners and civic officials say the corridor is needed in order to accommodate the county's continuing growth or the road system will fail. They say the roadway was also promised to Washington County by the federal government when the Reserve was created. Opponents argue the Reserve and national conservation area are meant to preserve the tortoise and natural wonders of the area and

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

shouldn't be carved up for a roadway. They also fear what kind of precedent this action could set for national conservation areas elsewhere if successful.

In 2009, Congress passed the Omnibus Public Lands Act that created the Red Cliffs National Conservation Area, which overlaps approximately 75% of the desert reserve. It has been argued by Washington County officials that the Bureau of Land Management was supposed to designate a route for the Northern Corridor route soon after that legislation's passing yet failed to do so.

Because the road would cut through land set aside for the protection of the desert tortoise, federal wildlife and lands officials had been reluctant to approve it. They had rejected routes proposed by county road planners because they were not seen as being compatible with federal environmental protection policy. This ultimately led to members of Utah's Republican congressional delegation introducing bills to Congress to force the issue yet failed to gain traction after Democrats took control of the House of Representatives following the 2018 midterm election.

Despite years of repeated setbacks, the push for the Northern Corridor gained momentum with UDOT and Washington County's recent application for a right-of-way for the roadway and the subsequent release of the draft EIS anticipated to be June 2020.

The draft EIS presents six options for the Northern Corridor project which includes the aforementioned UDOT alignment, which is the preferred option, as well as a "no action" alternative that leaves things as they are.

Of the remaining four alternatives, two still cut through the Red Cliffs Desert Reserve and NCA between Green Springs Drive in Washington City and Red Hills Parkway in St. George. The other two alternatives, which are located outside of the reserve, would turn Red Hills Parkway into an expressway with limited access to on-off ramps, or turn St. George Boulevard and 100 South into one-way streets.

"The range of alternatives, including the preferred alternative, are not final," the Bureau of Land Management stated in a press release. "Substantive comments may influence the alternatives when released in the Final EIS."

The BLM and USFWS anticipated a final EIS and decision on the Northern Corridor project to be completed in the fall of 2020 but was postponed due to protesting. Three alternate routes with included amendments were then submitted with a final decision for the Northern Corridor agreed upon and signed January 13, 2021.

In anticipation of development of the Northern Corridor, Washington County has secured the first segment of the right-of-way. The map on the following page identifies the location of the subject parcel ($\pm$2,639 LF) to the west of the first acquired right-of-way for the Northern Corridor.



© 2021 CBRE, Inc.

## ENVIRONMENTAL/GOVERNMENTAL CHARACTERISTICS

### Medical Services

Primary medical services for Washington County are found in the City of St. George. Dixie Regional Medical Center (DRMC) has two campuses: the older 400 East Campus was developed in the 1970s and 1980s near the center of St. George. Numerous medical office buildings were constructed adjacent to the hospital as well as along major arterials in the city.

In November 2003, Intermountain Healthcare (IHC), the owner of DRMC, opened the $100-million, 61-acre River Road campus that is twice as larger as the older 400 East campus. The main building at the River Road campus includes approximately 420,000 square feet. Newer additions at the River Road campus include the $65 million Health and Human Performance Building and the Dixie State University Health Science Building. Together, both campuses include 245 beds.  The River Road Campus also allows for long-term expansion up to a total of 1,000,000 square feet. A $300 million 400,000-square-foot expansion was completed in late 2018. The hospital has a significant impact on the local economy with nearly $50,000,000 annually in wages, salaries and benefits.

### Schools

Several public schools serve the market area ranging from elementary to high schools. Dixie State University is located adjacent to Interstate-15, between 100 South and 700 South. This facility is part of the State of Utah's higher education system and offers associate and bachelor's degrees in a number of areas of interest. On January 11, 2013, the school's board of trustees approved a change in status from college to university. On January 24, 2013, the name "Dixie State University" was approved by the Utah State Board of Regents, as was university status for the school. On January 30, 2013, the Utah House Education Committee unanimously voted in favor of a bill that granted university status to Dixie State. Dixie State University has approximately 10,000 students with 43 bachelor's degree programs. In June 2021, Dixie State University Board of Trustees voted to recommend Utah Tech University as the ne institutional name. The board's

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

recommending vote goes to the Utah Board of Higher Education for their vote before being forwarded to the Utah State Legislature.

## Shopping

Regional and neighborhood shopping centers are located along Sunset Boulevard, River Road, Red Cliffs Drive, Telegraph Street and St. George Boulevard. The Red Cliffs Mall is located on Red Cliffs Drive. River Road/Red Cliffs Drive, near Exit 8 is one of the dominant commercial centers in the area with Target, Lowe's, Dick's Sporting Goods, and a variety of other national and local retailers in the area.

## Recreational Amenities

Recreational amenities conductive to a neighborhood are located within proximity to the subject and include several neighborhood parks, softball fields, and golf courses. As additional development occurs in and around the market area, it is anticipated that the number of recreational amenities will increase. Metro St. George also maintains miles of walking/biking trails throughout the community.

## Public Services

Police protection is provided by the respective municipalities and fire protection is provided by the respective municipalities and volunteer fire departments throughout the entire Washington County area. Utilities for the market area are considered adequate and are provided at costs competitive with other cities in the region.

## THREATENED & ENDANGERED SPECIES

One of the major conflicts to growth in the area is environmentally related; more specifically, the preservation of endangered and threatened species is the focal point of concern. As noted, Washington County has been one of the fastest growing retirement and recreational areas in the nation. With this explosive growth, specific habitats of threatened and endangered species are at risk in certain areas of the County. The County contains habitat for nine species that are listed as threatened or endangered pursuant to the Endangered Species of 1973:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

| Federally Listed Threatened and Endangered Species in Washington County | | |
|---|---|---|
| Common Name | Scientific Name | Category |
| Brown (Grizzly) Bear | Ursus acrctos | Threatened |
| Mojave Desert Tortoise | Ursus acrctosGopherus agassizii | Threatened |
| Dwarf Bear-Claw Poppy | Arctomecon humilis | Endangered |
| Gierisch's globemallow | Sphaeralcea gierischii | Endangered |
| Gray Wolf | Canis lupus | Endangered |
| Paradox/Holmgren Milk-Vetch | Astragalus holmgreniorum | Endangered |
| Shivwits Milk-Vetch | Astragalus ampullarioides | Endangered |
| Siler Pincushion Cactus | Pediocactus sileri | Threatened |
| Southwestern Willow Flycatcher | Empidonax traillii extimus | Endangered |
| Mexican Spotted Owl | Strix occidentalis lucida | Threatened |
| Utah Prairie Dog | Cynomys parvidens | Threatened |
| Woundfin Minnow | Plagopterus argentissimus | Endangered |
| Virgin River Chub | Gila robusta seminude | Endangered |
| Western Yellow-billed Cuckoo | Coccyzus americanus occidentalis | Threatened |

The Endangered Species Act (ESA) defines "endangered" species as those "in danger of extinction throughout all or a significant portion of its range, while "threatened" species are those "likely to become endangered within the foreseeable future throughout all or a significant part of its range." Several of the above endangered or threatened species pose constraints to demographic and economic growth in Washington County: the Mojave Desert Tortoise, Virgin River Chub and Woundfin Minnow.

### Habitat Conservation Plan (HCP)

Washington County is home of the highest density of Mojave Desert tortoises in the United States. In an attempt to comply with the requirements of the Endangered Species Act (Act), Washington County has prepared a Habitat Conservation Plan (HCP) that included an application to the U.S. Fish and Wildlife Service (USFWS) for a Section 10(a)(1)(B) Incidental Take Permit for Mojave Desert tortoise, a Federally listed species. The HCP includes an incidental take permit for 1,169 animals and 12,264 acres of desert tortoise habitat and 31,282 acres of potential habitat (geographically isolated areas with no documented desert tortoise sign). The HCP established a wildlife reserve of approximately 62,000 acres, including 38,787 acres of Mojave Desert tortoise habitat. Within this area, uses are carefully controlled and all management actions place the desert tortoise as the highest priority. Outside the reserve, development of desert tortoise habitat will be allowed in designated take areas.

Approximately two-thirds of the original reserve was under BLM or State Park ownership. The remaining third comprised parcels under State or private ownership that are needed to make the reserve contiguous and effective. Land was to be acquired or exchanged upon the principle of a willing seller and willing buyer. Landowners were consulted throughout the HCP process and were encouraged to participate in the land exchanges. Per Section 3.2 of the HCP, *in the event landowners chose not to participate in the land exchange process, the HCP has no legal effect on their property and the HCP will place no restrictions on land use within the reserve. However, for*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



*those lands that do not participate in the HCP, such lands will not participate in the benefits and protections inherent in an incidental take permit issued as a part of the HCP, and therefore the landowner will be subject to the Section 9 enforcement provisions under the Act.*

### DESERT TORTOISE HABITAT CONSERVATION PLAN EXPANSION ACT

The original Habitat Conservation Plan (HCP) agreement expired in 2016. By agreement with the Fish and Wildlife Service, Washington County is operating the HCP under a temporary extension that is valid as long as the County is actively working toward renewal.

In April 2018, H.R.5597 was introduced in the House of Representatives that would expand the HCP and allow for mitigation of the proposed Northern Corridor. The bill, if passed into law, would:

- Expand the HCP by creating an additional 6,865-acre reserve with rich desert tortoise habitat known as Zone 6.
- Renew the HCP agreement for 25 years,
- Require Washington County and the BLM to manage Zone 6 in accordance with the provisions of the existing HCP agreement,
- Apply the existing utility development protocols to include Zone 6 as well as other areas covered by the HCP,
- Allow for recreation to continue in Zone 6 on designated trails, including hiking, biking, horseback riding, and OHV use,
- Provide mitigation credits for the tortoises protected in Zone 6, and
- Require BLM to amend the existing plans to accommodate Zone 6.

The bill is currently held up in the House of Representatives having been last amended by the Committee on Natural Resources in August 2018.

The overall relevance of the HCP to Washington County cannot be understated. The establishment of the HCP allows Washington County to issue development permits allowing growth to occur. Without HCP compliance, Washington County would be severely restricted on its ability to grow.

Another major impact of the HCP is the direction of growth. Prior to establishment of the HCP, growth was moving north and northwest with developers being attracted to the higher elevations of the foothills. However, the establishment of the HCP in these more desirable areas forced development to the farmlands in Washington Fields and the Little Valley area.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



## Holmgren Milk-Vetch (Astragalus Holmgreniorum)

Impacting portions of the market area is the presence of the Holmgren milk-vetch plant designated as an endangered species in October 2001 due to their rarity and declining population trends as well as the threats of urban development, off-road vehicle use, grazing, displacement of invasive plants, and mineral development. On March 29, 2006, the U.S. Fish & Wildlife Service proposed to designate approximately 8,896 acres in Washington County, Utah as critical habitat for two federally endangered plants (Holmgren milk-vetch and Shivwits milk-vetch). The subject's location in relation to identified populations of the milk-vetch plant is identified below.



## Red Cliffs Desert Reserve & National Conservation Area

### RED CLIFFS DESERT RESERVE

The Red Cliffs Desert Reserve consists of approximately 62,000 acres located north of St. George in Washington County set aside as protected habitat for the desert tortoise which is protected under the Endangered Species Act. The Reserve was created as a result of the Washington County Habitat Conservation Plan (HCP) and was approved by the U.S. Fish and Wildlife Service in 1996.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

The HCP allowed the issuance of a permit to the county from the USFWS which "unlocked" over 350,000 acres of desert tortoise habitat on private property outside the reserve so it could be developed. Thousands of acres from Ivins to Springdale have been developed as a result of the HCP.

The subject's inclusion in the Red Cliffs Desert Reserve is shown on the following page.

### RED CLIFFS NATIONAL CONSERVATION AREA

The Red Cliffs National Conservation Area (NCA) encompasses approximately 61,225 total acres, including 44,859 acres of federal lands, 13,735 acres of state lands and 2,631 acres of private lands. The NCA is managed by the Bureau of Land Management as part of the National Landscape Conservation System and was created as part of the Omnibus Public Land Management Act of 2009. The NCA boundary follows the Red Cliffs Desert Reserve, a multi-jurisdictional land base that has been collaboratively managed by the BLM, the state of Utah, Washington County, and local municipalities since 1996. Part of the NCA was designated in 2009 as the Cottonwood Canyon and Red Mountain wilderness areas.

The subject's location to the Red Cliffs National Conservation area is shown following the Red Cliffs Desert Reserve Map.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## RED CLIFFS DESERT RESERVE



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## RED CLIFFS NATIONAL CONSERVATION AREA



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



### St. George Regional Airport

The previous St. George Municipal Airport sat atop a mesa in the central portion of the city of St. George and consisted of a single runway-oriented north/south. In 1998, a site selection and study were conducted by the City of St. George that identified deficiencies in the former airport site, concluded that the airport could not accommodate forecasted future demand, and identified six potential relocation sites in the area. After evaluation, three of those sites were removed from consideration. The remaining three sites were recommended for further evaluation and analysis as potential relocation sites for the airport.

From 2001 through 2006, environmental assessments and other impact studies were conducted and final approval for a new airport on 1,500 acres on the southeast side of the City site was granted in August 2006. A $90 million grant was received from the Federal Aviation Administration (FAA) in January 2008 to help fund the $170 million replacement airport which opened in January 2011.

The new airport includes a single runway (oriented northeast/southwest) with a length of 9,300 feet. Due to topography, the runway at the former airport site could not be extended beyond its 6,606-foot length.

### HOUSING MARKET OVERVIEW

The following information was taken directly from the MetroStudy report for the St. George/Mesquite area.

#### Economic Overview

*Despite the economic pressures currently being seen across the nation, the St. George market continues to set itself apart as one of the faster recovering markets as far as job growth is concerned. Last year at this time when the pandemic started to take hold, job growth in the St. George market was negatively affected nearly immediately. However, since then the market has shown significant improvement and job growth is occurring in nearly all segments.*

*As a result of the pandemic, the St. George market experienced a loss of -6,000 jobs annually, ending April 2020. In the most recent numbers released by the Bureau of Labor Statistics (BLS), the St. George market experienced a net increase of 3,400 jobs over the past twelve months ending March 2021. The local economy continues to recover and is now expanding faster than the previous year. At this time last year, the market saw a net increase of 2,400 jobs ending March 2020. The total number of individuals employed at this time last year had increase +3.4% YoY, and as of March 2021 total employed has increased +4.7% to a total of 75,700. With much of the country shutting down due to the pandemic, the St. George market has seen a significant increase in people traveling by car and vacationing to the market, which has helped the local economy significantly. Also, with the new "Work from Home" option that companies are offering, many have moved full time to the market in search of a better quality of life and a somewhat slower pace of life, relatively speaking.*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

**Exhibit 1: St. George CBSA Job Growth and Total Employment (Annual)**



The unemployment rate has also improved since the peak in April when the rate jumped to 12.4% and remained slightly below the national rate (14.9%). Currently, the unemployment rate in the St. George market sits at 3.9%, which is below the 4.5% rate recorded in March 2020, however up from the low of 2.4% in November 2020.

**Exhibit 2: St. George CBSA Unemployment Rate**



The Construction sector continues to lead the market in job growth with the addition of 1,200 jobs over the past year ending March 2020. The Education & Health Services sector is also strong with

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



the addition of 500 new jobs over the past year, which is up compared to 100 jobs at this time last year. The Leisure & Hospitality sector was most impacted during the pandemic, however as of March experienced a net positive increase of 200 jobs over the past year. The Wholesale and Retail Trade sectors are the only areas that remain negative with the loss of -100 and -400 jobs respectively as of March.

**Exhibit 3: St. George CBSA Employment by Sector (Annual)**



|  | Construction & Mining | Manuf | W. Trade | R. Trade | Trans / Utilities | Info. | FIRE | Bus. Svcs. | Ed Health Svcs. | Leisure Hosp Svcs | Other Services | Fed Govt | State Govt | Local Govt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mar-20 | 700 | 300 | -100 | -400 | 300 | 0 | 200 | 100 | 500 | 200 | 100 | 0 | 200 | 200 |
| Mar-21 | 1,200 | 200 | 0 | 200 | 200 | -100 | 200 | 800 | 100 | 0 | 100 | 100 | 0 | 200 |

The first quarter of 2021 has proven again that the St. George market remains as strong as it has ever been. Builders in the St. George market started a record number of new homes during the first quarter for a total of 931, which is +30% higher than 1Q20 and +18% more than last quarter. While not record levels, new home closings increased +18% compared to last year at this time and were up +14% above last quarter for a total of 673. Annual new home starts totaled 3,067 as of March, which is a +27% increase compared to this time last year. Annual new home closings totaled 2,695 as of March, a +20% increase compared to the annual pace in 1Q20. With home inventory at record low levels, it is not surprising to see starts increase at such high levels while closings not yet seeing the same increase. However, this should change as we progress through the year and those homes get finished and occupied.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Exhibit 4: Annual New Home Starts & Closings – Att/Det

The median base price for a new detached home in the St. George market has increased +8% (or $31k) compared to 1Q20, and up +3% since last quarter to $436,900. Keep in mind that this is the base price and does not include options. The median base price for a new attached home in the market has increased +18% compared to last year at this time (up $52k) and +7% from last quarter to $341,700. The increase in Nightly Rental projects in the market continues to affect the increase in attached pricing.



Exhibit 5: St. George Annual New Home Starts by Price Range – Att/Det

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

### New Home Inventory

*Total new home inventory in the St. George market, which consists of homes under construction, finished & vacant, and model homes has increased +24% compared to 1Q20, and up +16% from last quarter. Based on the current pace of absorption this translates to an 8.5-month supply, which his up from 8.2 months recorded in 1Q20. The increase in inventory is directly affected by homes under construction and not standing available homes. The total number of homes under construction has increased +58% compared to 1Q20 and up +24% from last quarter to 1,615. The supply of homes under construction has increased to 7.2 months, up from 5.5 recorded in 1Q20. With the limited number of available homes for sale in the market, builders are trying to provide more housing to the market, this is in addition to increased construction time from the lack of material and labor. Finished vacant home inventory (or spec homes) has decreased -48% compared to this time last year for a total of 225 homes. The market now has a record low supply of finished homes on the ground with 1.0 month. In the past twelve months this supply has dropped from 2.3 months.*

**Exhibit 6: St. George New Home Inv. and Month Supply – Att/Det**



### Lot Inventory

*With the increased pace of new home starts, lot inventory remains below equilibrium levels once again this quarter. There are currently 4,202 vacant developed lots on the ground in the St. George market, which is a -3% decrease compared to this time last year. There is now a 16.4-month supply of vacant lots on the ground, which is down from 21.6 months recorded in 1Q20. There were 886 new lots delivered to the market in the first quarter, which is +60% higher than*

CBRE

© 2021 CBRE, Inc.

*last year at this time, and annual lot deliveries increased +33% to 2,917. Lot inventory for homes priced below $500,000 are in highest demand across the market, however, are the most difficult to deliver and keep due to the high demand of buyers in this price band.*

### Exhibit 8: St. George Vacant Developed Lot Inventory/ MOS – Att/Det



#### Conclusion

*The St. George housing market remains extremely strong and with such low inventory levels is expected to remain strong for the foreseeable future. Home prices will eventually push buyers out of the market and inventory levels will increase, but until then, the market is expected to grow.*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

**CBRE**

## MLS DATA – GREATER ST. GEORGE AREA

The following tables shows historic volumes and average sales prices over the past several years for the greater St. George area:

# Market Summary

Residential, February 2021





© 2021 CBRE, Inc.

## Southern Utah Title Company Market Overview

The following residential information is from Southern Utah Title Company's Good News Housing Report (May 2021):



Lot sales increased in 2020 and 2021.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

46



© 2021 CBRE, Inc.

As of June 2021, dwelling sales totaled 4,807 with a projection of 9,614 sales for the year, compared to 2020 at 8,772 total sales.



Overall, dwelling and lots sales have been trending upward since 2010, and 2021 sales are higher than 2020 as noted below.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE



### COVID-19 Impact

Several takeaways are that subdivided lot sales will vary from year to year based on inventory. Prior to the pandemic, homebuilders anticipated a slowing of the housing market. However, just the opposite occurred. Both lot sales and home sales in 2020 surpassed 2019 numbers. Early projections were that 2021 sales would retract from 2020 numbers by approximately 16.4%. However, home and lot sales have continued to show strong increases.

The St. George market is benefiting from a healthy economy, strong in-migration and relative affordable housing, all of which should continue through the remainder of 2021.

### HOUSING MARKET CONCLUSION

The effects of COVID-19 on the economy is currently nominal and job growth is improving. I expect it will remain on course for the remaining of the year. Utah lifted the "mask" mandate on April 10th and COVID cases continue to fall. The housing market has manifest strong fundamentals and should help to continue to lead the recovery in the region.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

# Site Analysis (Larger Parcel)



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

### RECORD OF SURVEY MAP (COUNTY DOC. NO. RS006118-13)



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

A Commitment for Title Insurance prepared by Southern Utah Title Company File No. 213147 dated April 2, 2018 was provided by the client. The Title Report identifies 21 exceptions to title including property taxes, public utility easements and rights-of-way. A survey included on the previous page was provided by the client and identifies the majority of the encumbrances. The subject is outlined in red. The title report includes the following encumbrances:

- Exception 12: Subject to any of the herein described land affected by the United States Fish and Wildlife Services designation as critical Tortoise Habitat.

  *Appraiser Comment: Because of Public Law No. 104-333/;110STAT.4093, I have appraised the subject property without regard to the presence of a species listed as threatened or endangered, or any proposal or actual designation as critical habitat for a species listed as threatened or endangered.*

- Exception 13: Less and Excepting therefrom all oil, gas and other mineral rights and rights incidental thereto. No report is hereby given as to matters affecting said oil, gas and mineral rights.

  *Appraiser Comment: Per a Due Diligence Mineral Preview report dated September 18, 2020 was provided for the subject parcel. The Utah Geological Survey evaluated the mineral potential of the subject land parcel. The study was prepared by Maggie Silvertooth, Geologist (DME) with a report date of September 18, 2020. As of the date of Mineral Preview report, the geologist reported no evidence to support the existence of mineral resources with development potential on the subject property.*

- Exception 14: The herein described premises do not appear to abut a public road or highway. The Policy will not insure either access or access rights or title to adjoining property which would provide access to a public road or highway.

  *Appraiser Comment: Recorded easement (Washington County Doc. No. 20160020340) from Brennan Holdings, LLC to James P. Doyle provides legal access from Bluff Hill Drive to subject property.*

- Exception 15: Subject to any Reservations, Exceptions and Easements as set forth on State of Utah Patent, recorded June 14, 1990, as Entry No. 366814, in Book 563, at Page 736, Official Washington County Records.

  *Appraiser Comment: No material impact to the subject parcel.*

- Exception 16: Resolution, dated July 25, 1978, creating the Washington County Special Service District No. 1, for solid waste disposal, including the power to assess a lien upon the property herein-described, as recorded March 14, 1994, as Entry No. 460755 , in Book 802, at Pages 292-304, Official Washington County Records. (Affects All unincorporated areas of Washington County).

  *Appraiser Comment: No material impact on the subject parcel.*

- Exception 17: Subject to a Use Agreement Pertaining to Construction and Maintenance of Adjoining Power Line, dated June 18, 2003, executed by and between PacifiCorp, an Oregon Corporation, doing business in Utah as Utah Power & Light Company and Dixie Escalante Rural Electric Association, Inc., a Utah Corporation, recorded June 27, 2003, as Entry No. 827112, in Book 1558 at Page(s) 2302 - 2310, Official Washington County Records. (Affects this and other property).

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



*Appraiser Comment: 100' wide utility easement along the south property line impacts the southern portion of the parcel. 50' wide electric utility easement crosses the northwest corner of subject. Impacts are not material due to overall size of parcel.*

- Exceptions 18 thru 21 address a Deed of Trust, judgement, notice of levy, and writ of execution.

*Appraiser Comment: The referenced exceptions do not impact market value. Exceptions 19 thru 21 could potentially impact marketing time of the property and would potentially be subject to resolution of current litigation and/or court approval.*

Not included in the Commitment for Title is a 50'-wide city of St. George water line easement that crosses the NEC of the subject.



## PLAT MAP



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## FLOOD PLAIN MAP



The flood map for the area is Number 49053C0793G, effective on 2-Apr-09. The majority of the site is located in a Zone X (Unshaded). The southwest corner of the parcel is impacted by Flood Zone A from the Middleton Wash.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

The following chart summarizes the salient characteristics of the subject site.

**SITE SUMMARY AND ANALYSIS - DOYLE PARCEL**

**Physical Description**

| | | |
|---|---|---|
| Gross Site Area | 266.42 Acres | Doyle Red Cliffs NCA Acquisition |
| Shape | "L" Shaped | |
| Topography | Rolling | |
| Parcel Number(s) | 6600-NP-1 | |
| Zoning District | OST (Open Space Transitional), Red Cliffs Desert Reserve and Red Cliffs National Conservation Area | |
| Flood Map Panel No. & Date | 49053C0793G | 2-Apr-09 |
| Flood Zone | Zone X (Unshaded) | |
| Adjacent Land Uses | Vacant Land, Residential Lots/Homes | |

| **Utilities** | **Provider** | **Availability** |
|---|---|---|
| Water | City of St. George | 1,356 LF Away |
| Sewer | St. George/Washington Interlocal Agreement | 5,402 LF Away |
| Natural Gas | Dominion Energy | 5,402 LF Away |
| Electricity | City of St. George | 866 LF Away |
| Telephone | Century Link | 5,402 LF Away |

| | | |
|---|---|---|
| **Improved Access** | At Bluff Hill Drive | 5,402 LF Away |

| | |
|---|---|
| **Encumbrances or Reservations** | 1) A 60-foot wide perpetual, non-exclusive, easement, to run with the land, over, under, across and on the Access Corridor for vehicular and pedestrian ingress and egress purposes and for the installation of underground utilities. Extends 4,502 LF from Bluff Hill Drive to subject's SWC. |
| | 2) 100'-wide overhead powerline utility easement benefitting PacifiCorp, Utah Power & Light Co. and Dixie Escalante Rural Electric Association, Inc. - Crosses the southern portion of the subject. |
| | 3) 50'-wide overhead powerline utility easement benefitting PacifiCorp, Utah Power & Light Co. and Dixie Escalante Rural Electric Association, Inc. - Crosses the NWC of the subject. |
| | 4) 50'-wide city of St. George water line easement - Crosses the NWC of the subject. |
| **Encroachments** | Item 4 above |
| **Deed Restrictions** | None Noted or Apparent |

Source:  Various Sources Compiled by CBRE



© 2021 CBRE, Inc.

**LARGER PARCEL MAP (266.42 ACRES)**



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

## EXISTING USE

The subject property (larger parcel) consists of undeveloped desert range land.

## LOCATION

The subject property consisting of 266.42 acres is located adjacent north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development.

## LAND AREA

The subject property is the 266.42-acre area described herein and depicted on accompanying exhibits. The parcel is adequate in terms of size and utility for future residential development.

## SHAPE AND FRONTAGE

The property is L-shaped with no existing frontage or exposure due to its distance from existing roadways.

## INGRESS/EGRESS

### Physical Access

The subject property has an unimproved legal access easement from Bluff Hill Drive. The 60-foot wide non-exclusive right-of-way extends approximately 5,402 LF from the Bluff Hill Drive terminus across lands previously owned by Brennan Holdings, Inc. and recently sold/donated to Washington County, Hurricane City, and Washington City Foundation.

Future access to the subject parcel could potentially come from the proposed and eventual construction of the Northern Parkway across the Red Cliffs Desert Reserve. Both the City of St. George and Washington County have been pursuing a "Northern Corridor" route possibly connecting Red Hills Parkway to Cottonwood Road near the southern tip of T-bone Mesa and extends easterly and connects to the I-15 interchange at Milepost 13 in Washington City. While this "cutoff" arterial (Northern Parkway) may not be constructed due to the designation of the subject lands as a Reserve, its inclusion within the Washington County General Plan requires my consideration in this valuation. Because I have been asked to disregard the desert tortoise issues, it is a reasonable assumption that the "cutoff" between Red Cliffs Parkway and Cottonwood Road would be constructed to service the area.

It is noted that the initial right-of-way for the Northern Corridor has been acquired by Washington County and is located +2,639 LF to the east of the subject as shown in the graphic below.

© 2021 CBRE, Inc.



Site Analysis (Larger Parcel)



## TOPOGRAPHY

The subject parcel has an elevation of approximately 3,280 feet above sea level in the northeast quadrant to 3,100 feet above sea level in the Middleton Wash drainage in the southwest quadrant of the parcel. The subject is generally rolling topography, with steep hillside terrain at the southwest corner of the property. A topography map illustrating the parcel's terrain is included on the following page.

After inspecting the site and reviewing topography maps, it is the appraiser's opinion that a small portion (10 to 20 acres) along the east property line is impacted by significant sloping terrain. In a master planned development, open space is typically required. Those areas noted above impacted by easements or identified as unusable would be incorporated into open space, thereby minimizing the impact on overall utility of the site.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Based on my physical observations of the property, I estimate that approximately 7% of the total site is not usable due to steep hillside and flood zone (circled area above).

Comparatively, various large planned unit developments in the market area were required to maintain open space. These developments include (1) the 1,122-acre Green Springs development retaining 19.7% of the area as open space; (2) the 732-acre Sienna Hills planned unit development retaining 39.3% of the area as open space due to revines, arroyos, and hillside; and (3) the 192.08-acre Brio plannd unit development maintained approximately 15% of its area as open space.

## UTILITIES AND SERVICES

Prior to the creation of the Red Cliffs Desert Reserve, the City of St. George and Washington City had plans to extend the city limits and annex much of the land in the area. However, because of the creation of the Reserve, the Cities discontinued their plans, though the subject and other areas in Reserve continue to be identified in their respective annexation plans. As noted in the scope of work section of this appraisal, I am to appraise the subject as if no endangered or threatened species or designated critical habitat for a species listed as threatened or endangered, exist in the

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



area. Therefore, I assume that the Cities of St. George and Washington would not be hindered in annexing additional lands in the immediate area and that it could be developed and serviced with utilities.

The water delivery system is located approximately 1,356 LF to the east at Water Line Road. Sewer, natural gas, and telephone are located approximately 5,402 LF to the east at Bluff Hill Drive. Power is located to the subject site along the south property line and crossing the northwest corner of the subject parcel. However, power would need to be extended from the existing substation located 866 LF to the west and could be under-slung on the existing power poles.

The existing St. George city limits is located adjacent south of the subject. If the cities of St. George and Washington were to annex land north of the current city limits (St. George) or west of the city limits (Washington), the following services would be provided by the entities listed below:

|                   | St. George           | Washington          |
|-------------------|----------------------|---------------------|
| Water:            | City of St. George   | Washington City     |
| Sanitary Sewer:   | City of St. George   | Washington City     |
| Electricity:      | City of St. George   | Washington City     |
| Telephone:        | Century Link         | Century Link        |
| Natural Gas:      | Dominion Energy      | Dominion Energy     |

Police protection is provided by the respective municipalities and fire protection is provided by volunteer fire departments throughout the entire Washington County area. Utilities for the neighborhood are considered adequate and are provided at costs competitive with other cities in the region.

## COVENANTS, CONDITIONS AND RESTRICTIONS

There are no known covenants, conditions or restrictions impacting the property that would affect the marketability or highest and best use for residential development.

## SOILS

A soils report was provided by the client for review. The Due Diligence Mineral Preview report dated September 18, 2020 states that there is no evidence to support the existence of mineral resources with development potential on the subject property.

Washington County provides the following regarding soils:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

**Site Analysis (Larger Parcel)**





Based on the above, the subject soils range from a Harrisburg fine sandy loam to Rock Outcrop. None of these soil categories are conducive to farming but are consistent with soils in existing

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

developed areas of Washington City and St. George. Based on known soils in the area, the existing soils appear to be of sufficient load-bearing capacity for development.

## SITE IMPROVEMENTS

As of the effective date of value, no on-site improvements were noted. The region is designated as open space and is within the Red Cliffs Desert Reserve or the Red Cliffs National Conservation Area, a preserve for the desert tortoise. Most of the privately-owned lands within the Reserve have been or are being acquired by the BLM or other federal agencies in order to maintain the area's undeveloped nature for threatened and endangered species.

## ADJACENT LAND USES

The dominant land use near the subject is vacant undeveloped desert acreage to the north and west. However, pockets of commercial and industrial uses, a master-planned community, as well as pockets of smaller residential developments are located immediately to the east and further south of the subject outside of the Red Cliffs Desert Reserve. Adjacent land uses include:

North:      Vacant undeveloped land privately owned by the State of Utah.

South:      Vacant undeveloped land owned by the United States of America (managed by Bureau of Land Management) and Utah Department of Natural Resources.

East:       Undeveloped land owned by Washington County and United States of America (managed by Bureau of Land Management).

West:       Vacant undeveloped land owned by the (managed by Bureau of Land Management).

It appears the subject property and the surrounding property uses are generally compatible with each other. Adjoining uses to the north, west, east and south are identified as open space with residential development potential. The proposed Northern Corridor is currently planned to the east of the subject property. However, the corridor has yet to been approved nor has the final right-of-way been established.

## BENEFICIAL FACTORS

- Subject has legal access from Bluff Hill Drive.
- The subject is located in unincorporated Washington County, adjacent to the city limits of St. George.  The subject is also within the city of St. George "annexation plan", and if annexed would have immediate accessibility to all public utilities.
- High demand for residential housing has increased demand for larger residential land parcels.
- Subject is located approximately 2.5 miles northeast of downtown St. George.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

- Subject is located in the immediate growth path of St. George/Washington City.
- Power is located to the site but would require extension from the substation located 866 LF to the west.
- Water is located 1,356 LF to the east at Water Line Road.

## DETRIMENTAL FACTORS

- Improved road access is located 5,402 LF to the east at Bluff Hill Drive.
- Sewer is located 5,402 LF to the east at Bluff Hill Drive.

## CONCLUSION

The subject parcel is located adjacent north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development. The property has legal access from Bluff Hill Drive within the Westgate Hills subdivision at Green Springs. Power is located to the subject property but would require extension from the substation located 866 LF to the west. Water is located 1,356 LF to the east at Water Line Road. Sewer and road extension would be required from Bluff Hill Drive approximately 5,402 LF.

The size of the subject parcel (larger parcel, remainder parcel, acquisition parcel) would be desirable for residential development, though varying density-developments would be warranted for the larger parcel and remainder parcel (due to their larger size), which is consistent with other development parcels in the area.

The subject parcel is suitable for a wide range of residential uses that would likely include a range of densities. However, some clustering of units would likely be warranted and approved to protect exiting land features on the parcel.

A progressive development approach with sharing of infrastructure costs with adjoining landowners is typical for the market. Future development of the subject parcel in both the before and after condition would be expected to include primarily residential uses in addition to open space and public uses.



© 2021 CBRE, Inc.

# Washington County Zoning (Larger Parcel)

Subject is currently zoned OS, Open Space. The purpose of the open space zone is to minimize flooding, erosion and other environmental hazards; to protect the natural scenic character of areas not suitable for development; to promote the wellbeing of present and future residents of the city; and to ensure the efficient expenditure of public funds. (Ord. 89-5, 3-1-1989)

In the open space zone, no property shall be used, and no building shall be erected or altered so as to be arranged, intended or designed to be used for other than one or more of the following uses:

Airport, Cemetery, Emergency equipment routes to provide essential emergency services, such as fire control, Livestock grazing, including incidental corrals, barns or pens, Public or private recreation facilities which will not significantly alter the natural form of the landscape, Public utilities and transmission lines, Raising of crops, horticulture and gardening. (Ord. 2004-18, 6-9-2004)

The following are area, width and yard regulations for the OS, Open Space zone:

| District | Area | Width In Feet | Yards In Feet | | |
|----------|------|---------------|-------|------|------|
| | | | Front | Side | Rear |
| OS | 20 acres | 500 | 50 | 30 | 50 |



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

**Zoning (Larger Parcel)**

### St. George City General Land Use Plan Map

The St. George City General Land Use Plan identifies the subject as Open Space. The City's objective to preserve from development, as much as practicable, open space areas to include:

1. the floodplains of the Virgin River and Santa Clara River, along major drainage washes, the Red Cliffs Desert Reserve habitat area, Webb Hill and other environmentally sensitive areas; and

2. the hillsides that form the backdrop to the City, both the Black and Red Hills, retain their character and remain mostly undeveloped; and where the hillsides are developed, the hillside scars are reclaimed to a natural condition or are hidden from public view by buildings;

Targeted areas to retain the OS designation include steep slopes with grades of over 15% because of the difficulties associated with developing steep slopes, such as rock fall, scarring, slope failure, erosion, storm water control, and traffic access.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

The following chart summarizes the subject's zoning requirements.

| ZONING SUMMARY | |
|---|---|
| Current Zoning | OST (Open Space Transitional), Red Cliffs Desert Reserve and Red Cliffs National Conservation Area |
| Legally Conforming | See Comments Below |
| | Subject is currently zoned OS, Open Space. The OS designation requires 20-acre lots with uses limited to public and agricultural uses. |
| Zoning Change | Likely to VLD (Very Low Density Residential) and LD (Low Density Residential) |
| | **VLDR (Very Low Density Residential)** |
| | This category includes zoning categories of RA-1/2, and R-1-15 permitting 1.5 to 2.5 units per acre described as very low density, large lot single-family development with limited agricultural uses. |
| | **LD (Low Density Residential)** |
| | This category includes zoning categories of R-1-12 and R-1-10 permitting 3 to 4 units per acre described as low density, single-family development, most typically single family residential development. |

Source: Washington City Zoning and CBRE, Inc.

## LIKELY ZONE CHANGE

The subject property consists of a single rural tract of land containing 266.42 acres, more or less, owned by James P. Doyle. Because the subject parcel does have near term development potential, noting that power is located to the site (south property line – requires extension from the existing substation 866 LF to the west), water located 1,356 LF to the east, sewer 5,402 LF to the east, and improved access 5,402 LF to the east, subject's location adjacent north of the St. George City limits and within the St. George City annexation plan would support a rezoning of the property upon annexation in to the City.

## PROBABILITY OF REZONING

If the subject were outside of the Red Cliffs Desert Reserve, there is high probability of rezoning for residential development similar to what exists on nearby properties in the Middleton area to the south. Currently, demand for developable residential land is strong in the local market.

If the subject parcel were available for development, its property characteristics would be attractive to buyers. As shown on the map presented on the following page, the subject parcel is within the St. George City designated annexation area, and according to the city officials, this area has been designated as amenable to the City for submission of development proposals. If located in the pre-designated annexation area, the process can take approximately 6 months.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



The subject parcel is located in unincorporated Washington County in an area targeted by St. George City for annexation.

I reviewed the St. George City General Land Use Maps identifying existing and future land use categories for the adjoining lands.

While the subject property is not located in St. George City, development patterns for nearby communities provide support as to the potential zoning for the subject parcels.

The city of St. George's General Land Use Plan stipulates that "the City will support regional efforts to prevent the destruction of critical habitats in order to avoid the listing of threatened species." The Land Use Plan further states that "land use proposals that could have adverse impacts on critical wildlife or plan habitats shall be modified to eliminate or adequately mitigate such adverse impacts."

Consistent with the directive of Public Law No. 104-333, § 309(f), the subject will be appraised disregarding the presence of all species listed as threatened or endangered or any proposed or actual designation as critical habitat. Removing the influence of threatened or endangered species from the most probable zoning determination, the probability of obtaining a similar zoning as that of other newly developed tracts is highly probable. Newly developed tracts in the St. George area are designated PD-R (Planned Development – Residential), with a Land Use designation of LDR (Low Density Residential) permitting approximately 2.1 to 4.0 units per acre.

Disregarding any species listed as threatened or endangered would support my conclusion that the subject parcel has a high probability of rezoning to an LDR Land Use district permitting development densities ranging from 2.1 to 4.0 units per acre. This conclusion was made based on recent zoning categories for newly developed planned unit developments such as Desert Color in southwest St. George, and Divario in northwest St. George. These lands were previously zoned Open Space, or Mining & Gravel (a retired zoning category). Rezoning of those parcels from Open Space or Mining & Grazing to Planned Development – Residential (with land uses consistent with the LDR Land Use categories) was successful. Because of open space included in both the Desert Color and Divario developments, the overall project densities fall within the LDR range of 2.1 to 4.0 units per acre, supporting my conclusion that an LDR density of 2.1 to 4.0 units per acre would be expected for the subject.

### Change in Zoning Process

According to interviews conducted (Bush and Gudgell, Inc., JViation, Darcy Stewart – Sun River Master Plan, Mark Schnippel – Divario Master Plan), the estimated cost for entitlement is generally considered nominal for larger tracts of land but can range from $15,000 to $30,000. Where infrastructure is absent, the entitlement process can range from 3 months to 12 months, depending on the intensity of zoning requested and conformity to the General Land Use Plan. In the case of the subject, the most probable overall land use designation would be LDR supporting a density of 2.1 to 4.0 units per acre.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



*Zoning (Larger Parcel)*

## St. George/Washington City/Hurricane Annexation Map



**Recent Annexations**

1. 836 Acres (Airport South Block) – Mix of private and city-owned lands – Application Approved Jan. 2019

2. 1,500 Acres (Long Valley) – Primary landowners include 605 acres (200 building lots) owned by Brennan Holdings and 753 acres owned by BLM - Annexation Approved Nov. 2018

3. 10.57 Acres (Whitworth Land) to be zoned R-1-12 – Annexed Nov. 2018

4. 5.15 Acres (LDS Church Property) to be zoned R-1-15 – Annexed May 2017

5. 29.30 Acres (Green Springs) – Land owned by Brennan Holdings – Residential Land to be zoned R-1-8 and R-1-15 - Annexed Dec. 2013

6. 174 Acres – Located west of Dixie Drive on the former Burt Burgess property. City staff recommended approval on April 15, 2021.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

**CBRE**

© 2021 CBRE, Inc.

## CONCLUSION

Considering the development patterns found in the City of St. George's newly developing planned unit developments, Low Density residential uses would be probable for the subject with some open space requirements.  It is my opinion that rezoning of the property would be imminent or probable in the near term.   Given the large size of the subject property, a PD (Planned Development) zoning designation would be expected.  The approved development plan would likely include a mixture of residential densities with the most prominent uses being low-density single-family residential.

© 2021 CBRE, Inc.

# Tax and Assessment Data (Larger Parcel)

The subject parcels are held in "Greenbelt" and subject to the Utah Farmland Assessment Act (FAA, also called the Greenbelt Act), which allows qualifying agricultural property to be assessed and taxed based upon its productive capability instead of the prevailing market value. According to the Washington County Assessor's Office, the FAA allows properties to be taxed on their productive capability instead of the prevailing market value. When the land becomes ineligible for farmland assessment, the owner becomes subject to a rollback tax. The rollback tax is the difference between the taxes paid while on greenbelt and the taxes which would have been paid had the property been assessed at market value. In determining the amount of rollback tax due, a maximum of five years preceding the change in use will be used. The tax rate for each of the years in question would then be applied to determine the tax amount.

*Appraiser Comment: While the rollback tax would impact the "net" profit of a non-public owner following a sale, it would not impact the "market value" of the property.*

Because the subject parcel is owned by James P. Doyle. The taxable amount of the property by Washington County and estimated taxes based on the current tax rate are estimated following:

| AD VALOREM TAX INFORMATION - JAMES P. DOYLE PARCEL | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Tax ID | APN Assessed Size (Acres) | Assessment Year | Market Value | Taxable Value | Tax Rate | Total Taxes | Taxes Per Gross Acre | Subject Size (Acres) | Subject's Allocated Taxes |
| 1 | 266.42 | 2020/2021 | $2,131,400 | $2,131,400 | 0.007657 | $16,320 | $61.26 | | |
| | | | | | | | Larger Parcel | 266.42 | $16,320 |
| Tax ID | APN Assessed Size (Acres) | Assessment Year | Market Value | Taxable Value | Tax Rate | Total Taxes | Taxes Per Gross Acre | Subject Size (Acres) | Subject's Allocated Taxes |
| Total | 266.42 | 2020/2021 | $2,131,400 | $2,131,400 | 0.007657 | $16,320 | $61.26 | | |
| | | | | | | | Remainder Parcel | 213.14 | $13,056 |

Source: Washington County Assessor and CBRE, Inc.

As noted above, the Assessor's Market and Taxable Values are equivalent to $61.26 per acre ($2,131,400 ÷ 266.42 = $61.26). Washington County values land in the area based on current zoning and use. The above valuations are consistent with the Open Space zoning and agricultural category common to rural range land similar to other lands within the growth path of development.

## CONCLUSION

The estimated taxes, based on the current Washington County assessment of the larger parcel totals $16,320. Development land similar to the subject is typically held in "Greenbelt" until the time it is ready to be placed into development. Further, when large tracts of land are involved, only portions are removed from "Greenbelt". Consequently, due to the short period following the removal of the land from "Greenbelt" status, residential lots are created, and the taxes are then transferred to the lot owner.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

# Highest and Best Use (Larger Parcel)

In appraisal practice, the concept of highest and best use represents the premise upon which value is based. The four criteria the highest and best use must meet are:

- legally permissible;
- physically possible;
- financially feasible; and
- maximally productive.

The highest and best use analysis of the subject is discussed below.

## LARGER PARCEL ANALYSIS

In every appraisal that conforms to UASFLA the appraiser must address and form an opinion of the larger parcel. A larger parcel is defined as "that tract, or those tracts, of land that possess a unity of ownership and have the same, or an integrated, highest and best use."[5]

The larger parcel may be the parent tract from which an acquisition is made or from which a portion is sold. If the proposed acquisition or Sale Parcel is linked to other lands by ownership, use, and contiguity, it may be necessary to consider the entire linked assemblage as a larger parcel, with the appraisal addressing the value of the larger parcel. "Unity of use" means that the acquisition or Sale Parcel and the larger parcel it comes from (if applicable) support a single, integrated use, or related uses such that one is diminished without the other. The object of larger parcel analysis is not just an academic exercise; the concept arose in eminent domain appraisal practice in order to ensure that both the condemnor and condemnee were treated fairly. It requires the appraiser to appraise the acquisition or Sale Parcel according to its pro-rata contribution to the larger real estate enterprise, and not as an isolated parcel that must stand (or fall) on its own merits.

The larger parcel must be identified and the reasons for that decision must be provided within the appraisal report with consideration given to ownership, use, and contiguity.

### Unity of Ownership

The subject is owned by James P. Doyle. None of the adjoining parcels have similar ownership, nor are there nearby parcels under the same ownership. This would suggest the larger parcel is the subject 266.42 acres.

### Contiguity of Use

Contiguity of use is more of an engineering question to be solved. The test requires that the property be physically contiguous and not separated. For example, if two parcels processing unity

---

[5] Interagency Land Acquisition Conference, *Uniform Appraisal Standards for Federal Land Acquisitions*, 6th ed. (Appraisal Foundation, 2016), p. 23.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

of use and unity of title are very far apart, it is more likely that the owner would be able to find a suitable replacement property nearby if one the parcels were separated.

First, there are no adjoining parcels under the same ownership.

As previously discussed, the subject 266.42 acres consists of undeveloped vacant land. There is no specific use or development currently occupying the subject or any of the adjoining parcels.

There is no existing use on the 266.42-acre parcel that would be negatively impacted by separating it from adjoining parcels. Therefore, there is no contiguity of use between the subject 266.42-acre parcel and any adjoining parcels.

### Unity of Highest & Best Use

Unity of use is generally an economic question to be answered and is the most important condition to be met. In strict terms, the unit of use test requires that the property be devoted to a single unified use, or have a common, integrated highest and best use.

The subject 266.42 acres lacks unity of ownership with adjoining parcels and lacks contiguity of use with adjoining parcels. Further, the subject 266.42 acres does not share a unity of highest and best use with any other parcel.

Under the rules for larger parcel determination, as two physically separate tracts may constitute a single larger parcel, a single contiguous tract may constitute multiple larger parcels. In considering this, I note that the general market for speculative land (near-term development potential) in the area is driven by availability. In other words, buyers of residential land are not negotiating portions of available lands for purchase but purchasing what is available. The lack of availability is largely due to the ownership of much of the land by either the federal government, or by the State of Utah. In fact, according to Utah State University, in Washington County, only 17.8% of the land is held in private ownership, while the other 82.2% is public land. Of the public land, 74.7% is administered by the federal government, 5.7% by state government, and 1.9% is Indian Reservation. The lack of privately held land is somewhat mitigated by the participation of the State of Utah in making lands available for development through joint development agreements. However, the State of Utah's contribution overall is somewhat limited as the State only holds 5.7% of the available lands in Washington County.

In considering whether or not the subject 266.42 acres could have multiple larger parcels, it is clear that with such significant costs required to deliver infrastructure (water, sewer, power, and improved access) to the site, it would be difficult for smaller land ownerships to front these costs alone, lending support to our conclusion that the larger the parcel, the more desirable the parcel to the market to help spread the cost of needed infrastructure. In this case, the larger parcel's maximum size is limited to the 266.42 acres owned by James P. Doyle. Therefore, the maximum size available in selecting the larger parcel is the subject 266.42 acres.



© 2021 CBRE, Inc.

## Conclusion of Larger Parcel Analysis

It is my conclusion that the market would recognize the subject 266.42-acre parcel as a single larger parcel. The 266.42-acre parcel lacks unity of ownership with adjoining parcels, lacks contiguity of use with adjoining parcels, and does not have unity of highest and best use with adjoining parcels.  Furthermore, the 266.42-acre subject parcel would not be more marketable in smaller parcels as an individual owner of a smaller parcel would not want to bear 100% of the cost to deliver infrastructure to the area. Therefore, the 266.42-acre parcel is the larger parcel as it provides more economy of scale in spreading future infrastructure cost over a greater number of acres.

## AS VACANT – HIGHEST AND BEST USE

### Legal Permissibility

Of those uses where size of the parcel is not a constraint, the key determinant in a possible development of the site is not "what" can be developed, but "how much," which is usually dictated by zoning. The existing zoning of Open Space by Washington County is only a holding category. While I recognized that Washington County provides an avenue for intensifying the zoning, it does not provide needed services necessary for development. To maximize the subject's development potential, annexation into the City of St. George would be necessary to provide needed utilities. I have demonstrated that local municipalities continue to approve residential development plans throughout the area and approval of a more intensive use than that currently zoned would be expected.

Recent examples of changes in zoning from Open Space to a higher and better use were previously outlined. In general, St. George City is considered "pro" development.  Based on the history of both annexation and rezoning of properties, a planned development community with primarily residential uses has a high probability of approval. Due to subject's proximity to existing development and noting that it is within the immediate growth path and the city's annexation plan, near term development would be expected.

### Physical Possibility

Of those uses where size of the parcel is not a constraint, the key determinant in a possible use of the subject parcel is not "what" it can be used for, but "how much," which is usually dictated by zoning. Parcels of similar size as subject could be utilized for a number of uses, depending on demand.

Without recapitulating all the physical characteristics of the larger parcel, the most impacting are highlighted below:

Size:                     266.42 Acres
Shape:                    L-Shaped

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



| | |
|---|---|
| Location: | Unincorporated Washington County, adjacent north of St. George City |
| Access: | The subject has legal access from Bluff Hill Drive, but would require improving the access approximately 5,402 LF |
| Zoning: | Open Space. A change in zoning to Very Low Density Residential is highly probable. |
| Annexation: | Within St. George City's annexation boundaries – highly probable |
| Growth Path: | Located approximately one mile west of the existing Green Springs master plan community and approximately 0.8 miles northwest of existing development in St. George city. Near-term development potential of Very Low Density Residential |
| Soils: | Another consideration is the soil and subsoil composition and associated constraints. As discussed earlier in the Site Description section, the soil and subsoil composition appear to be of adequate load-bearing capacity similar existing nearby communities. While most sediments in the Washington County area often require recompacting, they are suitable as a base for development of structures constructed of most building materials. |
| Size: | Size, topography, access and location are the most important determinants of value. In general, the larger the parcel, the greater its potential to achieve economies of scale and adaptability to development. While a large site may benefit from economies of scale for a large master-planned development, a smaller site (say less than 100 acres) has greater marketability as smaller parcels are more acceptable to the typical buyer. |
| Topography: | The topography of the subject provides variations ranging from level to rolling to steep terrain. Certain areas of the subject are impacted by hillsides. I have estimated approximately 7% of the subject is unusable due to steep hillsides with slopes above 30% and due to portions of these areas located within a Zone A flood zone. |
| Availability of Utilities: | Utilities would be available to the property through St. George City upon completion of annexation. All utilities are located approximately 5,402 LF to the east at Bluff Hill Drive. |

### Financial Feasibility/Maximally Productive

Financial feasibility of the site as vacant requires the analysis of those uses that are both physically possible and legally permissible. Of the physically possible and legally permissible uses, the use resulting in the highest return to the land component is the maximally productive use for the site.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



The subject's long-term development potential is most influenced by current land uses in St. George City and influenced by those lands located in the developing Green Springs area, and the distance from existing infrastructure (water, sewer, gas, telephone, etc.). Power is located to the site but would require extension from the substation located 866 LF to the west. Demand for developable residential land within St. George City's and Washington City's growth path would suggest that near-term development is likely, especially when recognizing that the cost of extending infrastructure (utilities and access) could be shared between other landowners in the area.

Interim uses have also been considered. Interim uses within the market area would largely be limited to a ranching use. In addition to the lack of water rights associated with the subject 266.42-acre parcel, and inadequate soils for productive farming, farming would be precluded from consideration. This would leave ranching as a potential alternative interim use.

The map below identifies the subject location and proximity of existing grazing allotments in the area. Grazing allotments are typically on state or federal lands in Washington County.



As a whole, the profitability of ranching operations is dependent on the underlying land value of the ranch. When the return to the land from other uses is higher than a ranching operation, ranching becomes only a secondary use. In the subject's case, the land sales found within the market area support that conclusion that the majority of buyers are not purchasing land in close proximity to metro St. George for ranching purposes. Because of the proximity of a large population base found in metro St. George, the recreational rancher has emerged as an active player for historical ranches in the region. The cost to public agencies to manage grazing lands is significantly higher than benefits achieved from grazing fees, which is likely to continue to put pressure on agencies to increase grazing fees. However, with many ranching operations near

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

bankruptcy, and with the number of ranching operations in decline, an increase in grazing fees would even further the rapid demise of the industry.

According the Arizona Ranching Budgets: 2016, prepared by the University of Arizona College of Agriculture & Life Sciences, the Western Desert Region, which includes the Mojave Desert area, a maximum land value to produce a breakeven cattle operation is $1,100 per acre of private deeded land. As will be shown in the valuation section, developable land in the area in close proximity to population centers are paying significantly more than this amount with acquisition intended for residential development. With the economic viability of ranching in question throughout the larger region, and especially in the arid Mojave Desert, the recreational rancher has emerged. The recreational rancher typically resides close-by in populated areas that provide associated amenities and services that include employment, medical and shopping. The recreational rancher is typically a weekend rancher escaping on the weekends to tend to ranching duties. Larger ranching operations may include a part time or full-time ranch caretaker that spends more time onsite. For the recreational rancher, economic feasibility of the ranch is less important than the recreational benefits of ranching and associated ranching lifestyle.

With limited rainfall in the area (St. George only receives on average 8.2 inches of annual precipitation), ranchers would either need to own water rights for well use, have rights to surface water, or deliver water to the site. Because of the low quality of desert range land in the area with poor forage, the carrying capacity is low. Further, the majority of ranches in the area use a combination of private and public lands to raise cattle. Ranchers who own public allotments might be attracted to the subject if they controlled allotments close by. However, because of the rising cost of ranching, coupled with high land values and the fact that a significant portion of the land in the area is encumbered by the Habitat Conservation Plan (HCP), acquisition of range land for ranching more typically occurs in the most rural areas of the county with ranchers paying $500 to $1,000 per acre – this is most common on the periphery of metro St. George.

In the final analysis, ranching uses in close proximity to existing development in metro St. George are <u>not</u> considered economically feasible based on current land values in the area.

In the final analysis, the highest and best use of the subject is for near-term residential development consistent with existing development patterns located to the south in the Green Springs area.

### Most Probable Buyer

Because the subject has near-term development potential, the most probable buyer would be a homebuilder or residential land developer.

© 2021 CBRE, Inc.



# Land Value (Larger Parcel)

The following map and table summarize the comparable data used in the valuation of the subject site. A detailed description of each transaction is included following the Area Map.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## SUMMARY OF COMPARABLE LAND SALES

| No. | Property Location | Transaction | | Intended Use | Actual Sale Price | Adjusted Sale Price [1] | Size (Acres) | Price Per Acre |
|-----|-------------------|------|------|--------------|-------------------|------------------------|--------------|----------------|
| | | Type | Date | | | | | |
| 1 | NWC of Main Street & East Buena Vista Boulevard Washington, UT 84780 | Sale | Nov-14 | Near-Term Residential Development | $8,826,325 | $8,826,325 | 192.08 | $45,951 |
| 2 | North Side of 1050 South Street at 2780 East Street St. George, UT 84790 | Sale | Jul-16 | Near-Term Residential Development | $4,700,000 | $4,700,000 | 46.07 | $102,019 |
| 3 | SWC Seegmiller Drive & 3000 East St. George, UT 84790 | Sale | May-18 | Near-Term Residential Development | $3,900,000 | $3,900,000 | 38.43 | $101,483 |
| 4 | NWC Kwavasa Drive and 200 South Street Ivins, UT 84738 | Sale | May-19 | Near-Term Residential Development | $2,000,000 | $2,000,000 | 20.56 | $97,276 |
| 5 | East of 3430 East Street at 3200 South Street St. George, UT 84790 | Sale | Oct-19 | Near-Term Residential Development | $3,000,000 | $3,000,000 | 27.29 | $109,934 |
| 6 | East End of White Dome Drive, North side of Southern Parkway St. George, UT 84790 | Sale | Apr-20 | Near-Term Residential Development | $3,697,500 | $3,697,500 | 28.18 | $131,210 |
| 7 | Long Valley Road Washington, UT 84780 | Sale | Dec-20 | Near-Term Residential Development | $10,000,000 | $10,000,000 | 202.00 | $49,505 |
| Subject | Adjacent North of the city limits of St. George, St. George, Utah | --- | --- | Near-Term Residential Development | --- | --- | 266.42 | --- |

[1] Adjusted sale price for cash equivalency and/or development costs (where applicable)
Compiled by CBRE



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Sale                         Land - Planned Development                    No. 1

| | |
|---|---|
| Property Name | Brio Active Adult Planned Community |
| Address | NWC of Main Street & East Buena Vista Boulevard |
| | Washington, UT 84780 |
| | United States |
| | |
| Government Tax Agency | Washington |
| Govt./Tax ID | W-5-2-1-122 (portion of) |



### Site/Government Regulations

| | Acres | Square feet |
|---|---|---|
| Land Area Net | 192.080 | 8,367,005 |
| Land Area Gross | 192.080 | 8,367,005 |

| | |
|---|---|
| Site Development Status | Raw |
| Shape | Irregular |
| Topography | Moderate Slope |
| Utilities | All to site |

| | |
|---|---|
| Maximum FAR | N/A |
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 3.18 per ac |

| | |
|---|---|
| Frontage Distance/Street | 1,300 ft Buena Vista Boulevard |
| Frontage Distance/Street | 5,970 ft Main Street |

| | |
|---|---|
| General Plan | Washington City General Plan |
| Specific Plan | Green Springs Master Plan |
| Zoning | Un-Zoned |
| Entitlement Status | None |

### Sale Summary

| | | | |
|---|---|---|---|
| Recorded Buyer | RREF II-JFH Brillo, LLC | Marketing Time | 6 Month(s) |
| True Buyer | Henry Walker Homes | Buyer Type | Developer |
| Recorded Seller | State of Utah | Seller Type | Other |
| True Seller | Utah School & Institutional Trust Administration (SITLA) | Primary Verification | Colin Wright (Henry Walker Homes), Kyle Pasley/Roger Mitchell (SITLA), Settlement Statement |
| | | | |
| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| Current Use | Vacant Land | Date | 11/6/2014 |
| Proposed Use | Active Adult Planned Community | Sale Price | $8,826,325 |
| Listing Broker | N/A | Financing | All Cash |
| Selling Broker | N/A | Cash Equivalent | $8,826,325 |
| Doc # | 20140034108 | Capital Adjustment | $0 |
| | | Adjusted Price | $8,826,325 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
|---|---|---|---|---|---|
| 11/2014 | Sale | RREF II-JFH Brillo, LLC | State of Utah | $8,826,325 | $45,951 / $1.05 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## Sale — Land - Planned Development — No. 1

### Units of Comparison

| | | | |
|---|---|---|---|
| $1.05 / sf | | N/A / Unit | |
| $45,951.30 / ac | | $14,469 / Allowable Bldg. Units | |
| | | N/A / Building Area | |

### Financial

**No information recorded**

### Map & Comments



This 192.08-acre parcel is one of the few development parcels sold by SITLA, and the first takedown parcel in SITLA's 1,140-acre Green Springs master planned community. On August 6, 2013, HWLS Greensprings, LLC entered into a sale agreement with the State of Utah School and Institutional Trust Lands Administration to acquire this property for a purchase price of $8,510,000 for 189.08 acres, later adjusted due to an increase in land size to $8,643,041.07 for 192.08 acres. The initial scheduled closing was April 30, 2014. However, due to multiple subsequent delays in closing, a final $183,284 extension penalty was imposed bringing the total purchase price to $8,826,325.07. The closing was delayed due to a lengthy due diligence period caused by the acquisition of the buyer's company during the process. On October 16, 2014, HWLS Greensprings, LLC assigned its rights to RREF II-JFH Brillo, LLC. The buyer acquired the property to develop an active adult community called Brio that includes a 14,500 square foot community center, indoor pool and spa, card room and fitness center, outdoor pool and spa, tennis courts, pickleball courts, playgrounds, parks, and walking and biking trails.

Development started in 2014 with the first home closed by master developer Jack Fisher Homes on January 15, 2016. From January 15, 2016 through mid-March 2019 (38 months), Brio has closed 171 homes indicating a closing rate of 4.5 homes per month. Excluding the first 6.5 months when the project was first coming out of the ground, 162 homes closed in in a 31.5-month period, or an absorption rate of 5.1 closings per month. Upon build out, the community will have 610 single-family homes ranging in size from 1,595 to 2,773 square feet.

As of the date of purchase, the property was accessible from Buena Vista Boulevard and Main Street. Main Street required 3,000 LF of half-street improvements (30' wide) along the property line, and Buena Vista Boulevard required 265 LF of half-street improvements (30' wide) along the property line. No water rights were included in the sale. At the time of purchase, water and sewer were located immediately to the site at the intersection of Main Street and Buena Vista Boulevard.

Confirmation By Rick Smith with: Colin Wright representing the buyer (Henry Walker Homes – HWLS Greensprings, LLC); Kyle Pasley & Roger Mitchell, Utah School & Institutional Trust Lands (State of Utah); Southern Utah Title Company Settlement Statement; Purchase Contract with Addendums 1-3; State of Utah Certificate of Sale No. 26579; and State of Utah Patent No. 20331.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Land Valuation (Larger Parcel)

| Sale | Land - Planned Development | No. 1 |





Photograph April 2013 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

| Sale | Land – Planned Development | No. 1 |



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

## Sale — Land - Residential Subdivision — No. 2

| | | |
|---|---|---|
| Property Name | Moorland Park Subdivision | |
| Address | North Side of 1050 South Street at 2780 East Street | |
| | St. George, UT 84790 | |
| | United States | |
| Government Tax Agency | Washington | |
| Govt./Tax ID | SG-5-2-34-42001 & SF-5-2-31-434 | |



**Site/Government Regulations**

| | Acres | Square feet |
|---|---|---|
| Land Area Net | 46.070 | 2,006,809 |
| Land Area Gross | 46.070 | 2,006,809 |

| | |
|---|---|
| Site Development Status | Raw |
| Shape | Irregular |
| Topography | Generally Level |
| Utilities | All to site |

| | |
|---|---|
| Maximum FAR | N/A |
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 2.60 per ac |

| | |
|---|---|
| General Plan | City of St. George |
| Specific Plan | Residential Development |
| Zoning | A-20 (Agricultural), City of St. George |
| Entitlement Status | None |

### Sale Summary

| | | | |
|---|---|---|---|
| Recorded Buyer | Reverse Exchange No. 56, LLC | Marketing Time | 10 Month(s) |
| True Buyer | Ed Burgess | Buyer Type | Corporation |
| Recorded Seller | Max E. Seegmiller, LTD | Seller Type | Corporation |
| True Seller | Seegmiller Family | Primary Verification | Ed Burgess (buyer) 435-634-0111 |
| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| Current Use | Farm Land | Date | 7/18/2016 |
| Proposed Use | Residential Development | Sale Price | $4,700,000 |
| Listing Broker | N/A | Financing | Cash to Seller |
| Selling Broker | N/A | Cash Equivalent | $4,700,000 |
| Doc # | 20160025618 | Capital Adjustment | $0 |
| | | Adjusted Price | $4,700,000 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
|---|---|---|---|---|---|
| 07/2016 | Sale | Reverse Exchange No. 56, LLC | Max E. Seegmiller, LTD | $4,700,000 | $102,019 / $2.34 |

### Units of Comparison

| | | |
|---|---|---|
| $2.34 / sf | N/A | / Unit |
| $102,018.67 / ac | $39,167 | / Allowable Bldg. Units |
| | N/A | / Building Area |

### Financial

**No information recorded**

### Map & Comments



 Map data ©2021

This sale represents the acquisition of the primary parcel for Moorland Park Subdivision. The property was zoned A-20 (Agricultural) at the time of sale. The buyer rezoned the property to R-1-10 (Single Family Residential - 10,000 SF Lots) in September 2016. The buyer already owned the adjacent 20-acre site. This 46.07 acres was acquired for development of approximately 120 residential lots. The developer is selling lots to several local homebuilders including New Trend construction. Lots start at around $160,000 for one-third acre lots. Homes are selling beginning in the low $500,000s. No water rights were included in the sale. At the time of purchase, public water and all utilities were located at 3000 East Street and 1140 South Street. Because the buyer already owned the adjoining land, utilities were delivered immediately to the sale parcel through phasing of development. Buyer will be required to provide 660 LF of half-street improvements (25' wide) along 2780 East Street.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



Land Valuation (Larger Parcel)

| Sale | Land - Residential Subdivision | No. 2 |





Photograph June 21, 2020 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

CBRE

**Sale**                    **Land – Residential Subdivision**                    **No. 2**





Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Land Valuation (Larger Parcel)

## Sale — Land – Residential Subdivision — No. 3



| Property Name | The Arbors (Phase 3) |
| --- | --- |
| Address | SWC Seegmiller Drive & 3000 East<br>St. George, UT 84790<br>United States |
| Government Tax Agency | Washington |
| Govt./Tax ID | SG-5-3-10-3100 |

**Site/Government Regulations**

|  | Acres | Square feet |
| --- | --- | --- |
| Land Area Net | 38.430 | 1,674,011 |
| Land Area Gross | 38.430 | 1,674,011 |

| Site Development Status | Raw |
| --- | --- |
| Shape | Irregular |
| Topography | Moderate Slope |
| Utilities | All to site |

| Maximum FAR | N/A |
| --- | --- |
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 2.73 per ac |

| Frontage Distance/Street | 2,077 ft Seegmiller Drive |
| --- | --- |
| Frontage Distance/Street | 930 ft 3000 East Street |

| General Plan | N/A |
| --- | --- |
| Specific Plan | Low density residential |
| Zoning | R-1-12 (Single-Family Residential) and RE-20 (Residential Estate), City of St. George |
| Entitlement Status | N/A |

### Sale Summary

| Recorded Buyer | 3000 East Holdings, LLC | Marketing Time | N/A |
| --- | --- | --- | --- |
| True Buyer | Ed Burgess | Buyer Type | Corporation |
| Recorded Seller | Seegmiller Family, LTD | Seller Type | Corporation |
| True Seller | Scott Seegmiller | Primary Verification | Ed Burgess (435-634-0111); Deed & Purchase Contract, Doc. ID#20180021491 |

| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| --- | --- | --- | --- |
| Current Use | Agricultural | Date | 5/23/2018 |
| Proposed Use | Residential Development | Sale Price | $3,900,000 |
| Listing Broker | N/A | Financing | Cash to Seller |
| Selling Broker | N/A | Cash Equivalent | $3,900,000 |
| Doc # | 20180021491 | Capital Adjustment | $0 |
|  |  | Adjusted Price | $3,900,000 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
| --- | --- | --- | --- | --- | --- |
| 05/2018 | Sale | 3000 East Holdings, LLC | Seegmiller Family, LTD | $3,900,000 | $101,483 / $2.33 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

## Sale | Land - Residential Subdivision | No. 3

### Units of Comparison

| | |
|---|---|
| $2.33 / sf | $37,143 / Unit |
| $101,483.22 / ac | $37,143 / Allowable Bldg. Units |
| | N/A / Building Area |

### Financial

**No information recorded**

### Map & Comments



This comparable represents 38.43 acres at SEC Seegmiller Drive & 3000 East Street. The site's shape is irregular and its topography is generally level. The parcel has frontage along Seegmiller Drive and 3000 East Street. The property was formerly ranched by the Seegmiller family. The site was zoned R-1-12 (Single-Family Residential) and RE-20 (Residential Estate) at the time of sale by the City of St. George. The property sold in May 2018 for $3,900,000, or $101,483 per acre. This property was not listed for sale on the market at the time of sale but represents the exercising of an option agreement established in May 2016. It should be noted that the option agreement established the price in 2016 with no increases. The option required the buyer to takedown the property by 2020. These terms are viewed as favorable to the buyer as the market improved between the date of the option agreement and the exercising of the option in May 2018. The property was purchased as Phase 3 of The Arbors residential subdivision. The buyer plans to develop lots and sale them to homebuilders. Retail lot pricing at The Arbors approximates $130,000 to $140,000 per lot. Home pricing in The Arbors generally ranges from the mid $400,000s to the low $800,000s. Phase 3 of The Arbors is estimated to accommodate 105 lots at a density of 2.73 dwelling units per acre. No water rights were included in the sale. At the time of purchase, public water and utilities were located to the site along 3000 East Street. Approximately 2,100 LF of half street improvements (20' wide) will be required along Seegmiller Drive and 1,050 LF of half street improvements (30' wide) along 3000 East Street.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Land Valuation (Larger Parcel)**

## Sale — Land - Residential Subdivision — No. 3





Photograph June 21, 2020 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

89



© 2021 CBRE, Inc.

## Sale    Land – Residential Subdivision    No. 3



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

CBRE

## Sale — Land - Residential Subdivision — No. 4

| Property Name | Anasazi Vista Subdivision |
| --- | --- |
| Address | NWC Kwavasa Drive and 200 South Street |
| | Ivins, UT 84738 |
| | United States |
| | |
| Government Tax Agency | Washington |
| Govt./Tax ID | I-SB-49 & I-SB-49-B |

**Site/Government Regulations**

| | Acres | Square feet |
| --- | --- | --- |
| Land Area Net | 20.560 | 895,594 |
| Land Area Gross | 20.560 | 895,594 |

| | |
| --- | --- |
| Site Development Status | Raw |
| Shape | Rectangular |
| Topography | Generally Level |
| Utilities | Located 690 LF to the south |

| | |
| --- | --- |
| Maximum FAR | N/A |
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 2.63 per ac |

| | |
| --- | --- |
| Frontage Distance/Street | 651 ft Kwavasa Drive (600 West) |

| | |
| --- | --- |
| General Plan | City of Ivins |
| Specific Plan | Residential Subdivision |
| Zoning | R1-10 (Residential - 10,000 SF Lots), City of Ivins |
| Entitlement Status | None |

### Sale Summary

| | | | |
| --- | --- | --- | --- |
| Recorded Buyer | S&S Construction, Inc. | Marketing Time | 8 Month(s) |
| True Buyer | James Sullivan | Buyer Type | Corporation |
| Recorded Seller | Kent G. & Robbin J. Frei Family Living Trust and D. Jensen Family Trust | Seller Type | Corporation |
| True Seller | Kent Frei & DeeAnn Jensen | Primary Verification | Blake Frei; Purchase and Sale Agreement |
| | | | |
| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| Current Use | Raw Land | Date | 5/14/2019 |
| Proposed Use | Residential Development | Sale Price | $2,000,000 |
| Listing Broker | N/A | Financing | Cash to Seller |
| Selling Broker | Blake Frei with The Frei Team | Cash Equivalent | $2,000,000 |
| Doc # | 20200000618 | Capital Adjustment | $0 |
| | | Adjusted Price | $2,000,000 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
| --- | --- | --- | --- | --- | --- |
| 05/2019 | Sale | S&S Construction, Inc. | Kent G. & Robbin J. Frei Family Living Trust and D. Jensen Family Trust | $2,000,000 | $97,276 / $2.23 |

### Units of Comparison

| | | |
| --- | --- | --- |
| $2.23 / sf | $37,037 | / Unit |
| $97,276.26 / ac | $37,037 | / Allowable Bldg. Units |
| | N/A | / Building Area |

### Financial

**No information recorded**

### Map & Comments



Map data ©2021

This is the sale of a 20.56 acre parcel located in Ivins. The property sold for $2,000,000, $75,177 per lot, or $97,276 per acre. The property was marketed with 20 shares of Ivins irrigation water. However, verification of the sale indicated that the water rights were not included with the sale. The buyer plans to develop the parcel into 54 residential lots at a density of 2.63 dwelling units per acre. Public water and sewer will require an approximate 690 foot extension from the south. Approximately 690 LF of half street improvements (25' wide) will be required along Kwavasa Drive.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Land Valuation (Larger Parcel)





Photograph June 21, 2020 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Land Valuation (Larger Parcel)

| Sale | Land - Residential Subdivision | No. 4 |
|---|---|---|





Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Sale — Land - Residential Subdivision — No. 5

| Property Name | Teakwood Subdivision (a portion of) |
| Address | East of 3430 East Street at 3200 South Street |
| | St. George, UT 84790 |
| | United States |
| Government Tax Agency | Washington |
| Govt./Tax ID | SG-5-3-11-320 |



**Site/Government Regulations**

| | Acres | Square feet |
|---|---|---|
| Land Area Net | 27.289 | 1,188,709 |
| Land Area Gross | 27.289 | 1,188,709 |

| Site Development Status | Raw |
|---|---|
| Shape | Irregular |
| Topography | Moderate Slope |
| Utilities | 170 LF to the west at Crimson Ridge Drive |

| Maximum FAR | N/A |
|---|---|
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 1.72 per ac |

| General Plan | Residential |
|---|---|
| Specific Plan | Residential Lot Development |
| Zoning | A-1 (Proposed for R-1-12) |
| Entitlement Status | Tentative Tract |

### Sale Summary

| | | | |
|---|---|---|---|
| Recorded Buyer | Quality Properties, Inc. | Marketing Time | N/A |
| True Buyer | Ed Burgess/Development Solutions Group, Inc. | Buyer Type | Developer |
| Recorded Seller | Rudger C. Atkin, Inc. | Seller Type | Private Investor |
| True Seller | Rudger C. Atkin | Primary Verification | Purchase Contract; Ed Burgess (Buyer) |
| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| Current Use | Desert Land | Date | 10/3/2019 |
| Proposed Use | Residential Development | Sale Price | $3,000,000 |
| Listing Broker | None | Financing | All Cash |
| Selling Broker | None | Cash Equivalent | $3,000,000 |
| Doc # | 20190040698 | Capital Adjustment | $0 |
| | | Adjusted Price | $3,000,000 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
|---|---|---|---|---|---|
| 10/2019 | Sale | Quality Properties, Inc. | Rudger C. Atkin, Inc. | $3,000,000 | $109,934 / $2.52 |

### Units of Comparison

| | | | |
|---|---|---|---|
| | $2.52 / sf | $63,830 | / Unit |
| $109,934.41 / ac | | $63,830 | / Allowable Bldg. Units |
| | | N/A | / Building Area |

### Financial

**No information recorded**

### Map & Comments

This is the sale of a 27.289-acre parcel located in the Little Valley area of St. George proposed for development of a portion of the Teakwood Subdivision, a 78-lot development on 45.36 acres at a density of 1.70 units per acre. The purchase represents a takedown based on an option agreement and price established in 2018. The zoning is R-1-8 (Single Family Residential, 8,000 SF lot sizes). However, the developer is proposing a lower-density development with larger lots on the elevated bench to the east. Buyer had an option to purchase the property, though the price was negotiated at the time of purchase. Earlier "take downs" by the buyer ranged from $80,000 to $100,000 per acre. This property lies at the base of the cliffs to the east with rear yards of some lots within the rock fall zone. The site slopes to the east providing elevated views to the west and northwest of some of the lots. No water rights were included in the sale. At the time of purchase, there was no water service or utilities to the site. Utilities and infrastructure were located 170 LF to the west at Crimson Ridge Drive.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.







Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## Sale — Land – Residential Subdivision — No. 5



Photograph June 21, 2020 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## Sale — Land - Residential Subdivision — No. 6

| | |
|---|---|
| Property Name | Sage Canyon Subdivision (Phases 12-16) |
| Address | East End of White Dome Drive, North side of Southern Parkway |
| | St. George, UT 84790 |
| | United States |
| Government Tax Agency | Washington |
| Govt./Tax ID | SG-53-3-33-410 |



**Site/Government Regulations**

| | Acres | Square feet |
|---|---|---|
| Land Area Net | 28.180 | 1,227,521 |
| Land Area Gross | 28.180 | 1,227,521 |

| | |
|---|---|
| Site Development Status | Raw |
| Shape | Irregular |
| Topography | Rolling |
| Utilities | All to site |

| | |
|---|---|
| Maximum FAR | N/A |
| Min Land to Bldg Ratio | N/A |
| Maximum Density | 3.09 per ac |

| | |
|---|---|
| General Plan | Residential |
| Specific Plan | Residential |
| Zoning | R-1-10 |
| Entitlement Status | Tentative Tract |

### Sale Summary

| | | | |
|---|---|---|---|
| Recorded Buyer | Salisbury Land LLC | Marketing Time | N/A |
| True Buyer | Salisbury Homes | Buyer Type | Developer |
| Recorded Seller | DSG Holdings LLC | Seller Type | Developer |
| True Seller | Ed Burgess | Primary Verification | Purchase Contract, Ed Burgess (435-628-2121) |
| | | | |
| Interest Transferred | Fee Simple/Freehold | Type | Sale |
| Current Use | Raw Land | Date | 4/15/2020 |
| Proposed Use | Residential Development | Sale Price | $3,697,500 |
| Listing Broker | N/A | Financing | All Cash |
| Selling Broker | N/A | Cash Equivalent | $3,697,500 |
| Doc # | 20200018537 | Capital Adjustment | $0 |
| | | Adjusted Price | $3,697,500 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
|---|---|---|---|---|---|
| 04/2020 | Sale | Salisbury Land LLC | DSG Holdings LLC | $3,697,500 | $131,210 / $3.01 |

### Units of Comparison

| | | | |
|---|---|---|---|
| $3.01 / sf | | N/A / Unit | |
| $131,210.08 / ac | | $42,500 / Allowable Bldg. Units | |
| | | N/A / Building Area | |

### Financial

No information recorded

### Map & Comments



Map data ©2021

This is the purchase of 28.18 acres (Sage Canyon Phases 12-16) for $3,697,500.  The property was in raw desert condition at the time of sale. The property had preliminary tract approvals for 87 lots zoned R-1-10 at a density of 3.09 units per acre.  The buyer intends to sell homes ranging in price from $278,000 up to $500,000.  Lot sizes range from approximately 8,517 SF to 17,810 SF.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



| Sale | Land - Residential Subdivision | No. 6 |





Photograph June 27, 2020 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

| Sale | Land – Residential Subdivision | No. 6 |
| --- | --- | --- |





Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## Sale — Land - Residential Subdivision — No. 7

| Property Name | Long Valley 1st Takedown |
| Address | Long Valley Road |
| | Washington, UT 84780 |
| | United States |
| Government Tax Agency | Washington |
| Govt./Tax ID | W-4204 (a portion of) |



**Site/Government Regulations**

| | Acres | Square feet |
|---|---|---|
| Land Area Net | 202.000 | 8,799,120 |
| Land Area Gross | 202.000 | 8,799,120 |

| Site Development Status | Raw |
|---|---|
| Shape | Irregular |
| Topography | Rolling |
| Utilities | Extension from Washington Dam Road |

| Maximum FAR | N/A |
|---|---|
| Min Land to Bldg Ratio | N/A |
| Maximum Density | N/A |

| Frontage Distance/Street | N/A | Long Valley Road |
|---|---|---|

| General Plan | Residential |
|---|---|
| Specific Plan | Residential |
| Zoning | PUD (Planned Unit Development), Washington City |
| Entitlement Status | Tentative Tract |

### Sale Summary

| Recorded Buyer | D.R. Horton, Inc. | Marketing Time | N/A |
|---|---|---|---|
| True Buyer | N/A | Buyer Type | Developer |
| Recorded Seller | Brennan Family Holdings, LLC | Seller Type | Private Investor |
| True Seller | N/A | Primary Verification | Bob Brennan (seller), Purchase Contract |

| Interest Transferred | Fee Simple/Freehold | Type | Sale |
|---|---|---|---|
| Current Use | Raw Land | Date | 12/30/2020 |
| Proposed Use | Active Adult Residential Development | Sale Price | $10,000,000 |
| Listing Broker | N/A | Financing | All Cash |
| Selling Broker | N/A | Cash Equivalent | $10,000,000 |
| Doc # | 20210000119 | Capital Adjustment | $0 |
| | | Adjusted Price | $10,000,000 |

### Transaction Summary plus Five-Year CBRE View History

| Transaction Date | Transaction Type | Buyer | Seller | Price | Price/ac and /sf |
|---|---|---|---|---|---|
| 12/2020 | Sale | D.R. Horton, Inc. | Brennan Family Holdings, LLC | $10,000,000 | $49,505 / $1.14 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



## Sale — Land - Residential Subdivision — No. 7

### Units of Comparison

| | | |
|---|---|---|
| $1.14 / sf | | N/A / Unit |
| $49,504.95 / ac | | N/A / Allowable Bldg. Units |
| | | N/A / Building Area |

### Financial

**No information recorded**

### Map & Comments



This is the purchase of approximately 202 acres for $10,000,000. The property was in raw desert condition at the time of sale but included entitlements provided by a development agreement with Washington City. The sale is the first of a three-part takedown of a 605.61-acre parcel known as the Trails at Long Valley located south of the Southern Parkway Belt Route in an area known as Long Valley, Washington City, Utah. The proposed master plan was annexed in to the City of Washington in November 2018. According to the purchase contract and seller Bob Brennan, the second take-down will be for $10,000,000, and the final take-down for $13,000,000 totaling $33,000,000 for the full parcel. The buyer (DR Horton), a national homebuilder, intends to develop 2,100 homes (single family homes and townhomes) for this active adult community. Primary access is currently from Long Valley Road at the Washington Dam Road/Southern Beltway Interchange. Secondary access is anticipated from the south via an extension of Long Valley Road connecting to a planned interchange (Interchange 11) at the Southern Beltway and 3650 South. The proposed road would lie adjacent to the recently completed parkway and provide additional traffic circulation and emergency access to the area prior to the completion of the interchange. As the road would need to cross lands administered by the BLM and other private land, an Environmental Assessment study is being completed, According to Jim Raines, additional public utilities (culinary water, sewer, natural gas, television, and telephone lines) would be located underneath the proposed roadway.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

**Land Valuation (Larger Parcel)**

## Sale — Land – Residential Subdivision — No. 7



The above exhibit approximates the boundaries of this sale representing the first takedown of the parcel.



Photograph March 11, 2021 - Inspected by Rick Smith

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



Land Valuation (Larger Parcel)

## Sale — Land – Residential Subdivision — No. 7





Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

The sales utilized represent the best data available for comparison with the subject and were selected from the region. These sales were chosen based on their location, their size and other physical characteristics, and their highest and best use.

The sales utilized herein provide reasonable indications of value for the subject. The effective date of value is May 28, 2021.

Various units of comparison can be considered in the analysis, including price per proposed lot, price per acre, and price per square foot. Consistent with the St. George metro market, the unit of comparison is price per acre.

The adjustments for comparing each sale to the larger parcel is as follows:

- Property Rights Conveyed
- Financing Arrangements (Cash Equivalency)
- Conditions of Sale
- Expenditures After Purchase
- Market Conditions (Time)

- Location
- Physical Characteristics
- Economic Characteristics
- Highest & Best Use (Zoning)
- Non-Realty Components

A sale price adjustment can be simply an acknowledgment of a property's superior or inferior quality. This may be quantified as a precise dollar sum or as a percentage adjustment.  In order to estimate the appropriate adjustments, a pairing process has been attempted. This process isolates the characteristic for which an adjustment is to be derived by comparing two sales, which are similar in all aspects except for the adjusted characteristic. The pairing process is employed for each characteristic in order to determine an appropriate adjustment from the marketplace.  I recognize that quantitative adjustments are preferred. However, with the limited amount of market data from which to consider and the difficulty in quantifying adjustments through paired sales analysis, qualitative adjustments have been applied. These qualitative adjustments are based on market evidence extracted from the market and my analysis of the data. A summary of the adjustments process is provided in the adjustment grid that follows this discussion.

## PROPERTY RIGHTS CONVEYED

The subject's market value is based on fee simple interest, subject to reservations and exceptions of record.  No atypical reservations or exceptions were noted.  All of the comparables reflect the acquisition of a fee simple interest, and no adjustments are necessary for property rights conveyed.

## FINANCING ARRANGEMENTS (CASH EQUIVALENCY)

The market value of the subject is based on all cash, or cash equivalent financing. Properties that sell for cash typically sell for less than those sales that involve below market terms; therefore, cash

© 2021 CBRE, Inc.



equivalency must be determined and adjusted. The comparables sold with cash terms and were cash equivalent. An adjustment for financing arrangements is not warranted.

## CONDITIONS OF SALE

Anything other than a typically motivated buyer and seller requires consideration for a condition of sale adjustment. In some instances, buyers may be willing to pay more than market value for a parcel needed for an assemblage due to the anticipation of incremental value resulting from the increased utility of the site. In some cases, the seller may require cash quickly, forcing a sale below market. Other examples include transfer of ownership between related parties and listing prices (properties typically sell for less than their asking price). Each sale reflected arm's length transactions.

### Sale 1

Sale 1 is the purchase of 192.08 acres in November 2014 and reflected typical conditions of sale as reported by the confirming parties requiring no adjustment.

### Sale 2

Sale 2 is the purchase of a 46.07-acre parcel in July 2016. The buyer already had purchased the adjoining 20 acres. This sale was reported to be arm's length by confirming parties and not tied to the initial 20-acre purchase. Furthermore, the confirming parties reported that the purchase price of this sale was not influenced by the buyer's ownership of the adjacent 20 acres. Noting that neither the adjoining 20 acres nor this 46.07 acres were dependent upon each other for development, it is concluded that there were no atypical conditions of sale characteristics associated with this transaction. No adjustment is applied.

### Sale 3

Sale 3 is the 3rd and final takedown of 38.43 acres of The Arbors residential subdivision. The transaction reflects no atypical conditions of sale – no adjustment is applied.

### Sale 4

Sale 4 is the acquisition of 20.56 acres located in southwest Ivins. This sale reflected typical conditions of sale as reported by the confirming parties requiring no adjustment.

### Sale 5

Sale 5 is the purchase of 27.29 acres in the Little Valley area of south St. George. The transaction reflects no atypical conditions of sale – no adjustment is applied.

### Sale 6

Sale 6 is the purchase of 28.18 acres located at the east end of White Dome Drive, on the north side of the Southern Parkway. This sale reflected typical conditions of sale as reported by the confirming party requiring no adjustment.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



## Sale 7

Sale 7 is the acquisition of 202.0 acres located in east Washington City. This sale reflected typical conditions of sale as reported by the confirming parties requiring no adjustment.

## NON-REALTY COMPONENTS

The subject does not include any personal property or other non-realty components. Similarly, the comparables did not include any identifiable non-realty components as part of the sale. No adjustments were applied to the comparables.

## MARKET CONDITIONS (TIME)

The comparable sales used in this analysis closed and recorded between November 2014 and December 2020. The effective date of value is as of May 28, 2021.

Changing market conditions assume an increase in demand over time. This change in demand should be directly related to supply.

### Paired Sales Analysis

Numerous sales were researched in order to find "paired sales." The following sales are presented for analysis:

❑ Paired Sale 1 – Sale A1 is the March 2013 sale (Doc. No. 20130009841) of 51.7 acres located at Rachel Drive, South of Red Rock Canyon Subdivision in Santa Clara. The buyer purchased the site (zoned R-A – Residential Agricultural) for development of 111 single family residential lots in the Bella Sol subdivision, which required changing the zoning to allow 2.1 units per acre. Sale A1 sold for $4,250,000, or $82,205 per acre. Sale A1 is superior to Sale 2 (46.07 acres – sold for $102,019 per acre) and is adjusted downward 10% for superior locational characteristics indicating an adjusted price (for comparison purposes) of $73,985 per acre.

Sale 2 – This is the July 2016 sale of 46.07 acres for $102,019 per acre.

| PAIRED SALE 1 | | | | | Difference |
|---|---|---|---|---|---|
| | Sale 2 | Sale A1 | | | |
| Sale Date | Jul-16 | Mar-13 | | | |
| Size (Acres) | 46.07 | 51.70 | | | |
| Price/Acre | $102,019 ÷ | $73,985 | = | 137.89% | |
| | | | 1 - 137.89% = | | 37.89% |
| | | | | Per Year | 11.37% |
| Compiled by CBRE, Inc. | | | | | |

The two sales indicated above suggest an appreciation of 37.89%, or 11.37% per year for the period 2013 to 2016.

© 2021 CBRE, Inc.



❑ Paired Sale 2 – Sale A2 is the April 2013 sale (Doc. No. 20130013170) of 17.60 acres located at the NEC of 2500 East and Horseman Park Drive in St. George.  The buyer purchased the site (zoned R-1-10) for development of 49 single family residential lots in Meadow Park Estates subdivision. Sale A2 sold for $1,285,000, or $73,011 per acre.

Sale A3 is the May 2016 sale (Doc. No. 20160019626) of 29.62 acres located similar to Sale 2 located at the NEC of Little Valley Road and Horseman Park Drive in St. George. The buyer purchased the site (zoned R-1-12) for development of 79 single family residential lots in The Arbors Subdivision. Sale A3 sold for $3,000,000, or $101,283 per acre.

| PAIRED SALE 2 | | | | |
|---|---|---|---|---|
| | Sale A3 | Sale A2 | | Difference |
| Sale Date | May-16 | Apr-13 | | |
| Size (Acres) | 29.62 | 17.60 | | |
| Price/Acre | $101,283 ÷ | $73,011 | = 138.72% | |
| | | | 1 - 138.72% = | **38.72%** |
| | | | **Per Year** | **12.56%** |
| Compiled by CBRE, Inc. | | | | |

The two sales indicated above suggest an appreciation of 38.72%, or 12.56% per year for the period 2013 to 2016.

❑ Paired Sale 3 – Sale A4 is the February 2014 sale (Doc. No. 20140005921) of 20.43 acres located at the East of Stonehedge at Washington Bench and Treasure Valley in Washington.  The buyer purchased the site (zoned R-1-6) for development of 76 single family residential lots. Sale A4 sold for $1,545,000, or $75,624 per acre.

Sale A3 is similar to Sale 3 located at the SWC of Seegmiller Drive and 3000 East in St. George that sold for $3,900,000, or $101,483 per acre.

| PAIRED SALE 3 | | | | |
|---|---|---|---|---|
| | Sale 3 | Sale A4 | | Difference |
| Sale Date | May-18 | Feb-14 | | |
| Size (Acres) | 38.43 | 20.43 | | |
| Price/Acre | $101,483 ÷ | $75,624 | = 134.19% | |
| | | | 1 - 134.19% = | **34.19%** |
| | | | **Per Year** | **8.05%** |
| Compiled by CBRE, Inc. | | | | |

The two sales indicated above suggest an appreciation of 34.19%, or 8.05% per year for the period 2014 to 2018, possibly showing a slowing rate of appreciation after 2016 (strong gains were manifest immediately following the recession compared to years more distant from the end of the recession).

© 2021 CBRE, Inc.



❑ **Paired Sale 4** – Sale A4 is the February 2014 sale (Doc. No. 20140005921) of 20.43 acres located East of Stonehedge at Washington Bench and Treasure Valley Subdivision in Washington. The buyer purchased the site (zoned R-1-6) for development of 76 single family residential lots. Sale A4 sold for $1,545,000, or $75,624 per acre.

Sale A4 is similar to Sale 5 located at east of 3430 East Street at 3200 South Street that sold for $3,000,000, or $109,934 per acre.

| PAIRED SALE 4 | | | | |
|---|---|---|---|---|
| | Sale 5 | Sale A4 | | Difference |
| Sale Date | Oct-19 | Feb-14 | | |
| Size (Acres) | 27.29 | 20.43 | | |
| Price/Acre | $109,934 ÷ | $75,624 | = 145.37% | |
| | | | 1 - 145.37% = | 45.37% |
| | | | Per Year | 8.01% |
| Compiled by CBRE, Inc. | | | | |

The two sales indicated above suggest an appreciation of 45.37%, or 8.01% per year, again showing a slowing rate of appreciation after 2016.

❑ **Paired Sale 5** – Sale A4 is the February 2014 sale (Doc. No. 20140005921) of 20.43 acres located at the East of Stonehedge at Washington Bench and Treasure Valley in Washington. The buyer purchased the site (zoned R-1-6) for development of 76 single family residential lots. Sale A4 sold for $1,545,000, or $75,624 per acre.

Sale A5 is the March 2021 sale (Doc. No. 20210019512) of 11.62 acres located at Indian Springs Drive and Seminole Way along the Washington Bench in Washington. The buyer purchased the size (Zoned RA-1/2) for development of 18 single family residential lots. Sale A5 sold for $1,575,000, or $135,542 per acre.

While proposed lots sizes vary, in this category the market is not applying any premiums or discounts based on density differences. Additionally, residential land in the 10- to 20-acre range is the "target" size for residential developers. The market is generally not paying a premium/discount for parcels within this range. In fact, the market is generally consistent in price per acre up to 40 acres in size and as small as 7 acres. Consequently, no adjustment for size was necessary.

| PAIRED SALE 5 | | | | |
|---|---|---|---|---|
| | Sale A5 | Sale A4 | | Difference |
| Sale Date | Mar-21 | Feb-14 | | |
| Size (Acres) | 11.62 | 20.43 | | |
| Price/Acre | $135,542 ÷ | $75,624 | = 179.23% | |
| | | | 1 - 179.23% = | 79.23% |
| | | | Per Year | 11.46% |
| Compiled by CBRE, Inc. | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



The two sales indicated above suggest an appreciation of 79.23%, or 11.46% per year. We note that appreciation is not typically straight-line but rises and falls with supply and demand. While appreciation slowed after 2016, it increased substantially in the latter part of 2020 and in to 2021.

❑ Paired Sale 6 – Sale A4 is the February 2014 sale (Doc. No. 20140005921) of 20.43 acres located at the East of Stonehedge at Washington Bench and Treasure Valley in Washington.  The buyer purchased the site (zoned R-1-6) for development of 76 single family residential lots. Sale A4 sold for $1,545,000, or $75,624 per acre.

Sale A4 is reasonably similar to Sale 6 located at the east end of White Dome Drive on the north side of the Southern Parkway alignment in south St. George that sold for $3,697,500, or $131,210 per acre.

| PAIRED SALE 6 | | | | |
|---|---|---|---|---|
| | Sale 6 | Sale A2 | | Difference |
| Sale Date | Apr-20 | Apr-13 | | |
| Size (Acres) | 28.18 | 17.60 | | |
| Price/Acre | $131,210 ÷ | $73,011 | = 179.71% | |
| | | | 1 - 179.71% = | 79.71% |
| | | | Per Year | 11.39% |
| Compiled by CBRE, Inc. | | | | |

The six paired sales suggest an annual appreciation ranging from 8.01% to 12.56%, with an average of 10.47%.

### Lot Sales Trend

Finally, I have analyzed the price trend in residential lot sales from January 1, 2014 thru March 4, 2021 ranging in size from 0.12 to 0.40 acres - 1,407 lot sales were analyzed.  We not that these sales were as reported in the local Multiple Listing Service and are assumed to be reported accurately by the selling broker. The following presents my analysis.

© 2021 CBRE, Inc.





Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

**Land Valuation (Larger Parcel)**



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

The trend lines presented on the previous pages also show an $R^2$ Value. The $R^2$ Value us a "goodness-of-fit" measure for regression models. This statistic indicates the percentage of the variance in the dependent variable that the independent variables explain collectively. The $R^2$ Value evaluates the scatter of the data points around the fitted regression line. It is all called the coefficient of determination, or the coefficient of multiple determination for multiple recression. For the same data set, higher $R^2$ Values represent smaller differences between the observed data and the fitted values.

- 0% represents a model that does not explain any of the variation in the response variable around its mean. The mean of dependent variable predicts the dependent variable as well as the regression model.

- 100% represents a model that explains all the variation in the response variable around its mean.

Typically, the large the $R^2$ Value, the better the regression model fits the observations. Limitations to regression models are that one cannot use the $R^2$ Value to determine whether the coefficient estimates and predictions are biased, which is why an assessment of the residual plots must be made. Also, $R^2$ Values do not indicate if a regression model provides an adequate fit to the data. A good model can have a low $R^2$ Value. On the other hand, a biased model can have a high $R^2$ Value.

In the case of the subject model, the size of the population presented in the study and the all inclusive data set suggests good reliance on the residual plots, even though there are some outliers.

The following summarizes our trend line Values.

| Trend Line Type | Value |
|---|---|
| Exponential Trend Line: | 0.1326 |
| Linear Trend Line: | 0.1037 |
| Logarithmic Trend Line: | 0.1031 |
| Power Trend Line: | 0.1321 |

The trend lines reported above range from 0.1031 to 0.1326. The Expotential and Power Trend Line charts provide the best indicator for analysis, though all $R^2$ Values show reasonably similar indications.

*Exponential/Power Trend Line Models:* Emphasizing the Exponential and Power Trend Line models showing Values ranging from 0.1321 to 0.1326, a focused look at lot pricing from January 2014 through the effective date of value of March 4, 2021 can be made.  The average lot price in January 2014 approximated $80,000 compared to the average lot price as of March 4, 2021 at approximately $140,000.  This comparison suggests a lot appreciation rate of 75%, or 10.47% per year. For comparison purposes, Straight Line Linear Regression provides the following indication:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



*Linear/Logarithmic Trend Line Models:* Linear and Logarithmic regression modesl indicate value ranges from 0.1031 to 0.1037, both reporting an average lot price in January 2014 approximating $75,000 and an average lot price as of March 4, 2021 at approximately $150,000. Noting the two indicators, it is clar that the rate of appreciation would expectantly be higher than that of the Exponential and Power models that have a more narrow range. The Linear and Logarithmic models indicate a lot appreciation rate of 100%, or 13.95% per year.

## Appreciation Adjustment Conclusion

As previously noted, appreciation rates are not always linear, but can vary based on current supply and demand characteristics.  The sales data occurred between November 2014 and December 2020.  The effective date of value is as of May 28, 2021.  Within the range of those dates, we have noted that the St. George metro market was recovering during the beginning of the 2014-2016 period showing strong appreciation trends. As the market stabilized, general observations showed a period of steady appreciation through mid-2020. In the latter part of 2020, the market again showed strong appreciation tendencies. However, there is insufficient data (specifically land sales) providing a sufficient population of data points to apply specific rates of appreciation for varying time periods. Nevertheless, analysis using multiple regression models assist in capturing rates of appreciation over the 2014-2020 period of time. The use of multiple comparable land sales provides a credible range of indicators and aid in "smoothing" out the variances in appreciation periods. Based on the above the data presented and analysis of the data, the following conclusions are made:

SALE 1 occurred in November 2014.  A market conditions adjustment of 66% is applied (6.6 years x 10.0% [rounded]).

SALE 2 occurred in July 2016.  A market conditions adjustment of 49% is applied (4.9 years x 10.00% [rounded]).

SALE 3 occurred in May 2018.  A market conditions adjustment of 30% is applied (3.0 years x 10.00% [rounded]).

SALE 4 occurred in May 2018 reflecting a 3rd takedown of an option agreement established in May 2016.  The option agreement required the takedown to occur by no later than 2020.  Due to demand in the area, the takedown was escalated to 2018.  Per the confirming parties, the option agreement did not have price escalators built in such that the buyer paid the same price for this 38.43-acre takedown that he paid for the 1st takedown of 29.62 acres (Sale 2) in May 2016.  My research and analysis of this sale, and as confirmed by the buyer, suggests that the option terms were favorable to the buyer.  While typical option agreements in the area have price escalator clauses built in or are based on market value negotiations at the time of takedown, market appreciation rates at the time of sale warrant adjustment based on the date of establishment of the purchase price in May 2016.  A market conditions adjustment of 51% is applied (5.1 years x 10.00% [rounded]).



SALE 5 occurred in October 2019.  The purchase reflects the exercising of an option agreement with the purchase price reportedly established in May 2018 (date of option agreement). While typical option agreements in the area have price escalator clauses built in or are based on market value negotiations at the time of takedown, market appreciation rates at the time of sale warrant adjustment based on the date of establishment of the purchase price in May 2018.  A market conditions adjustment of 28% is applied (3.1 years x 10.00% [rounded]).

SALE 6 occurred in April 2020.  A market conditions adjustment of 11% is applied (1.1 years x 10.00% [rounded]).

SALE 7 occurred in December 2020.  A market conditions adjustment of 4% is applied (0.4 years x 10.00% [rounded]).

## LOCATION

Adjustments to the sale data must be made to overall location and is evaluated in terms of surrounding development and access.

The subject and all seven (7) comparables are located in desirable areas where new development is occurring.  The subject 266.42-acre parcel is located to the west of the Green Springs master-planned community.  Access to the subject will come from Green Springs and the Green Springs community will be the most influential of the developments in the area.



Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

### Adjustment - Land Sale 1

The most recent sale in the Green Springs area is Sale 1. Land Sale 1 is located in the Green Springs area. Subject is considered comparable to the Green Springs area. Consequently, no adjustment to Sale 1 is applied.

### Adjustment - Land Sales 2 Thru 7

Using data from the Green Springs area, an adjustment to Sales 2 through 7 can be estimated. A search for historical transactions in the Green Springs area was made producing the following results.

- Sale GS-1 (September 2, 2003) – PUB Green Springs, LC sold 51.93 acres to MGS+2 Development Co. LC on September 2, 2003 for $3,115,800, or $60,000 per acre via Doc. No. 838680.  The property was located along the east side of Green Springs Drive just north of the Silverstone II subdivision.

- Sale GS-2 (August 2, 2004) – AHB Investments LLC sold 30.90 acres located north of Green Springs subdivision and east of Green Springs Drive to Gardner-Plumb, LC on November 3, 2004 via Doc. No. 00909232 for $3,399,000, or $110,000 per acre.

- Sale GS-3 (September 26, 2005) – Washington Heights Investment, LLC purchased 68.001 acres from the City of Washington located along Green Springs Drive and identified as APN W-WCGS-1.  This property was subsequently developed as Washington Vista at Green Springs.  The property was purchased for $12,200,000 through auction via Doc. No. 00873773, or $179,409 per acre.

- Sale GS-4 (February 2, 2007) – Environmental Land Technology, LTD sold 34.32 acres located at 2050 East and approximately 1100 North near Middleton in St. George (adjacent south of the Red Cliffs Desert Reserve) to 2 B Holdings, LLC via Doc. No. 20070005764 for $1,400,000, or $40,793.  The buyer intended to develop a residential subdivision.  Only 45% of the site was usable.  To account for open space contribution, the usable acreage is increased to 48% (16.47 acres) suggesting a value of approximately $85,003 per usable acre.

- Sale GS-5 (February 28, 2014) – Paul B. Jensen sold 30.28 acres located off of Fairway Drive (APN W-5-2-10-231) in Green Springs via Doc. No. 20140005916 for $1,465,000, or $48,381 per acre.  Due to a larger ravine running through the parcel from the northeast corner through the middle and on to the southwest corner, the site utility was significantly impacted indicating only about 45% to 50% usable.  To account for open space contribution and the ability to do some clustering, the usable acreage is increased to 55%.  Based on usable area of 16.65 acres, the purchase price is $87,967 per usable acre.

© 2021 CBRE, Inc.



As noted above, historical land sales in the Green Springs area vary in price per acre. This can be attributed to several factors, including the impact of The Great Recession (end of 2007 thru 2009) on the market, and its resulting recovery.

The following paired sales using Green Springs (most similar to subject) as a basis for comparison is made.

**Paired Sale 1 (Applicable to Sales 2, 3, 5, 6)**

Sale GS-5 above sold for $87,967 per usable acre and is compared to:

Sale B1: The January 13, 2014 sale of 9.19 acres located at approximately 2900 South Little Valley Road in St. George that sold for $730,000, or $79,434 per acre via Doc. No. 2014001074.

| LOCATION ADJUSTMENT - PAIRED SALE 1 | | | | | Difference |
|---|---|---|---|---|---|
| | Sale GS-5 | | Sale B1 | | |
| | (Green Springs) | | (Little Valley) | | |
| Sale Date | Feb-14 | | Jan-14 | | |
| Size (Usable Acres) | 16.65 | | 9.19 | | |
| Price/Usable Acre | $87,967 | ÷ | $79,434 | = 110.74% | |
| | | | | 1 - 110.74% = | **10.74%** |
| Compiled by CBRE Inc. | | | | | |

**Paired Sale 2 (Applicable to Sales 2, 3, 5, 6)**

Sale GS-5 above sold for $87,967 per usable acre. Applying 10.0% appreciation supports an adjusted value of $96,764 per usable acre and is compared to:

Sale B2: The February 11, 2015 sale of 13.37 acres located at the southwest corner of Little Valley Road and Horseman's Park Drive in St. George that sold for $1,200,000, or $89,753 per acre via Doc. No. 20150004577.

| LOCATION ADJUSTMENT - PAIRED SALE 2 | | | | | Difference |
|---|---|---|---|---|---|
| | Sale GS-5 | | Sale B2 | | |
| | (Green Springs) | | (Little Valley) | | |
| Sale Date | Feb-14 | | Feb-15 | | |
| Size (Usable Acres) | 16.65 | | 13.37 | | |
| Adj. Price/Usable Acre | $96,764 | ÷ | $89,753 | = 107.81% | |
| | | | | 1 - 107.81% = | **7.81%** |
| Compiled by CBRE Inc. | | | | | |

The two paired sales above support an adjustment from 7.81% to 10.74% for locational differences related to Sales 2, 3, 5, and 6.

**Paired Sale 3 (Applicable to Sales 2, 3, 5, 6)**

Due to the lack of sufficient land sales for a more direct location comparison, I have considered <u>lot sales</u> in the Fields and the Little Valley areas (Sales 2, 3, 5, 6) and compared them to lot sales

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



in the Green Springs area (comparable to subject's Green Springs location).  I have considered the adjustment for location separate from the adjustment for the differences in views (if any).

### LOCATION ANALYSIS - GREEN SPRINGS/SUBJECT

| Green Springs Location | MLS No. | Sale Date | Sold Price | Size (Acres) | $ Per SF |
|---|---|---|---|---|---|
| 862 W Osprey Drive Lot 10 | 20-210205 | 5-Mar-20 | $132,900 | 0.29 | $10.52 |
| Somerset Circle Lot 1 | 19-204351 | 6-Aug-19 | $134,900 | 0.31 | $9.99 |
| Osprey Circle Lot 8 | 19-207456 | 25-Oct-19 | $136,900 | 0.29 | $10.84 |
| 767 W Morby Street, | 18-195717 | 24-Jan-19 | $120,000 | 0.27 | $10.20 |
| Osprey Circle Lot 14 | 19-207452 | 3-Oct-19 | $158,900 | 0.34 | $10.73 |
| Somerset Circle Lot 2 | 19-204352 | 9-Sep-19 | $120,900 | 0.29 | $9.57 |
| 1874 Outlook Drive Lot 306 | 20-209776 | 20-Apr-20 | $204,483 | 0.43 | $10.92 |
| | | Low | $120,000 | 0.27 | $9.57 |
| | | High | $204,483 | 0.43 | $10.92 |
| | | Average | $144,140 | 0.32 | $10.40 |
| Compiled by CBRE | | | | | |

### LOCATION ANALYSIS - SALES 2, 3, 5, 6

| The Fields | MLS No. | Sale Date | Sold Price | Size (Acres) | $ Per SF |
|---|---|---|---|---|---|
| 4789 S Homestead Way Lot 25 | 19-201928 | 30-Dec-19 | $100,900 | 0.27 | $8.58 |
| Jassamine Drive Lot 50 | 19-207037 | 24-Sep-19 | $150,000 | 0.41 | $8.40 |
| 2550 S 3210 E Lot 33 | 18-191997 | 2-Sep-19 | $129,000 | 0.30 | $9.87 |
| Horseman Park Drive | 19-206853 | 11-Oct-19 | $124,950 | 0.29 | $9.89 |
| 2550 S 3210 E Lot 32 | 18-191996 | 2-Sep-19 | $129,000 | 0.30 | $9.87 |
| 2550 S 3210 E Lot 31 | 19-202611 | 4-Nov-19 | $123,000 | 0.29 | $9.74 |
| 739 E 4744 S Lot 34 | 18-198684 | 25-Feb-19 | $136,900 | 0.37 | $8.49 |
| | | Low | $100,900 | 0.27 | $8.40 |
| | | High | $150,000 | 0.41 | $9.89 |
| | | Average | $127,679 | 0.32 | $9.26 |
| Compiled by CBRE | | | | | |

© 2021 CBRE, Inc.

**CBRE**

| LOCATION ADJUSTMENT - PAIRED SALE 3 | | | | | |
|---|---|---|---|---|---|
| | Lot Sales Avg. | | Lot Sales Avg. | | Difference |
| | Subject/Green Springs | | Sales 2, 3, 5, 6 | | |
| Sale Date | 2019/2020 | | 2019 | | |
| Avg. Lot Size | 0.32 | | 0.32 | | |
| Avg. Lot Price/SF | $10.40 | ÷ | $9.26 | = 112.27% | |
| | | | | 1 - 112.27% = | 12.27% |
| Compiled by CBRE Inc. | | | | | |

Using the "average" indicators, the comparison of lot sales above suggests that the Green Springs location (Comparable to Subject) is 12.27% superior to the Fields and Little Valley areas.

| LOCATION ADJUSTMENT - PAIRED SALE 3 | | | | | |
|---|---|---|---|---|---|
| | Lot Sales Med. | | Lot Sales Med. | | Difference |
| | Subject/Green Springs | | Sales 2, 3, 5, 6 | | |
| Sale Date | 2019/2020 | | 2019 | | |
| Avg. Lot Size | 0.32 | | 0.32 | | |
| Med. Lot Price/SF | $10.52 | ÷ | $9.74 | = 108.01% | |
| | | | | 1 - 108.01% = | 8.01% |
| Compiled by CBRE Inc. | | | | | |

Using the "median" indicators, the comparison of lot sales above suggests that the Green Springs location (Comparable to Subject) is 8.01% superior to the Fields and Little Valley areas.

*Conclusion*: The "average" and "median" indicators range from 8.01% to 12.27%. Both indicators are reasonable.

Paired Sale 4 (Applicable to Sale 4)

The following compares lot sales in the Southwest Ivins/Santa Clara area south of Center Street comparable to Sale 4's location to lot sales in the Green Springs area comparable to subject.

| LOCATION ANALYSIS - SALE 4 | | | | | |
|---|---|---|---|---|---|
| Ivins/Santa Clara | MLS No. | Sale Date | Sold Price | Size (Acres) | $ Per SF |
| Colbey Loop Lot 229 | 17-189888 | 30-Apr-19 | $110,000 | 0.31 | $8.15 |
| Boomers Loop Lot 217 | 18-191082 | 2-May-19 | $94,000 | 0.24 | $8.99 |
| Ivy Place Lot 3 | 18-193365 | 13-May-19 | $76,000 | 0.21 | $8.31 |
| Boomers Loop Lot 218 | 17-189842 | 5-Jun-19 | $89,900 | 0.28 | $7.37 |
| | | Low | $76,000 | 0.21 | $7.37 |
| | | High | $110,000 | 0.31 | $8.99 |
| | | Average | $92,475 | 0.26 | $8.20 |
| Compiled by CBRE | | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

| LOCATION ADJUSTMENT - PAIRED SALE 4 | | | | | |
|---|---|---|---|---|---|
| | Lot Sales Avg. | | Lot Sales Avg. | | Difference |
| | Subject/Green Springs | | Sale 4 | | |
| Sale Date | 2019/2020 | | 2019 | | |
| Avg. Lot Size | 0.32 | | 0.26 | | |
| Avg. Lot Price/SF | $10.40 | ÷ | $8.20 | = 126.77% | |
| | | | | 1 - 126.77% = | 26.77% |
| Compiled by CBRE Inc. | | | | | |

Using the "average" indicators, the comparison of lot sales above suggests an adjustment of +26.77% to Sale 4.

| LOCATION ADJUSTMENT - PAIRED SALE 4 | | | | | |
|---|---|---|---|---|---|
| | Lot Sales Med. | | Lot Sales Med. | | Difference |
| | Subject/Green Springs | | Sale 4 | | |
| Sale Date | 2019/2020 | | 2019 | | |
| Avg. Lot Size | 0.32 | | 0.26 | | |
| Med. Lot Price/SF | $10.52 | ÷ | $8.23 | = 127.83% | |
| | | | | 1 - 127.83% = | 27.83% |
| Compiled by CBRE Inc. | | | | | |

Using the "median" indicators, the comparison of lot sales above suggests an adjustment of +27.83% to Sale 4.

*Conclusion*: The "average" and "median" indicators range from 26.77% to 27.83%. Both indicators are reasonable.

### Average Lot Sales Comparison (Applicable to Sales 2 thru 7)

I also analyzed lot sales in the various neighborhoods where the comparables are located and compared them to the Green Springs neighborhood (most comparable to subject). For comparison, I limited my search to lots ranging in size from 0.18 acres to 0.30 acres and selling from January 1, 2015 through September 1, 2019. The dates selected were used to eliminate recent price increases resulting from the impact of the pandemic on the market causing wide fluctuations in pricing. The following are the results of my research:

| Lot Sales Comparison (January 1, 2015 thru September 1, 2019) - 0.15 Acres to 0.30 Acres | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Green Springs/Subject | | Sales 2, 3, 5, 6 The Fields - Little Valley | | Sale 4 Southwest Ivins/Santa Clara | | Sale 7 Washington Bench |
| | Price | Size (Ac.) | Price | Size (Ac.) | Price | Size (Ac.) | Price | Size (Ac.) |
| Low | $77,600 | 0.23 | $50,000 | 0.20 | $67,000 | 0.18 | $62,000 | 0.23 |
| High | $199,900 | 0.30 | $177,000 | 0.30 | $155,000 | 0.30 | $100,000 | 0.30 |
| Average | $117,408 | 0.26 | $103,373 | 0.27 | $96,817 | 0.21 | $79,539 | 0.26 |
| No. Sales | 77 | | 30 | | 12 | | 27 | |
| Compiled by CBRE Inc. | | | | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

### LOCATION ADJUSTMENT - PAIRED SALE 6 - THE FIELDS/LITTLE VALLEY TO GREEN SPRINGS

| No. Lots | 77 | | 30 | | | Difference |
|---|---|---|---|---|---|---|
| | (Green Springs) | | (The Fields/Little Valley) | | | |
| Sale Date Range | Jan-15 - Sep-19 | | Jan-15 - Sep-19 | | | |
| Avg. Lot Size (Acres) | 0.26 | | 0.27 | | | |
| Avg. Lot Price | $117,408 | ÷ | $103,373 | = | 113.58% | |
| | | | | 1 - | 113.58% = | **13.58%** |

Compiled by CBRE Inc.

### LOCATION ADJUSTMENT - PAIRED SALE 7 - SOUTHWEST IVINS TO GREEN SPRINGS

| No. Lots | 77 | | 12 | | | Difference |
|---|---|---|---|---|---|---|
| | (Green Springs) | | (Southwest Ivins/Santa Clara) | | | |
| Sale Date | Jan-15 - Sep-19 | | Jan-15 - Sep-19 | | | |
| Size (Usable Acres) | 0.26 | | 0.21 | | | |
| Adj. Price/Usable Acre | $117,408 | ÷ | $96,817 | = | 121.27% | |
| | | | | 1 - | 121.27% = | **21.27%** |

Compiled by CBRE Inc.

### LOCATION ADJUSTMENT - PAIRED SALE 8 - EAST WASHINGTON BENCH TO GREEN SPRINGS

| No. Lots | 77 | | 27 | | | Difference |
|---|---|---|---|---|---|---|
| | (Green Springs) | | Washington Bench | | | |
| Sale Date | Jan-15 - Sep-19 | | Jan-15 - Sep-19 | | | |
| Size (Usable Acres) | 0.26 | | 0.26 | | | |
| Adj. Price/Usable Acre | $117,408 | ÷ | $79,539 | = | 147.61% | |
| | | | | 1 - | 147.61% = | **47.61%** |

Compiled by CBRE Inc.

### LOCATION ADJUSTMENT - PAIRED SALE 9 - SALE 1 TO SALE 7

| | Sale 1 | | Sale 7 | | | Difference |
|---|---|---|---|---|---|---|
| Unadj. Price Per Acre | $45,951 | | $49,505 | | | |
| Sale Date | Nov-14 | | Dec-20 | | | |
| Size | 192.08 | | 202.00 | | | |
| Adj. Price Per Acre* | $71,648 | ÷ | $50,869 | = | 140.85% | |
| | | | | 1 - | 140.85% = | **40.85%** |

*All adjustments made except Location

Compiled by CBRE Inc.

As shown in the previous tables, the stronger data reporting more lot sales is the Green Springs area (comparable to subject) with a total of 77 lots falling within the size range searched. Nevertheless, the comparisons provide reasonably reliable results suggesting that:

- Sales 2, 3, 5 and 6 (The Fields/Little Valley) warrant an upward adjustment of 13.58%

- Sale 4 (Ivins) warrants an upward adjustment of 21.27%

- Sale 7 (Washington Bench) – two pairings are relevant to an adjustment for Sale 7. Using lot sales as an indicator (Paired Sale 8) an adjustment of 47.61% is supported. Pairing

© 2021 CBRE, Inc.



Sales 1 (most similar to subject) to Sale 7 shown in Paired Sale 9 supports an upward adjustment of 40.85%. Both pairings are considered reasonable indicators supporting an upward adjustment of 45% for inferior location for Sale 7.

## LOCATION ADJUSTMENT CONCLUSION

Sales 2, 3, 5 & 6 (The Fields/Little Valley) - Using dated land sales, an adjustment was estimated at +6.34% to +10.74%.   Using 2019 thru early 2020 lot sales, an adjustment of +8.01% to 12.27% is indicated.   Using the average lot sales from January 2015 thru September 2019 supports an adjustment of +13.58%. A location adjustment of +10% is applied to Sales 2, 3, 5 and 6.

Sale 4 (South Ivins) - Using 2019 thru early 2020 lot sales, an adjustment was estimated at +26.77% to +27.83%. Using the average lot sales from January 2015 thru September 2019 supports an adjustment of +21.27%.  Considering the data points of the analysis, an adjustment within the supported range of +23% for location is concluded for Sale 4.

Sale 7 (Washington Bench) - Using the average lot sales from January 2015 thru September 2019 supports an adjustment of +47.61%.  Comparing the adjusted value of Sale 1 in the Green Springs area ($74,901 per acre) to Sale 7 ($50,495 per acre) supports an adjustment of +48.33% ([$74,901 - $50,495] ÷ $50,495). The two indicators range from +47.61% to +48.33%. Sale 7's current access is from Washington Dam Road through the Washington Dam Industrial Park. Within the next several years access from the south should be established from 3650 South Street. A minor adjustment remains for Sale 7 for public utilities/infrastructure differences. Finally, Pairing Sales 1 (most similar to subject) to Sale 7 shown in Paired Sale 9 supports an upward adjustment of 40.85%. Considering the data points of the analysis, an adjustment of +45% for location is concluded for Sale 7.

## Physical Characteristics

The subject and the comparables exhibit some differences in physical characteristics for which adjustments are considered; these include topography/site utility, utilities/infrastructure, access/ exposure, size and views.  These variables are discussed below.

## TOPOGRAPHY/SITE UTILITY/VIEWS

The subject property has undulating terrain, but with good development potential.  All seven sales are generally level with moderate terrain and are fully developable.

| LAND SALES TOPOGRAPHY/SITE UTILITY ADJUSTMENT ANALYSIS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Location | Adjacent North of the city limits of St. George | NWC of Main Street & East Buena Vista Boulevard Washington, UT 84780 | North Side of 1050 South Street at 2780 East Street St. George, UT 84790 | SWC Seegmiller Drive & 3000 East St. George, UT 84790 | NWC Kwavasa Drive and 200 South Street Ivins, UT 84738 | East of 3430 East Street at 3200 South Street St. George, UT 84790 | East End of White Dome Drive, North side of Southern Parkway St. George, UT 84790 | Long Valley Road Washington, UT 84780 |
| **Price Per Acre (Adj. thru Market Conditions)** | | **$76,279** | **$152,008** | **$131,928** | **$146,887** | **$140,716** | **$145,643** | **$51,485** |
| Topography/Site Utility | Moderate Undulating Terrain | Moderate Undulating Terrain | Moderate Undulating Terrain | Generally Level | Generally Level | Moderate Undulating Terrain | Moderate Undulating Terrain | Moderate Undulating Terrain |
| **Indicated Qualitative Adjustment** | | **Similar** | **Similar** | **Similar** | **Similar** | **Similar** | **Similar** | **Similar** |
| Compiled by CBRE | | | | | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Subject's topography and site utility is very similar to Sales 1, 5, 6 and 7. Sale 6 is one of the higher value indicators of the smaller parcels. Sale 1 and Sale 7 are more indicative of the subject size with lower value indicators. Comparing the adjusted sale price of Sales 2, 4, 5 and 6 ranging from $140,716 to $152,008 per acre, with an average of $146,314, indicates only a 5% variance.

Soils in the general market where the subject and these comparables are located all require over-excavation. In some cases, such as Sales 2 and 4 ($152,008 and $146,887 per acre), over-excavation is required because of decades of farming and irrigation. In the case of subject, and Sales 1, 3, 5, 6 and 7 (ranging from $51,485 to $145,643 per acre), over-excavation is required to balance the site due to moderate sloping topography. In the case of each land sale (similar to subject), the cost to over-excavate the sites were not known prior to sale, though confirming parties report that none of the sales were located in areas that historically have blue-clay, an expansive soil known to exists in certain locations in the market (i.e., Tonaquint area and some areas of Santa Clara). None of the sales considered were located in these areas. Based on the available information, there is insufficient or unidentifiable information to suggest that an adjustment for topography is necessary.

Subject also has average views of Pine Valley Mountain. Similarly, the Brio Sale (Sale 1) has average views of Pine Valley Mountain. The remaining sales located in The Fields/Little Valley (Sales 2, 3 & 5), the South Ivins land sale (Sale 4), and Sale 7 lack the elevation to provide any material views. Sale 5 has some elevated views to the west and northwest along the bench below the regional airport, though their contribution to the purchase price was determined to be negligible according to the confirming parties.

In the final analysis, an adjustment to the comparables for topography, site utility and views is not warranted.

### PARCEL SIZE

Historically, adjustments for size are based on the mathematical principle of "economies of scale." Typically, the larger the size of the site, the lower the sale price on a per-acre basis; conversely, the smaller the size, the higher the per-acre price. In an effort to determine if a size adjustment should be considered, I have reviewed the sales. I have processed a comparison of the data in order to determine an adjustment for size. The price per acre (adjusted through market conditions), number of acres is shown in the following table.

© 2021 CBRE, Inc.



| | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|
| Location | Adjacent North of the city limits of St. George | NWC of Main Street & East Buena Vista Boulevard Washington, UT 84780 | North Side of 1050 South Street at 2780 East Street St. George, UT 84790 | SWC Seegmiller Drive & 3000 East St. George, UT 84790 | NWC Kwavasa Drive and 200 South Street Ivins, UT 84738 | East of 3430 East Street at 3200 South Street St. George, UT 84790 | East End of White Dome Drive, North side of Southern Parkway St. George, UT 84790 | Long Valley Road Washington, UT 84780 |
| Zoning at Sale | OS (Open Space) | Un-Zoned | A-20 | R-1-12/RE-20 | R1-10 | A-1 | R-1-10 | PUD |
| Proposed Density Per Acre | -- | 3.18 | 2.60 | 2.73 | 2.63 | 1.70 | 3.09 | 3.47 |
| Price Per Lot (Adj. thru Market) | | $23,987 | $58,465 | $48,325 | $55,851 | $82,774 | $47,134 | $14,837 |
| **Price Per Acre (Adj. thru Market Conditions)** | | **$76,279** | **$152,008** | **$131,928** | **$146,887** | **$140,716** | **$145,643** | **$51,485** |
| Size Comparison (Acres) | 266.42 | 192.08 | 46.07 | 38.43 | 20.56 | 27.29 | 28.18 | 202.00 |
| **Indicated Qualitative Adjustment** | | **Similar** | **Superior** | **Superior** | **Superior** | **Superior** | **Superior** | **Similar** |

Compiled by CBRE

After reviewing the comparables, I would expect there to be some inverse relationship between size and price per acre, or density and price per lot.

Sales 2 through 6 show a more consistent pricing per acre, with a less consistent density comparison. This is because the parcels were not purchased by the buyer (or sold by seller) based on price per lot. In the St. George market, sellers are not pricing land on a price per lot basis as none of the sales had approved entitlements at the time of sale. Consequently, the densities reported are what the buyer eventually entitled, and not what was approved at the time of sale.

As noted, there is similar demand and pricing for properties between 20 and 50 acres. This has been consistent within the St. George market over the past several decades. Properties closer to 10 acres or less tend to be priced higher, while sales over 50 acres (when they do occur) tend to drop in price per acre.

Sales 1 and 7 are most similar to subject in terms of size and are the largest comparables with the lowest indicators of value. Subject is 266.42 acres, compared to Sales 1 and 7 ranging from 192.08 to 202.00 acres, potentially warranting downward adjustments for their smaller size. However, the lack of a data set supporting an adjustment to parcels of comparable size prevents me from making a quantitative adjustment to Sales 1 and 7. The potential for an adjustment will be considered in reconciliation.

The following table presents a comparison of the comparables after adjustments for all remaining adjustments (market conditions, location, public utilities/infrastructure, and highest & Best Use/Zoning), but excluding parcel size:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



**LAND SALES ADJUSTMENT GRID**

| Comparable Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Subject |
|---|---|---|---|---|---|---|---|---|
| Transaction Type | Sale | Sale | Sale | Sale | Sale | Sale | Sale | --- |
| Transaction Date | Nov-14 | Jul-16 | May-18 | May-19 | Oct-19 | Apr-20 | Dec-20 | --- |
| Option Date | | | | May-16 | May-18 | | | |
| Intended Use | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | --- |
| **Adjusted Sale Price** [1] | $8,826,325 | $4,700,000 | $3,900,000 | $2,000,000 | $3,000,000 | $3,697,500 | $10,000,000 | |
| Size (Acres) | 192.08 | 46.07 | 38.43 | 20.56 | 27.29 | 28.18 | 202.00 | 266.42 |
| Price Per Acre | $45,951 | $102,019 | $101,483 | $97,276 | $109,934 | $131,210 | $49,505 | --- |
| Price ($ Per AC) | $45,951 | $102,019 | $101,483 | $97,276 | $109,934 | $131,210 | $49,505 | |
| Property Rights Conveyed | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Financing Terms [1] | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Conditions of Sale | 0% | 0% | 0% | 0.0% | 0% | 0% | 0% | |
| Non-Realty Components | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Market Conditions (Time) | 66% | 49% | 30% | 51% | 28% | 11% | 4% | |
| Subtotal | $76,279 | $152,008 | $131,928 | $146,887 | $140,716 | $145,643 | $51,485 | |
| Location | 0% | 10% | 10% | 23% | 10% | 10% | 45% | |
| Topo/Site Utility/Views | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Size | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Public Utilities/Infrastructure | -4.1% | -2.1% | -2.4% | 2.3% | -1.4% | -2.1% | 1.0% | |
| Site Improvemts | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | |
| Highest & Best Use/Zoning | -2.5% | -1.2% | -1.4% | -1.3% | -1.4% | -1.3% | -3.7% | |
| Economic Characteristics | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | |
| Total Other Adjustments | -6.6% | 6.7% | 6.2% | 24.0% | 7.3% | 6.6% | 42.3% | |
| **Indicated Value Per Acre** | $71,262 | $162,191 | $140,104 | $182,198 | $150,985 | $155,190 | $73,263 | |
| Absolute Adjustment | 73% | 62% | 44% | 78% | 41% | 24% | 55% | |

[1] Adjusted sale price for cash equivalency and/or development costs (where applicable)
Compiled by CBRE

**SIZE ADJUSTMENT - SALES 2 THRU 6**

| | Sale 2 (46.07 Ac.) | | Sale 1 (192.08 Ac.) | | | |
|---|---|---|---|---|---|---|
| Price/Acre | $162,191 | - | $71,262 | = | $90,929 | |
| | | | | ÷ $162,191 | = | 56.1% |

| | Sale 3 (38.43 Ac.) | | Sale 1 (192.08 Ac.) | | | |
|---|---|---|---|---|---|---|
| Price/Acre | $140,104 | - | $71,262 | = | $68,842 | |
| | | | | ÷ $140,104 | = | 49.1% |

Compiled by CBRE Inc.

**SIZE ADJUSTMENT - SALES 2 THRU 6**

| | Sale 4 (20.56 Ac.) | | Sale 1 (192.08 Ac.) | | | |
|---|---|---|---|---|---|---|
| Price/Acre | $182,198 | - | $71,262 | = | $110,936 | |
| | | | | ÷ $182,198 | = | 60.9% |

| | Sale 5 (27.29 Ac.) | | Sale 1 (192.08 Ac.) | | | |
|---|---|---|---|---|---|---|
| Price/Acre | $150,985 | - | $71,262 | = | $79,723 | |
| | | | | ÷ $150,985 | = | 52.8% |

Compiled by CBRE Inc.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | **Sale 6 (28.18 Ac.)** | **Sale 1 (192.08 Ac.)** | | | |
| Price/Acre | $155,190 | - $71,262 | = | $83,928 | |
| | | | | ÷ $155,190 | = **54.1%** |
| | **Sale 2 (46.07 Ac.)** | **Sale 7 (202.00 Ac.)** | | | |
| Price/Acre | $162,191 | - $73,263 | = | $88,928 | |
| | | | | ÷ $162,191 | = **54.8%** |
| Compiled by CBRE Inc. | | | | | |

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | **Sale 3 (38.43 Ac.)** | **Sale 7 (202.00 Ac.)** | | | |
| Price/Acre | $140,104 | - $73,263 | = | $66,841 | |
| | | | | ÷ $140,104 | = **47.7%** |
| | **Sale 4 (20.56 Ac.)** | **Sale 7 (202.00 Ac.)** | | | |
| Price/Acre | $182,198 | - $73,263 | = | $108,935 | |
| | | | | ÷ $182,198 | = **59.8%** |
| Compiled by CBRE Inc. | | | | | |

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | **Sale 5 (27.29 Ac.)** | **Sale 7 (202.00 Ac.)** | | | |
| Price/Acre | $150,985 | - $73,263 | = | $77,722 | |
| | | | | ÷ $150,985 | = **51.5%** |
| | **Sale 6 (28.18 Ac.)** | **Sale 7 (202.00 Ac.)** | | | |
| Price/Acre | $155,190 | - $73,263 | = | $81,927 | |
| | | | | ÷ $155,190 | = **52.8%** |
| Compiled by CBRE Inc. | | | | | |

The adjustments above support a downward adjustment for parcel size to Sales 2 through 6 ranging from 47.7% to 60.9%, with an average of 54.0%. The accuracy of these adjustments is dependent upon previous adjustments made for market conditions, location, and public utilities/infrastructure.

**Additional Sales**

The following sales from an active period in 2005-2006 prior to the Great Recession that were purchased for residential use have also been considered to assist in determining a size adjustment.

*Sale GS-6* – This is an 18.39-acre parcel zoned A-20 (Agricultural – 20-acre minimum) located between 3410 and 3650 East, south of Marrill Road in the Washington Fields area. The parcel sold February 1, 2006 (Doc. 20060000716) to Mauri Ventures for $2,700,000, or $146,819 per acre.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



*Sale GS-7* – This 336.27-acre parcel zoned M&G (Mining & Grazing) located just south of the Ledges master planned community in the northern portion of St. George is located on the east side of State Route 18. The parcel sold June 20, 2005 (B 1756 P 2390) for $22,000,000, or $65,424 per acre. After considering favorable financing terms, the cash equivalent price was estimated to be $21,270,000, or $63,253 per acre.

*Sale GS-8* – This 31.31-acre parcel zoned RA-5 (Rural Agricultural – 5-acre minimum) located at 3150 South 2000 East in the Washington Fields area sold May 27, 2005 (B 1749 P 092) for $4,000,000, or $127,755 per acre.

*Sale GS–9* – This 28.00-acre parcel zoned A-1 (Agricultural 1-acre minimum) located at 3100 South 20 East in the Washington Fields area sold May 25, 2005 (Doc. 00947292) for $2,311,650, or $82,559 per acre.

*Sale GS-10* – This 160.00-acre parcel zoned OST-20 (Open Space Transitional 20-acre minimum) located south of Stucki Farm and west of Warner Ridge near the new St. George airport sold May 16, 2005 (Doc. 945204/945319) for $6,400,000, or $40,000 per acre.

The above sales are compared following:

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | Sale GS-6 (18.39 Ac.) | Sale GS-7 (336.27 Ac.) | | | |
| Price/Acre | $146,819 | - | $63,253 | = $83,566 | |
| | | | | ÷ $146,819 = | 56.9% |
| Compiled by CBRE Inc. | | | | | |

As shown above, pairing Sale GS-6 to Sale GS-7 indicates an adjustment of 56.9%.

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | Sale GS-8 (31.31 Ac.) | Sale GS-7 (336.27 Ac.) | | | |
| Price/Acre | $127,755 | - | $63,253 | = $64,502 | |
| | | | | ÷ $127,755 = | 50.5% |
| Compiled by CBRE Inc. | | | | | |

As shown above, pairing Sale GS-8 to Sale GS-7 indicates an adjustment of **50.5%**.

| SIZE ADJUSTMENT - SALES 2 THRU 6 | | | | | |
|---|---|---|---|---|---|
| | Sale GS-9 (28.00 Ac.) | Sale GS-10 (160.00 Ac.) | | | |
| Price/Acre | $82,559 | - | $40,000 | = $42,559 | |
| | | | | ÷ $82,559 = | 51.5% |
| Compiled by CBRE Inc. | | | | | |

As shown above, pairing Sale GS-9 to Sale GS-10 indicates an adjustment of 51.5%.

The three pairings above provide a range of adjustments ranging from 50.5% to 56.9%.

The 13 pairings range from 47.7% to 60.9%, with an average of 53.7%. A review of the pairings indicates that there is no "perfect" paired sale, each having some differing characteristics. However, because size is the predominant determination of price in these pairings, the range is



fairly tight. Considering that the upper end in size of the data set is still slightly smaller than subject, I conclude to an adjustment higher than the average towards the upper end of the range, or -60.0% applicable to Sales 2 through 6.

No adjustment is warranted for Sale 1 (192.08 acres) or Sale 7 (202.00 acres) as they are reasonably similar in size to the subject.

## PUBLIC UTILITIES/INFRASTRUCTURE

| LAND SALES PUBLIC UTILITIES/INFRASTRUCTURE ADJUSTMENT ANALYSIS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Comparable Number<br>Location | Subject<br>Adjacent North of<br>the city limits of<br>St. George | 1<br>NWC of Main<br>Street & East<br>Buena Vista<br>Boulevard<br>Washington, UT<br>84780 | 2<br>North Side of<br>1050 South<br>Street at 2780<br>East Street<br>St. George, UT<br>84790 | 3<br>SWC Seegmiller<br>Drive & 3000 East<br>St. George, UT<br>84790 | 4<br>NWC Kwavasa<br>Drive and 200<br>South Street<br>Ivins, UT<br>84738 | 5<br>East of 3430 East<br>Street at 3200<br>South Street<br>St. George, UT<br>84790 | 6<br>East End of<br>White Dome<br>Drive, North<br>side of Southern<br>Parkway<br>St. George, UT<br>84790 | 7<br>Long Valley Road<br>Washington, UT<br>84780 |
| **Price Per Acre (Adj. thru Market Conditions)** | | **$76,279** | **$152,008** | **$131,928** | **$146,887** | **$140,716** | **$145,643** | **$51,485** |
| Public Utilities & Access Availability | Power - 866 LF<br>Water - 1,356 LF<br>Sewer - 5,402 LF<br>Access - 5,402 LF | Power, water,sewer and road improvements are located to the site at the SEC of the property at Main Street and Buena Vista Boulevard. | Power, water, sewer and road improvements are located to the site at 3000 East Street and 1140 South Street. | Power, water, sewer and road improvements are located to the site along 3000 East Street. | Power, water, sewer and road improvements are located +/- 690 feet to the south. | Power, water, sewer and road improvements are being delivered to the property by the buyer through development of previous phases. Utilities & infrastructure are located 170 LF to the West at Crimson Ridge Drive. | Power, water, sewer and road improvements are located to the site. | Water & sewer are located 5,990 LF at Washington Dam Road and Country Way. Road improvements are essentially to the site. Power will require extension of 1,235 LF from Washington Dam Road. |

Compiled by CBRE

In order to support a reasonable adjustment to the comparables, I interviewed two certified civil engineers (James A. Raines with Brennan Holdings and former owner of Bush & Gudgell, Inc. and Phil Giles with Jviation Engineering), who provided estimated costs to bring an improved road access, power, water and sewer lines to the subject. I have also reviewed various road improvement costs from various master plans in the region.

Mr. Raines reported that a typical 8-inch sewer line with manholes every 350 to 400 feet would cost approximately $30 per linear foot. Mr. Raines also indicated that a 28-foot paved road to the property would cost approximately $50 per linear foot. Mr. Giles reported that the sewer line would be approximately $25 to $30 per linear foot and the 28-foot roadway would be about $63 per linear foot.

Power would come from an existing substation located 866 LF to the west. It could be under-slung on the existing power line poles. The full cost of $18 per LF (per Marshall Valuation) would not be necessary. A cost of $6.00 per LF is reasonable and applied.

The total cost of road, power, sewer and water infrastructure allocated to the subject is estimated below:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



| Subject – Road, Utility & Infrastructure Cost Estimate | | | |
|---|---|---|---|
| | Linear Feet | Cost/LF | Total Cost |
| Water Expansion | | | $0 |
| Power Distribution Expansion | | | $0 |
| Sewer Lift Stations | | | $0 |
| Roads | 5,402 | $60.00 | $324,120 |
| Joint Utility Trenching | 5,402 | $18.00 | $97,236 |
| Power | 866 | $6.00 | $5,196 |
| Sewer | 5,402 | $30.00 | $162,060 |
| Storm Drainpipe | 5,402 | $36.00 | $194,472 |
| Water | 1,356 | $35.00 | $47,460 |
| Total Infrastructure Cost | | | $830,544 |
| Compiled by CBRE Inc. | | | |

Excluded from the above estimate are impact fees that may be applicable for expansion of water, sewer, or power. These impact fees are common to parcels within incorporated areas of Washington County and not specific to just the subject property. As the comparables are similar to the subject in this regard, impact fees are excluded from the adjustment calculation.

As shown above, the total cost for road and utility infrastructure extensions is estimated to be $830,544, or $3,117 per acre ($830,544 ÷ 266.42 acres = $3,117).

Land Sale 1 requires $0 offsite improvements (superior to subject). When compared to the subject's offsite costs of $3,117 per acre, the difference is $3,117 ($0 - $3,117 = $3,117). Sale 1 is adjusted downward $3,117 per acre.

Land Sale 2 requires $0 offsite improvements (superior to subject). When compared to the subject's offsite costs of $3,117 per acre, the difference is $3,117 ($0 - $3,117 = $3,117). Sale 2 is adjusted downward $3,117 per acre.

Land Sale 3 requires $0 offsite improvements (superior to subject). When compared to the subject's offsite costs of $3,117 per acre, the difference is $3,117 ($0 - $3,117 = $3,117). Sale 3 is adjusted downward $3,117 per acre.

Land Sale 6 requires $0 offsite improvements (superior to subject). When compared to the subject's offsite costs of $3,117 per acre, the difference is $3,117 ($0 - $3,117 = $3,117). Sale 6 is adjusted downward $3,117 per acre.

Land Sale 4 requires half-street offsite improvements, and extension of water and sewer to the site approximately 690 LF.  The following is my estimate of costs to provide offsite improvements.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



| Sale 4 - Road, Utility & Infrastructure Cost Estimate | | | |
|---|---|---|---|
| | Linear Feet | Cost/LF | Total Cost |
| Water Expansion | | | $0 |
| Power Distribution Expansion | | | $0 |
| Sewer Lift Stations | | | $0 |
| Roads | 690 | $60.00 | $41,400 |
| Joint Utility Trenching | 690 | $18.00 | $12,420 |
| Power | 690 | $16.00 | $11,040 |
| Sewer | 690 | $30.00 | $20,700 |
| Storm Drainpipe | 690 | $36.00 | $24,840 |
| Water | 690 | $35.00 | $24,150 |
| Total Infrastructure Cost | | | $134,550 |
| Compiled by CBRE Inc. | | | |

As shown above, my estimate of total hard and soft costs associated with providing offsites to Land Sale 4 total $134,550, or $6,544 per acre ($134,550 ÷ 20.56 = $6,544).   When compared to the subject's offsite costs of $3,117 per acre, the difference is $3,427 ($6,544 - $3,117 = $3,427). Sale 4 is adjusted upward $3,427 per acre).

Land Sale 5 requires half-street offsite improvements, and extension of water and sewer to the site. Sale 5 was purchased with utilities and infrastructure located approximately 170 feet to the west at Crimson Ridge Drive.   The following is my estimate of costs to provide offsite improvements.

| Sale 5 - Road, Utility & Infrastructure Cost Estimate | | | |
|---|---|---|---|
| | Linear Feet | Cost/LF | Total Cost |
| Water Expansion | | | $0 |
| Power Distribution Expansion | | | $0 |
| Sewer Lift Stations | | | $0 |
| Roads | 170 | $60.00 | $10,200 |
| Joint Utility Trenching | 170 | $18.00 | $3,060 |
| Power | 170 | $16.00 | $2,720 |
| Sewer | 170 | $30.00 | $5,100 |
| Storm Drainpipe | 170 | $36.00 | $6,120 |
| Water | 170 | $35.00 | $5,950 |
| Total Infrastructure Cost | | | $33,150 |
| Compiled by CBRE Inc. | | | |

As shown above, my estimate of total hard and soft costs associated with providing offsites to Land Sale 5 total $33,150, or $1,215 per acre ($33,150 ÷ 27.29 = $1,215).   When compared to the subject's offsite costs of $3,117 per acre, the difference is -$1,903 ($1,215 - $3,117 = -$1,903). Sale 5 is adjusted -$1,903 per acre.

© 2021 CBRE, Inc.

CBRE

<u>Land Sale 7</u> requires extension of water and sewer located 5,990 LF at Washington Dam Road and Country Way. Power will require extension of 1,235 LF from Washington Dam Road. The following is my estimate of costs to provide offsite improvements.

| Sale 7 - Road, Utility & Infrastructure Cost Estimate | | | |
|---|---|---|---|
| | Linear Feet | Cost/LF | Total Cost |
| Water Expansion | | | $0 |
| Power Distribution Expansion | | | $0 |
| Sewer Lift Stations | | | $0 |
| Roads | 0 | $60.00 | $0 |
| Joint Utility Trenching | 5,990 | $18.00 | $107,820 |
| Power | 1,235 | $16.00 | $19,760 |
| Sewer | 5,990 | $30.00 | $179,700 |
| Storm Drainpipe | 5,990 | $36.00 | $215,640 |
| Water | 5,990 | $35.00 | $209,650 |
| Total Infrastructure Cost | | | $732,570 |
| Compiled by CBRE Inc. | | | |

As shown above, my estimate of total hard and soft costs associated with providing offsites to Land Sale 7 total $732,570, or $3,627 per acre ($732,570 ÷ 202.00 = $3,627). When compared to the subject's offsite costs of $3,117 per acre, the difference is $509 ($3,627 - $3,117 = $509). Sale 7 is adjusted downward $509 per acre.

## SITE IMPROVEMENTS

The subject consists of raw unimproved land. The comparables sold as raw unimproved land, or land utilized for farming. The sale prices do not reflect any material difference between raw desert land and agricultural/farming land. No adjustment is required.

## Highest & Best Use/Zoning

Subject is currently zoned Open Space. Prior to developer, annexation into the City of Washington prior to obtaining zoning. The comparables are compared to subject below:

| LAND SALES HIGHEST & BEST USE ADJUSTMENT ANALYSIS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Comparable Number | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Location | Adjacent North of the city limits of St. George | NWC of Main Street & East Buena Vista Boulevard Washington, UT 84780 | North Side of 1050 South Street at 2780 East Street St. George, UT 84790 | SWC Seegmiller Drive & 3000 East St. George, UT 84790 | NWC Kwavasa Drive and 200 South Street Ivins, UT 84738 | East of 3430 East Street at 3200 South Street St. George, UT 84790 | East End of White Dome Drive, North side of Southern Parkway St. George, UT 84790 | Long Valley Road Washington, UT 84780 |
| **Price Per Acre (Adj. thru Market Conditions)** | | **$76,279** | **$152,008** | **$131,928** | **$146,887** | **$140,716** | **$145,643** | **$51,485** |
| Highest & Best Use/Zoning | OS (Open Space) - 20-acre lot minimum with uses limited to public and agricultural uses - In Proposed Annexation Area | Un-Zoned Rezoned to PCD (Planned Community Development) by buyer / Residential Development -Annexed- | A-20 (Agricultural) permitting 20-acre lots -Annexed- | R-1-12 (Single-Family Residential 12,000 SF Lot Minimum) & RE-20 (Residential Estate 20,000 SF Lot Minimum) / Residential Development -Annexed- | R-1-10 (Single Family Residential 10,000 SF Lot Minimum) / Residential Development -Annexed- | A-1 (Agricultural 1-Acre Lot Minimum) Rezoned to R-1-12 (Single Family Residential 12,000 SF Lot Minimum) by buyer / Residential Development -Annexed- | R-1-10 (Single Family Residential 10,000 SF Lot Minimum) / Residential Development -Annexed- | PUD (Planned Unit Development) - approved for 2,100 units; buyer required to obtain city approval for individual subdivisions -Annexed- |
| **Indicated Qualitative Adjustment** | | Sltly Superior | Sltly Superior | Sltly Superior | Sltly Superior | Sltly Superior | Sltly Superior | Sltly Superior |
| Compiled by CBRE | | | | | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



Sales 3, 4, 6, and 7 were acquired with zoning in place. Subject and Sales 1, 2 and 5 are zoned for lower densities reasonably similar to subject but have a highest and best use for more intense zoning of R-1-10 (10,000 SF Lot Minimum) to R-1-12 (12,000 SF Lot Minimum).

While the comparable zoning categories vary somewhat, all have similar highest and best use characteristics. A comparison of Sales 2 and 5 that were not zoned at the time of acquisition reported prices (adjusted thru market conditions) range from $140,716 to $152,008 per acre, respectively. Sales 3, 4, and 6 were zoned to their highest and best use and have adjusted prices ranging from $131,928 to $146,887 per acre. The data suggests no adjustment warranted for lack of zoning.

Because the subject would require annexation and rezoning, there are some costs associated with the entitlement process. According to Bush and Gudgell, the estimated cost for approval for rezoning to a planned unit development is approximately $34,200 ($28,000 for zoning and $6,200 for annexation costs), or approximately $37 per acre. The developer of the 154-acre Reserve parcel in Green Springs reported entitlement cost of $8,500, or about $55 per acre. The two sources support an entitlement cost, including annexation cost, of $37 to $55 per acre.

The above costs do not consider the holding costs necessary to entitle the property. While none of the costs were entitled, like the subject, all were annexed into an incorporated city. Assuming a 6-month holding period required to annex the subject and an interest rate of 5%, and assuming a value of the property ranging from $71,000 to $78,000 per acre, or approximately $10,200,000 to $11,200,000, consistent with the majority of the adjusted data set thus far, a holding cost of $255,000 to $280,000 is indicated relative to annexation, or $1,772 to $1,946 per acre. Adding an additional $50 per acre for entitlement costs would bring this range to $1,822 to $1,996 per acre. A downward adjustment of $1,900 per acre is supported by the analysis and applied to each of the comparables.

### Economic Characteristics

Economic characteristics include all the attributes of a property that impact income and is usually applied to income-producing properties. There are no income-producing characteristics associated with the subject or comparables. No adjustment is applied.

### SUMMARY OF ADJUSTMENTS

Based on my comparative analysis, the following chart summarizes the adjustments warranted to each comparable.

© 2021 CBRE, Inc.



## LAND SALES ADJUSTMENT GRID

| Comparable Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Subject |
|---|---|---|---|---|---|---|---|---|
| Transaction Type | Sale | Sale | Sale | Sale | Sale | Sale | Sale | --- |
| Transaction Date | Nov-14 | Jul-16 | May-18 | May-19 | Oct-19 | Apr-20 | Dec-20 | --- |
| Option Date | | | | May-16 | May-18 | | | |
| Intended Use | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | Near-Term Residential Development | --- |
| **Adjusted Sale Price** [1] | **$8,826,325** | **$4,700,000** | **$3,900,000** | **$2,000,000** | **$3,000,000** | **$3,697,500** | **$10,000,000** | |
| Size (Acres) | 192.08 | 46.07 | 38.43 | 20.56 | 27.29 | 28.18 | 202.00 | 266.42 |
| Price Per Acre | $45,951 | $102,019 | $101,483 | $97,276 | $109,934 | $131,210 | $49,505 | --- |
| Price ($ Per AC) | $45,951 | $102,019 | $101,483 | $97,276 | $109,934 | $131,210 | $49,505 | |
| Property Rights Conveyed | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Financing Terms [1] | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Conditions of Sale | 0% | 0% | 0% | 0.0% | 0% | 0% | 0% | |
| Non-Realty Components | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Market Conditions (Time) | 66% | 49% | 30% | 51% | 28% | 11% | 4% | |
| Subtotal | $76,279 | $152,008 | $131,928 | $146,887 | $140,716 | $145,643 | $51,485 | |
| Location | 0% | 10% | 10% | 23% | 10% | 10% | 45% | |
| Topo/Site Utility/Views | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |
| Size | 0% | -60% | -60% | -60% | -60% | -60% | 0% | |
| Public Utilities/Infrastructure | -4.1% | -2.1% | -2.4% | 2.3% | -1.4% | -2.1% | 1.0% | |
| Site Improvemts | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | |
| Highest & Best Use/Zoning | -2.5% | -1.2% | -1.4% | -1.3% | -1.4% | -1.3% | -3.7% | |
| Economic Characteristics | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | |
| Total Other Adjustments | -6.6% | -53.3% | -53.8% | -36.0% | -52.7% | -53.4% | 42.3% | |
| **Indicated Value Per Acre** | **$71,262** | **$70,986** | **$60,947** | **$94,066** | **$66,555** | **$67,804** | **$73,263** | |
| Absolute Adjustment | 73% | 122% | 104% | 138% | 101% | 84% | 55% | |

[1] Adjusted sale price for cash equivalency and/or development costs (where applicable)

Compiled by CBRE

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

## SUMMARY OF ADJUSTMENTS

Six land sales were considered ranging from 20.56 acres to 202.00 acres with unadjusted prices ranging from $45,951 to $131,210 per acre. Adjustments were made for market conditions, location, topo/site-utility, and size characteristics. The most impacting adjustments were for location that was inclusive of demographic differences, but also differences related to availability and distance to infrastructure (utilities and access). These characteristics were combined into a singular location adjustment as these influences on location are interrelated to each other.

Paired sales and other data points were relied upon to support each of the adjustments.

Sales 2 through 6 are generally similar in size ranging from 20.56 acres to 46.07 acres. The lack of large land sales required significant reliance on the size adjustment. Similarly, the lack of recent transactions also required reliance on older transactions that warranted significant adjustments for market conditions.

Prior to adjustments, the comparables indicated prices ranging from $45,951 to $131,210 per acre, with an average of $91,054 per acre. After adjustments, the comparables provide a more narrow range of values from $60,947 to $94,066, with an average of $72,126 per acre. Excluding Sale 4 ($94,066 per acre), the adjusted range is from $60,947 to $70,986 per acre, or an average of $68,470 per acre.

### Sale 1

Sale 1 consists of a 192.08-acre parcel that sold for $45,951 per acre. An upward 66% adjustment was made for inferior market conditions. An adjustment of -4.1% was applied for superior public utilities/infrastructure. Other adjustments totaled -6.6%, while absolute adjustments totaled 73%. Finally, Sale 1 at 192.08 acres is smaller than the subject at 266.42 acres suggesting the potential for a downward adjustment, though this adjustment is expected to be modest if even applicable. There have been few land sales of this size category historically, and market participants suggest that there would be no material adjustment for parcels between 200 and 300 acres. Sale 1 at an adjusted value of $71,262 per acre includes average valley floor views to the north towards Pine Valley Mountain. The subject has similar average views to the east and northeast towards Pine Valley Mountain. Sale 1 supports an adjusted value for the subject at $71,262 per acre.

### Sale 2

Sale 2 consists of a 46.07-acre parcel that sold for $102,019 per acre. An upward 49% adjustment was made for inferior market conditions. An upward 10% adjustment was applied for inferior location while a -60% adjustment was made for size. Finally, an adjustment of -2.1% was applied for superior public utilities/infrastructure. Other adjustments totaled -53.3%, while absolute adjustments totaled 122%. Sale 2 at an adjusted value of $70,986 per acre includes average valley floor views to the north towards Pine Valley Mountain. The subject has average

© 2021 CBRE, Inc.



views to the east and northeast towards Pine Valley Mountain. Sale 2 supports an adjusted value of $70,986 per acre.

### Sale 3

Sale 3 consists of a 38.43-acre parcel that sold for $101,483 per acre.  An upward 30% adjustment was made for inferior market conditions.  An upward 10% adjustment was applied for inferior location while a -60% adjustment was made for size. Finally, an adjustment of -2.4% was applied for superior public utilities/infrastructure. Other adjustments totaled -53.8%, while absolute adjustments totaled 104%. Sale 3 at an adjusted value of $60,947 per acre includes average valley floor views to the north towards Pine Valley Mountain. The subject has average views to the east and northeast towards Pine Valley Mountain. Sale 3 supports an adjusted value of $60,947 per acre.

### Sale 4

Sale 4 consists of a 20.56-acre parcel that sold for $97,276 per acre. An upward 51% adjustment was made for inferior market conditions.  An upward 23% adjustment was applied for inferior location while a -60% adjustment was made for size.  Finally, an upward adjustment of 2.3% was applied for inferior public utilities/infrastructure. Other adjustments totaled -36.0%, while absolute adjustments totaled 138%. Sale 4 at an adjusted value of $94,066 per acre includes average valley floor views to the north towards Red Mountain. The subject has average views to the east and northeast towards Pine Valley Mountain. Sale 4 supports an adjusted value of $94,066 per acre.

### Sale 5

Sale 5 consists of a 27.29-acre parcel that sold for $109,934 per acre.  An upward 28% adjustment was made for inferior market conditions.  An upward 10% adjustment was applied for inferior location while a -60% adjustment was made for size.  Other adjustments totaled -36.0%, while absolute adjustments totaled 138%. Finally, an adjustment of -1.4% was made for superior public utilities/infrastructure. Other adjustments totaled -52.7%, while absolute adjustments totaled 101%.  Sale 5 at an adjusted value of $66,555 per acre included average views to the west and northwest, with some lots having slightly elevated views along its eastern boundary. However, this characteristic was determined to not be significant to the overall price sold.  No material difference in views between Sale 5 and subject were noted. Sale 5 supports an adjusted value of $66,555 per acre.

### Sale 6

Sale 6 consists of a 28.18-acre parcel that sold for $131,210 per acre.  An upward 11% adjustment was made for inferior market conditions.  An upward 10% adjustment was applied for inferior location while a -60% adjustment was made for size.  Finally, a -2.1% adjustment was made for superior public utilities/infrastructure. Other adjustments totaled -53.4%, while absolute adjustments totaled 84%.  Sale 6 at an adjusted value of $67,804 per acre includes average

© 2021 CBRE, Inc.



valley floor views to the north towards Pine Valley Mountain. The subject has average views to the east and northeast towards Pine Valley Mountain. Sale 6 supports an adjusted value of $67,804 per acre.

### Sale 7

Sale 7 consists of a 202.00-acre parcel that sold for $49,505 per acre. An upward 4% adjustment was made for inferior market conditions. An upward 45% adjustment was applied for inferior location while an upward 1.0% adjustment was made for inferior public utilities/infrastructure. Other adjustments totaled 42.3%, while absolute adjustments totaled 55%. Finally, Sale 7 at 202.00 acres is larger than the subject at 266.42 acres suggesting the potential for an upward adjustment, though this adjustment is expected to be modest. Sale 7 at an adjusted value of $73,263 per acre includes no material views. The subject has average views to the east and northeast towards Pine Valley Mountain. Sale 7 supports an adjusted value of $73,263 per acre.

## THE RESERVE AT GREEN SPRINGS VALUE ANALYSIS

In order to test for reasonableness my adjusted value range, I have considered the "sale" of The Reserve at Green Springs Parcel (122.02 acres) through a Development Agreement consummated at the end of 2013. However, the agreement essentially permitted the buyer (Brennan Holdings) to tie up the property (at an insignificant cost) until January 2015 when lot development commenced.

SITLA's internal financial analysis using a net present value methodology showing a return of $8,540,731 at 5.5% (rate used because of no capital expenditures and corresponding low risk to SITLA and the developer putting in infrastructure at an estimated cost of $9.19 million). The NPV of $8,540,731 assumes a developer sell-out of 5 years reflecting a value of $69,539 per acre. SITLA's financial analysis also included a 4-year sellout projection at $8,639,857 net present value, or $70,346 per acre. SITLA's 3-year projection indicated a net present value of $8,868,357, or $72,206 per acre. From the seller's perspective, the sale was for $69,539 to $72,206 per acre. This would equate to a value of $8,485,149 to $8,810,576. In order to test the reasonableness of SITLA's pricing, yield capitalization was applied to the actual sell-off of the project.

### The Reserve Yield Analysis

The Reserve Parcel is located within SITLA's Green Springs master planned community. Its proximity to subject makes this transaction very relevant. It is a 122.82-acre property (closed at 122.02 acres) identified by SITLA as a "remnant parcel." A memo provided to the appraiser by SITLA that was prepared and presented to the State of Utah Board of Trustees, School and Institutional Trust Lands Administration the September 11, 2013 board meeting indicate the following:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



- Property location is on the northern edge of Washington City abutting the Red Cliffs Desert Reserve directly adjacent to a higher end subdivision known as Northbridge Estates.

- Over the prior year, several developers approached SITLA concerning the availability of the parcel for acquisition.

- SITLA decided to "test" the viability of the parcel through an RFP process.  The parcel was advertised in the Spectrum Newspaper for three consecutive weekends starting May 18, 2013 through June 2, 2013, and the RFP was also published on the SITLA website.

- During the course of advertising, there were several inquiries.  However, only one developer (Brennan Holdings, LLC) submitted a formal response.  Brennan Holdings, LLC (Robert Brennan), is a major developer of luxury and high-end residential properties in Sun Valley, Idaho and San Luis Obispo, California over the past 30 plus years.

- SITLA's vision for the property has been to hold the property for "the right development opportunity with the right developer who is sensitive to and has the experience necessary to capitalize on the unique land features by developing it as a higher end residential community consistent with the Green Springs area and the adjoining high-end project of Northbridge Estates.  Staff is confident that Brennan Holdings is the right developer for this parcel.  Mr. Brennan's plan proposes a project consisting of varying lot sizes and price points to meet a broad spectrum of market demand.  The proposed plan reflects the developer's commitment to being respectful of the character of the land and the protection of values to enhance views, minimize grading impacts and facilitating use of natural drainage and open space features."

- The Brennan Proposal is to phase the development of the lots for retail sale of 239 single family lots over a five-year period to the market.  The project would include standard, larger, and estate lots as follows:

  ➢ 138 Standard Lots (56 acres) at a density of 2.5 dwelling units per acre consisting of 10,000-12,000 square foot lots to be sold at an estimated lot price of $95,000 per lot and an estimated home value of $350,000 to $500,000.

  ➢ 67 Large Lots (27 acres) at a density of 2.2 dwelling units per acre consisting of 12,000-18,000 square foot lots to be sold at an estimated lot price of $135,000 per lot and an estimated home value of $500,000 to $750,000.

  ➢ 34 Estate Lots (25 Acres) at a density of 1.4 dwelling units per acre consisting of 20,000-40,000 square foot lots to be sold at an estimated lot price of $200,000+ per lot and an estimated home value of $750,000+.

  - Brennan's proposed development plan projects the lot absorption for developed lots to be approximately 48 per year.  The developer proposed to phase the project in 10 to 15 smaller phases for the projected 5-year phasing plan.

  - SITLA staff also analyzed the project based on gross returns.  Under the proposal for a 65% - 35% split, SITLA will receive 35% of the revenues with no participation in the development costs.  Payment to SITLA for each lot sale

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



would be at a simultaneous closing for the sale of a lot to a builder with the patent passing from SITLA to the buyer.  Total gross returns to SITLA would be as follows:

|  | Estate Lots | Large Lots | Standard Lots | Totals |
|---|---|---|---|---|
| Proposed Lot Pricing | $200,000 | $135,000 | $95,000 | |
| No. of Lots | 34 | 67 | 138 | 239 |
| Total Lot Revenue | $6,800,000 | $9,045,000 | $13,110,000 | $28,955,000 |
| SITLA Portion | | | | 35% |
| SITLA Gross Profit | | | | $10,134,250 |

Based on SITLA's anticipated 3- to 5-year projections, a yield rate to SITLA as a passive investor would be 3.5% to 4.5%.

The following is a brief summary of the 51-page Development Lease Agreement:

On November 20, 2013, Brennan Holdings No. 100, LLC entered a development lease agreement (No. 1046) with SITLA to develop this 122.82-acre parcel.  The agreement delivers the property to Brennan Holdings in its "as is" condition for a term of 5 years.  The lease is identified as a "net lease", meaning that it is the intention of the parties that lessee is responsible for all costs and expenses of the ownership, development, maintenance, repair and operation of the property incurred or accrued during the lease term and any option terms.  The purpose of the development lease is to allow Brennan Holdings to develop and sell finished lots only.  If the lessee is not in default at the end of the 5-year period, and if a minimum of 50% of the lots in the Development Plan have been sold to third party purchases, then the lessee can extend the lease term an additional 2 years (1st Option Term).  If the lessee is not in default at the end of the 1st Option Term, an Additional Option Term of 3 years may be granted with payment of an option payment (of 7.5% x 35% of estimated market value of the finished lots).  Upon termination of the lease, the lessee is to surrender the property to SITLA.

During the initial term of the lease, the minimum lot price for each improved lot is: (1) Standard Lot: $92,500; (2) Premium Lot: $92,500; (3) Estate Lot: $150,000; and (4) Townhome Unit: $60,000.  The minimum lot price cannot be adjusted during the initial lease term without both lessee's and lessor's written consent, and no finished lot can be sold for less than the minimum lot price, without prior written consent of the lessor.  Prior to entering into the first option term, the lessor retained the right to adjust the minimum lot price for each lot type based on an appraisal by a mutually agreed upon licensed and certified appraiser paid for by the lessor, to determine fair market value for each lot type.  The appraised value of the lots is to be based on the sale of multiple lots to merchant builders and not on the consumer retail price of the lots.

Lease payments to SITLA are $500 per year during the term of the lease, which may increase during the option periods.  In addition to the annual rent payment, a percentage rent is required at 35% of the gross sales price of the finished lot to a third-party purchaser.  The gross sales price for a finished lot shall meet or exceed the minimum lot price for the applicable lot series.  In

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



addition to the lease payment and the percentage rent, the lessee is required to reimburse the lessor (SITLA) at closing of each sold lot for prepaid water reservation fees made by lessor to the Washington County Water Conservancy District to obtain and reserve water service for the development of the property.  Water reservation fees for each lot series are: (1) Standard Lot: $83; (2) Premium Lot: $83; (3) Estate Lot: $135; and (4) Townhome Unit: $54.

Title conveyance to a third-party purchaser is made through a double closing.  The pre-closing phase consists of an escrow account established with Southern Utah Title or another mutually agreed upon title company (escrow agent).  Upon recordation of a final subdivision plat for the property or phase of the property, lessor will deposit with the escrow agent individual certificates of sale and patents signed by lessor in favor of lessee for each finished/improved lot within the recorded plat.

The **first closing** occurs after the pre-closing actions have taken place.  Following the pre-closing phase, (i) a fully executed copy of a real estate purchase contract between lessee and a third-party to sell a finished lot will be received by the escrow agent (third-party REPC).  Once all conditions have occurred to the first closing and all funds paid by the third-party deposited with the escrow agent, (ii) a fully-executed deed conveying all of the lessee's right, title and interest in the finished lot to the third-party purchaser pursuant to the terms of the lease, the third-party REPC shall be received by the escrow agent.  Once the proceeds, actions, and documents have been received by the escrow agent, (iii) the escrow agent will deposit in a separate account for the benefit of the lessor, the percentage payment and water reservation fee, fill in the purchase price of the lot, and have the certificate of sale signed by lessee, and convey to lessee by means of certificate of sale and patent, all of the lessor's right, title and interest in the finished lot.

The **second closing** occurs once the first closing actions and terms have been completed.  The escrow agent will then record with the Washington County Recorder (i) the patent from lessor to lessee, and then (ii) the conveyance deed from lessee to the third-party purchaser.  The escrow agent will then return the original fully executed certificate of sale to the lessor upon completion of the second closing, and distribute all funds and take all other actions described by the Development Lease and/or the third-party REPC, and release to the lessor the percentage payment and water reservation fee for the improved/finished lot, in cash or collected funds.

While Brennan's initial proposal estimated development of 239 lots, he was actually able to obtain 307 lots after engineering was completed.  Analysis of actual closings and recordings of each sale indicate that the 307 lots closed and were recorded beginning June 4, 2015, with the final lot closed on March 4, 2019.  The actual closings over the 43-month period indicate a rate of 7.14 recorded sales per month.  The following is the developer's summary of closings and his development expenses:

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



| Green Springs | No. of Lots | Developed Aceage | Total Acreage | Year Sold | Average Lot Sales Price | Total Sales Price | SITLA (Cost of Land) | Cost per Developed Acre | Development Expenses | Development Cost per Developed Acre |
|---|---|---|---|---|---|---|---|---|---|---|
| Terraces Phase 1 | 33 | 13.08 | 15.11 | 2015-16 | $101,412 | $3,346,600 | $1,171,310 | $89,550 | $1,914,295 | $146,353 |
| Terraces Phase 2-3 | 49 | 17.10 | 17.10 | 2017 | $107,585 | $5,271,650 | $1,845,077 | $107,899 | $2,205,393 | $128,970 |
| Terraces Phase 4 | 15 | 4.83 | 5.94 | 2018 | $105,000 | $1,575,000 | $551,250 | $114,130 | $1,024,505 | $212,113 |
| Reserve Phase 1 | 21 | 8.65 | 9.72 | 2015 | $99,000 | $2,079,000 | $727,650 | $84,121 | $1,161,163 | $134,239 |
| Reserve Phase 2 | 19 | 6.12 | 6.12 | 2016 | $101,105 | $1,921,000 | $672,350 | $109,861 | $760,752 | $124,306 |
| Reserve Phase 3 | 31 | 9.97 | 9.97 | 2018 | $101,619 | $3,150,190 | $1,102,567 | $110,588 | $1,508,563 | $151,310 |
| Reserve Phase 4 | 11 | 4.74 | 5.54 | 2018 | $101,619 | $1,117,810 | $391,233 | $82,539 | $418,133 | $88,214 |
| Villas Phase 1 | 54 | 13.29 | 15.10 | 2018 | $75,000 | $4,050,000 | $1,012,500 | $76,185 | $2,455,836 | $184,788 |
| Villas Phase 2 | 12 | 3.63 | 5.70 | 2019 | $142,500 | $1,710,000 | $427,500 | $117,769 | $456,000 | $125,620 |
| Villas Phase 3 | 31 | 6.54 | 7.66 | 2019 | $75,000 | $2,325,000 | $581,250 | $88,876 | $1,178,000 | $180,122 |
| Estates | 31 | 21.24 | 24.06 | 2016-19 | $200,790 | $6,224,500 | $2,178,575 | $102,569 | $2,004,601 | $94,379 |
| **Totals** | **307** | **109.19** | **122.02** | | | **$32,770,750** | **$10,661,262** | **$97,640** | **$15,087,241** | **$138,174** |

My research of individual lot recordings is presented on the following pages:

| No. Lots | Subdivision Phase | Year 2015 Month 1 Jun-15 | 2 Jul-15 | 3 Aug-15 | 4 Sep-15 | 5 Oct-15 | 6 Nov-15 | 7 Dec-15 | Yearly Total |
|---|---|---|---|---|---|---|---|---|---|
| 33 | Terraces Phase 1 | 5 | 7 | | | 2 | 7 | 4 | 25 |
| 49 | Terraces Phase 2-3 | | | | | | | | 0 |
| 15 | Terraces Phase 4 | | | | | | | | 0 |
| 21 | Reserve Phase 1 | 21 | | | | | | | 21 |
| 19 | Reserve Phase 2 | | | | | | | | 0 |
| 31 | Reserve Phase 3 | | | | | | | | 0 |
| 11 | Reserve Phase 4 | | | | | | | | 0 |
| 54 | Villas Phase 1 | | | | | | | | 0 |
| 12 | Villas Phase 2 | | | | | | | | 0 |
| 31 | Villas Phase 3 | | | | | | | | 0 |
| 31 | Estates | | | | | | | | 0 |
| 307 | Total | 26 | 7 | 0 | 0 | 2 | 7 | 4 | 46 |

| No. Lots | Subdivision Phase | Year 2016 Month 8 Jan-16 | 9 Feb-16 | 10 Mar-16 | 11 Apr-16 | 12 May-16 | 13 Jun-16 | 14 Jul-16 | 15 Aug-16 | 16 Sep-16 | 17 Oct-16 | 18 Nov-16 | 19 Dec-16 | Yearly Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | Terraces Phase 1 | 3 | 3 | 1 | | | | | 1 | | | | | 8 |
| 49 | Terraces Phase 2-3 | | | | | | | | | | | | | 0 |
| 15 | Terraces Phase 4 | | | | | | | | | | | | | 0 |
| 21 | Reserve Phase 1 | | | | | | | | | | | | | 0 |
| 19 | Reserve Phase 2 | | | | | | | | | | | 19 | | 19 |
| 31 | Reserve Phase 3 | | | | | | | | | | | | | 0 |
| 11 | Reserve Phase 4 | | | | | | | | | | | | | 0 |
| 54 | Villas Phase 1 | | | | | | | | | | | | | 0 |
| 12 | Villas Phase 2 | | | | | | | | | | | | | 0 |
| 31 | Villas Phase 3 | | | | | | | | | | | | | 0 |
| 31 | Estates | | | | | | | | 1 | 4 | 3 | 3 | 1 | 12 |
| 307 | Total | 3 | 3 | 1 | 0 | 0 | 0 | 0 | 2 | 4 | 3 | 22 | 1 | 39 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

Land Valuation (Larger Parcel)

| No.<br>Lots | Year<br>Month<br>Subdivision Phase | 2017<br>20<br>Jan-17 | 21<br>Feb-17 | 22<br>Mar-17 | 23<br>Apr-17 | 24<br>May-17 | 25<br>Jun-17 | 26<br>Jul-17 | 27<br>Aug-17 | 28<br>Sep-17 | 29<br>Oct-17 | 30<br>Nov-17 | 31<br>Dec-17 | Yearly<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | Terraces Phase 1 | | | | | | | | | | | | | 0 |
| 49 | Terraces Phase 2-3 | | | | 30 | 5 | 8 | 1 | 5 | | | | | 49 |
| 15 | Terraces Phase 4 | | | | | | | | | | | | | 0 |
| 21 | Reserve Phase 1 | | | | | | | | | | | | | 0 |
| 19 | Reserve Phase 2 | | | | | | | | | | | | | 0 |
| 31 | Reserve Phase 3 | | | | | | | | | | | | | 0 |
| 11 | Reserve Phase 4 | | | | | | | | | | | | | 0 |
| 54 | Villas Phase 1 | | | | | | | | | | | | | 0 |
| 12 | Villas Phase 2 | | | | | | | | | | | | | 0 |
| 31 | Villas Phase 3 | | | | | | | | | | | | | 0 |
| 31 | Estates | | 1 | 1 | | 2 | | 1 | | 1 | | | | 6 |
| 307 | Total | 0 | 1 | 1 | 30 | 7 | 8 | 2 | 5 | 1 | 0 | 0 | 0 | 55 |

| No.<br>Lots | Year<br>Month<br>Subdivision Phase | 2018<br>32<br>Jan-18 | 33<br>Feb-18 | 34<br>Mar-18 | 35<br>Apr-18 | 36<br>May-18 | 37<br>Jun-18 | 38<br>Jul-18 | 39<br>Aug-18 | 40<br>Sep-18 | 41<br>Oct-18 | 42<br>Nov-18 | 43<br>Dec-18 | Yearly<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | Terraces Phase 1 | | | | | | | | | | | | | 0 |
| 49 | Terraces Phase 2-3 | | | | | | | | | | | | | 0 |
| 15 | Terraces Phase 4 | | | | 15 | | | | | | | | | 15 |
| 21 | Reserve Phase 1 | | | | | | | | | | | | | 0 |
| 19 | Reserve Phase 2 | | | | | | | | | | | | | 0 |
| 31 | Reserve Phase 3 | | | | | | | | 31 | | | | | 31 |
| 11 | Reserve Phase 4 | | | | | | 11 | | | | | | | 11 |
| 54 | Villas Phase 1 | | | 54 | | | | | | | | | | 54 |
| 12 | Villas Phase 2 | | | | | | | | | | | | | 0 |
| 31 | Villas Phase 3 | | | | | | | | | | | | | 0 |
| 31 | Estates | | | | 3 | 6 | 3 | | | | | | | 12 |
| 307 | Total | 0 | 0 | 54 | 18 | 6 | 14 | 0 | 31 | 0 | 0 | 0 | 0 | 123 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

| | Year | 2019 | | | | |
|---|---|---|---|---|---|---|
| No. | Month | 44 | 45 | 46 | Yearly | Project |
| Lots | Subdivision Phase | Jan-19 | Feb-19 | Mar-19 | Total | Total |
| 33 | Terraces Phase 1 | | | | 0 | 33 |
| 49 | Terraces Phase 2-3 | | | | 0 | 49 |
| 15 | Terraces Phase 4 | | | | 0 | 15 |
| 21 | Reserve Phase 1 | | | | 0 | 21 |
| 19 | Reserve Phase 2 | | | | 0 | 19 |
| 31 | Reserve Phase 3 | | | | 0 | 31 |
| 11 | Reserve Phase 4 | | | | 0 | 11 |
| 54 | Villas Phase 1 | | | | 0 | 54 |
| 12 | Villas Phase 2 | 12 | | | 12 | 12 |
| 31 | Villas Phase 3 | | 24 | 7 | 31 | 31 |
| 31 | Estates | | 1 | | 1 | 31 |
| 307 | Total | 12 | 25 | 7 | 44 | 307 |

In order to determine a yield rate for Brennan Holding's and SITLA, I have analyzed the actual cashflows and expenses over the sellout period beginning June 4, 2015 and ending March 4, 2019. I have also considered a 12-month period to annex the property into the Washington City limits and develop the first lots. My analysis is summarized below with detailed cash flows (excluding profit but including rent payment to SITLA) presented on the following pages.

*Project As A Whole*: A study prepared by the National Association of Home Builders found that builder profits historically account for 6.8% to 12.0% of the sales price. The table below compares historical profit margins to more current profit margins.

| Sale Price Breakdown | 1998 | 2002 | 2004 | 2007 | 2009 | 2011 | 2013 | 2015 | 2017 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Finished Lot Cost | 23.6% | 23.5% | 26.0% | 24.5% | 20.3% | 21.7% | 18.6% | 18.2% | 21.5% | 18.5% |
| 2. Total Construction Cost | 54.8% | 50.8% | 51.7% | 48.1% | 58.9% | 59.3% | 61.7% | 61.8% | 55.6% | 61.1% |
| 3. Financing Cost | 1.9% | 2.1% | 1.8% | 2.4% | 1.7% | 2.1% | 1.4% | 1.3% | 1.8% | 1.7% |
| 4. Overhead and General Expenses | 5.7% | 5.5% | 5.8% | 7.0% | 5.4% | 5.2% | 4.3% | 5.6% | 5.1% | 4.9% |
| 5. Marketing Cost | 1.4% | 2.4% | 1.9% | 2.5% | 1.4% | 1.5% | 1.1% | 0.8% | 1.2% | 1.0% |
| 6. Sales Commission | 3.4% | 3.7% | 3.0% | 4.3% | 3.4% | 3.3% | 3.6% | 3.2% | 4.1% | 3.7% |
| 7. Profit | 9.2% | 12.0% | 9.8% | 11.2% | 8.9% | 6.8% | 9.3% | 9.0% | 10.7% | 9.1% |
| **8. Total Sales Price ($)** | $226,680 | $298,412 | $373,349 | $454,906 | $377,624 | $310,619 | $399,532 | $468,318 | $427,892 | $485,128 |

Source: NAHB Construction Cost Surveys, 1998-2019

The above shows profit for the home development phase, as profit margins are included in the finished lot cost and built into the construction costs. As shown above, profit margins for the home construction hit an all-time low of 6.8% in 2011 but rebounded to 10.7% in 2017 before stabilizing at 9.1% in 2019. During the downturn, many builders had to tighten their budgets, according to the most recent study. While homes are selling, and prices are rising, builders remain very cautious. This is likely why overhead and general expenses, which were 5.4% and 5.2% of the sales price in 2009 and 2011 respectively, hit an all-time low of 4.3% in 2013. The remainder of the sales price is divided between sales commission (3.7% in 2019), financing cost (1.7% in 2019), and marketing cost (1.0% in 2019).

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.



RealtyRates (3rd Quarter 2019 Data) reports proforma IRRs for the entire development phase for subdivisions (100-500 Units) ranging from 12.66% to 27.80%, with an average of 19.42%. This range of rates includes a component for profit (allocated between the lot development phase and the construction phase). Lot development returns can range from 5% to 8%. The construction phase requires returns from 8% to 10%. Other components of the IRR are for additional risk (if any) for a particular project (0% to 6%), and the time value of money to account for the holding costs over the development and sell-out period of the project (0% to 3%).

<u>As this analysis targets the sell-out of the finished residential lots only, an IRR allocated to just the sell-off phase of the lots only would be something less than the RealtyRates 12.66% to 27.80% range (includes profit and discount rate in the yield rate).</u> The subject yield rate would be expected to be in this range.

*Brennan Holdings*: The value to Brennan Holdings enhanced by the time and effort to annex the property and apply their expertise and experience to the project, reflects entrepreneurial profit of 8% of gross revenue, a discount rate ranging from 12.00% to 16.00%, and includes SITLA's rent payment as an expense (32.53% of gross revenue). The present value for the property (reflecting Brennan Holdings contribution to the whole) ranges from $2,160,000 to $2,240,000, or $17,702 to $18,358 per acre. The yield rate for the project (Brennan Holdings only), ranges from 14.32% to 14.85%.

*SITLA*: The value to SITLA for their land contribution, reflects their passive participation in the project, and the right to receive payments from each sale of the lot at a discount rate (safe rate) of 3.0% to 7.0%. Administrative expenses associated with title preparation and closing costs were applied at 1.5% of gross sales. The net present value for the property ranges from $7,050,000 to $7,260,000, or $57,777 to $59,498 per acre. The yield rate for the project (SITLA only), ranges from 3.0% to 7.0%.

### The Reserve at Green Springs Value Conclusion

In order to determine the value of the property as a whole via yield capitalization, I applied entrepreneurial profit of 9% of gross revenue and a discount rate ranging from 14.00% to 18.00%. The yield rate for the project (shared between SITLA and Brennan Holdings), ranges from 17.52% to 21.75%. The yield rate is consistent with market expectations. The present value for the property ranges from $8,530,000 to $9,440,000, or **$69,907 to $77,364 per acre, with an expected value of $73,513 per acre.** The actual range of values proved to be slightly higher than SITLA's initial proforma range of values from **$69,539 to $72,206 per acre**.



© 2021 CBRE, Inc.

## ASSUMPTIONS & YIELD ANALYSIS

| ASSUMPTIONS | |
|---|---|
| Start Date | Jan-15 |
| Beginning Inventory (Acres) | 122.02 |
| Estimated Total No. of Qtrs to Sell Out | 18 |
| No. Lots | 307 |
| **General Inputs** | |
| | |
| Development Costs Per Lot | $49,144.11 |
| Contractor's Profit | 5.00% |
| Entrepreneur's Profit | 0.00% |
| SITLA Percent Payment | 0.0000% |

**SENSITIVITY ANALYSIS**

| Residual Land Value & Yield Range To Brennan | | | | |
|---|---|---|---|---|
| **Entr. Profit** | **8.00%** | **8.00%** | **8.00%** | **8.00%** | **8.00%** |
| **Discount Rate** | **16.00%** | **15.00%** | **14.00%** | **13.00%** | **12.00%** |
| **Value** | $2,160,000 | $2,180,000 | $2,200,000 | $2,220,000 | $2,240,000 |
| **Value Per Acre** | $17,702 | $17,866 | $18,030 | $18,194 | $18,358 |
| **Yield Rate** | 14.32% | 14.45% | 14.58% | 14.71% | 14.85% |

| Residual Land Value & Yield Range To SITLA | | | | |
|---|---|---|---|---|
| **Admin. Costs** | **1.50%** | **1.50%** | **1.50%** | **1.50%** | **1.50%** |
| **Discount Rate** | **7.00%** | **6.00%** | **5.00%** | **4.00%** | **3.00%** |
| **Value** | $7,050,000 | $7,100,000 | $7,150,000 | $7,210,000 | $7,260,000 |
| **Value Per Acre** | $57,777 | $58,187 | $58,597 | $59,089 | $59,498 |
| **Yield Rate** | 7.00% | 6.00% | 5.00% | 4.00% | 3.00% |

| Residual Land Value & Yield Range To Project (SITLA & Brennan) | | | | |
|---|---|---|---|---|
| **Entr. Profit** | **9.00%** | **9.00%** | **9.00%** | **9.00%** | **9.00%** |
| **Discount Rate** | **18.00%** | **17.00%** | **16.00%** | **15.00%** | **14.00%** |
| **Value** | $8,530,000 | $8,750,000 | $8,970,000 | $9,200,000 | $9,440,000 |
| **Value Per Acre** | $69,907 | $71,710 | $73,513 | $75,397 | $77,364 |
| **Yield Rate** | 21.75% | 20.70% | 19.65% | 18.62% | 17.52% |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

*Land Valuation (Larger Parcel)*

| YIELD ANALYSIS - GREEN SPRINGS PARCEL - 122.02 ACRES | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Jan-15 | Apr-15 | Jun-15 | Sep-15 | Dec-15 | Mar-16 | Jun-16 | Sep-16 | Dec-16 |
| *Quarter* | | *1* | *2* | *3* | *4* | *5* | *6* | *7* | *8* | *9* |
| **Development Phase** | **No. Lots** | | | | | | | | | |
| Terraces Phase 1 | 33 | | | 12 | 9 | 10 | 1 | 1 | | |
| Terraces Phase 2-3 | 49 | | | | | | | | | |
| Terraces Phase 4 | 15 | | | | | | | | | |
| Reserve Phase 1 | 21 | | | 21 | | | | | | |
| Reserve Phase 2 | 19 | *Annexation & Lot Development Period* | | | | | | | 19 | |
| Reserve Phase 3 | 31 | | | | | | | | | |
| Reserve Phase 4 | 11 | | | | | | | | | |
| Villas Phase 1 | 54 | | | | | | | | | |
| Villas Phase 2 | 12 | | | | | | | | | |
| Villas Phase 3 | 31 | | | | | | | | | |
| Estates | 31 | | | | | | | 1 | 10 | 2 |
| Total Closings per Qtr (Lots) | | 0 | 0 | 33 | 9 | 10 | 1 | 2 | 29 | 2 |
| Ending Inventory (Lots) | | 307 | 307 | 274 | 265 | 255 | 254 | 252 | 223 | 221 |
| Terraces Phase 1 | $101,412.12 Per Lot | $0 | $0 | $1,216,945 | $912,709 | $1,014,121 | $101,412 | $101,412 | $0 | $0 |
| Terraces Phase 2-3 | $107,584.69 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Terraces Phase 4 | $105,000.00 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Reserve Phase 1 | $99,000.00 Per Lot | $0 | $0 | $2,079,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| Reserve Phase 2 | $101,105.26 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $1,921,000 | $0 | $0 |
| Reserve Phase 3 | $101,619.05 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Reserve Phase 4 | $101,619.05 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Villas Phase 1 | $75,000.00 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Villas Phase 2 | $142,500.00 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Villas Phase 3 | $75,000.00 Per Lot | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Estates | $200,790.32 Per Lot | $0 | $0 | $0 | $0 | $0 | $200,790 | $2,007,903 | $401,581 |
| **TOTAL GROSS SALES REVENUE PER QUARTER** | | $0 | $0 | $3,295,945 | $912,709 | $1,014,121 | $101,412 | $302,202 | $3,928,903 | $401,581 |
| **OPERATING EXPENSES** | | | | | | | | | | |
| Development Costs Per Lot | | $540,585 | $540,585 | $540,585 | $327,627 | $327,627 | $327,627 | $540,585 | $540,585 | $540,585 |
| Payment to SITLA | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Entrepreneur's Profit | | | | | | | | | | |
| Contractor's Profit (5%) | | 27,029 | 27,029 | 27,029 | 16,381 | 16,381 | 16,381 | 27,029 | 27,029 | 27,029 |
| General Administrative Expense (1.5%) | | 8,109 | 8,109 | 8,109 | 4,914 | 4,914 | 4,914 | 8,109 | 8,109 | 8,109 |
| **TOTAL EXPENSES** | | $575,723 | $575,723 | $575,723 | $348,923 | $348,923 | $348,923 | $575,723 | $575,723 | $575,723 |
| **NET REVENUE** | | -$575,723 | -$575,723 | $2,720,222 | $563,786 | $665,198 | -$247,511 | -$273,521 | $3,353,180 | -$174,143 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

**CBRE**

### YIELD ANALYSIS - GREEN SPRINGS PARCEL - 122.02 ACRES

| Development Phase | No. Lots | Mar-17 | Jun-17 | Jun-18 | Jun-19 | Jun-20 | Jun-21 | Jun-22 | Jun-23 | Jul-24 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Quarter** | | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | TOTAL |
| Terraces Phase 1 | 33 | | | | | | | | | | 33 |
| Terraces Phase 2-3 | 49 | | 35 | 14 | | | | | | | 49 |
| Terraces Phase 4 | 15 | | | | | 15 | | | | | 15 |
| Reserve Phase 1 | 21 | | | | | | | | | | 21 |
| Reserve Phase 2 | 19 | | | | | | | | | | 19 |
| Reserve Phase 3 | 31 | | | | | | 31 | | | | 31 |
| Reserve Phase 4 | 11 | | | | | | 11 | | | | 11 |
| Villas Phase 1 | 54 | | | | | 54 | | | | | 54 |
| Villas Phase 2 | 12 | | | | | | | | 12 | | 12 |
| Villas Phase 3 | 31 | | | | | | | | 24 | 7 | 31 |
| Estates | 31 | | 3 | 1 | 1 | 0 | 9 | 3 | | 1 | 31 |
| Total Closings per Qtr (Lots) | | | 38 | 15 | 1 | 0 | 78 | 45 | 0 | 37 | 7 | 307 |
| Ending Inventory (Lots) | | | 183 | 168 | 167 | 167 | 89 | 44 | 44 | 7 | 0 | |
| Terraces Phase 1 | $101,412.12 Per Lot) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $3,346,600 |
| Terraces Phase 2-3 | $107,584.69 Per Lot) | $3,765,464 | $1,506,186 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $5,271,650 |
| Terraces Phase 4 | $105,000.00 Per Lot) | $0 | $0 | $0 | $0 | $1,575,000 | $0 | $0 | $0 | $0 | $1,575,000 |
| Reserve Phase 1 | $99,000.00 Per Lot) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $2,079,000 |
| Reserve Phase 2 | $101,105.26 Per Lot) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,921,000 |
| Reserve Phase 3 | $101,619.05 Per Lot) | $0 | $0 | $0 | $0 | $0 | $3,150,190 | $0 | $0 | $0 | $3,150,190 |
| Reserve Phase 4 | $101,619.05 Per Lot) | $0 | $0 | $0 | $0 | $0 | $1,117,810 | $0 | $0 | $0 | $1,117,810 |
| Villas Phase 1 | $75,000.00 Per Lot) | $0 | $0 | $0 | $0 | $4,050,000 | $0 | $0 | $0 | $0 | $4,050,000 |
| Villas Phase 2 | $142,500.00 Per Lot) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,710,000 | $0 | $1,710,000 |
| Villas Phase 3 | $75,000.00 Per Lot) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,800,000 | $525,000 | $2,325,000 |
| Estates | $200,790.32 Per Lot) | $602,371 | $200,790 | $200,790 | $0 | $1,807,113 | $602,371 | $0 | $200,790 | $0 | $6,224,500 |
| **TOTAL GROSS SALES REVENUE PER QUARTER** | | $4,367,835 | $1,706,976 | $200,790 | $0 | $7,432,113 | $4,870,371 | $0 | $3,710,790 | $525,000 | $32,770,750 |
| **OPERATING EXPENSES** | | | | | | | | | | | |
| Development Costs Per Lot | | $884,594 | $884,594 | $884,594 | $2,014,908 | $2,014,908 | $2,014,908 | $720,780 | $720,780 | $720,780 | $15,087,241 |
| Payment to SITLA | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Entrepreneur's Profit | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Contractor's Profit (5%) | | 44,230 | 44,230 | 44,230 | 100,745 | 100,745 | 100,745 | 36,039 | 36,039 | 36,039 | 754,362 |
| General Administrative Expense (1.5%) | | 13,269 | 13,269 | 13,269 | 30,224 | 30,224 | 30,224 | 10,812 | 10,812 | 10,812 | 226,309 |
| **TOTAL EXPENSES** | | $942,093 | $942,093 | $942,093 | $2,145,877 | $2,145,877 | $2,145,877 | $767,631 | $767,631 | $767,631 | $16,067,912 |
| **NET REVENUE** | | $3,425,743 | $764,884 | -$741,302 | -$2,145,877 | $5,286,235 | $2,724,494 | -$767,631 | $2,943,159 | -$242,631 | $16,702,838 |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

© 2021 CBRE, Inc.

CBRE

## VALUE CONCLUSION

The seven adjusted comparable sales supported a market value range from $60,947 to $94,066 per acre, with an average adjusted value of $72,126 per acre. The Reserve at Green Springs sale through a development agreement was structured on SITLA's proforma valuation of the property at $69,539 to $72,206 per acre. Using yield capitalization, the actual performance of the buyer was slightly higher at $69,907 to $77,364 per acre.

Several observations can be made. First, the sales comparison approach applied provides a reasonable range of values. The adjustments applied are reasonable and adequately supported by multiple indicators. Analysis of The Reserve at Green Springs parcel using yield capitalization and provide additional points of reference in the analysis. The analysis relies on actual sales and expenses of the project.  While not the same as a true market sale, the price indicators are reflective of SITLA's development agreement structure and their expected return, and Brennan Holdings actual performance and the value they were able achieve based on their business model. And clearly, not all developers would be able to duplicate what Brennan Holdings was able to do, though others might exceed what was achieved. The Reserve comparable conclusion reflects a value as of January 2015 and was <u>not</u> adjusted for market conditions or size and provides secondary support (and a low indicator) to the sales comparison approach.

Sale 1 at 192.08 acres is smaller but reasonably comparable in size to the subject supporting a market value of $71,262 per acre. Sale 1 is the oldest of the data set occurring in November 2014, reflecting market conditions that were significantly inferior than those as of the effective date of value when the market was still recovering from the impact of The Great Recession. While Sale 1 required the highest market conditions adjustment at 66%, it required an additional -4.1% adjustment for superior public utilities/infrastructure. Sale 1 warrants strong consideration.

Sale 7 at 202.00 acres is also smaller but reasonably comparable in size to the subject supporting a market value of $73,263 per acre. Sale 2 is the newest of the data set occurring in December 2020, reflecting more current market conditions reasonably similar to conditions as of the effective date of value. Sale 1 required minimal market conditions adjustment at 4%, but required a significant location adjustment of 45%, and a minimal adjustment of 1.0% for inferior public utilities/infrastructure. Sale 7 warrants strong consideration.

The Green Springs transaction (122.02 acres) applying yield capitalization provides a low indicator of value referencing SITLA's proforma valuation of the property at $69,539 to $72,206 per acre. Using yield capitalization, the actual performance of the buyer was slightly higher at $69,907 to $77,364 per acre. Again, these indicators are as of 2015, suggesting a higher value for the subject if market conditions adjustments are applied.

Finally, Sales 2 thru 6 are much smaller transactions ranging from 20.56 to 46.07 acres and are given secondary weight with values ranging from $70,790 to $104,070 per acre.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

Giving primary weight to Sales 1 and 7 and considering the Green Springs yield capitalization test of reasonableness, as well as Sales 3, 5 and 6 reflecting the lowest absolute adjustments, I conclude towards the lower range of the indicators of the sales comparison approach adjusted range.  The following table presents my valuation conclusion:

| Concluded Land Value (Larger Parcel) | | | | |
|---|---|---|---|---|
| $ Per AC | | Subject Acs. | | Total |
| $69,000 | x | 266.42 | = | $18,382,980 |
| $73,000 | x | 266.42 | = | $19,448,660 |
| **Indicated Value:** | | | | **$19,000,000** |
| | | (Rounded $ Per AC) | | $71,316 |
| Compiled by CBRE | | | | |

My value indication above is at $19,000,000, or $71,316 per acre is supported by the range of value indicators from the sales comparison approach at $60,947 to $94,066 per acre.  It is also within the range indicated my analysis of the SITLA-Brennan The Reserve parcel at $69,907 to $77,364 per acre.

In the final analysis, my market value conclusion of $19,000,000, or $71,316 per acre, is concluded to be reasonable and supported.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

CBRE

© 2021 CBRE, Inc.

# Remainder Parcel Analysis

## SITE DESCRIPTION – REMAINDER PARCEL

The following compares the primary physical characteristics of the remainder parcel:

| Characteristics | Before Parcel | Remainder Parcel |
|---|---|---|
| Size: | 266.42 Acres | 213.14 Acres |
| Shape: | "L" Shaped | "L" Shaped |
| Topography | Rolling | Rolling |
| Zoning: | OST (Open Space Transitional), Red Cliffs Desert Reserve and Red Cliffs National Conservation Area | OST (Open Space Transitional), Red Cliffs Desert Reserve and Red Cliffs National Conservation Area |
| Flood Zone: | Zone X (Unshaded) | Zone X (Unshaded)\|Zone A |
| Utilities | | |
| Water: | 1,356 LF Away | 1,356 LF Away |
| Sewer: | 5,402 LF Away | 5,402 LF Away |
| Natural Gas: | 5,402 LF Away | 5,402 LF Away |
| Electricity: | 866 LF Away | 866 LF Away |
| Telephone: | 5,402 LF Away | 5,402 LF Away |
| Improved Access: | 5,402 LF Away | 5,402 LF Away |
| Detrimental Encumbrances & Reservations: | None | None |
| Encroachments: | None | None |
| Deed Restrictions: | None | None |

The only material physical differences between the subject in the before condition and the remainder in the after condition is size. Assuming the remainder parcel size does not change the concluded value per acre, the remainder parcel size can be estimated following:

| REMAINDER PARCEL SIZE | | |
|---|---|---|
| Larger Parcel Value | | $19,000,000 |
| Acquisition Dollars Available | | -$3,800,000 |
| Difference | | $15,200,000 |
| Value Per Acre | ÷ | $71,316 |
| Remainder Parcel Size (Acres) | | 213.14 |
| Compiled by CBRE, Inc. | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

The remainder parcel consisting of 213.14 acres is identified below (outlined in red):



*The acquisition parcel identified above is not a survey, but shows the general boundaries and configuration (acquisition parcel per legal is 2,694.40' x 861.44').*

The acquisition parcel consisting of 53.28 acres (2,694.40' x 861.44' per legal description) is identified above.

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

**CBRE**

© 2021 CBRE, Inc.

## TAX AND ASSESSMENT DATA – REMAINDER PARCEL

| | APN Assessed Size (Acres) | Assessment Year | Market Value | Taxable Value | Tax Rate | Total Taxes | Taxes Per Gross Acre | Subject Size (Acres) | Subject's Allocated Taxes |
|---|---|---|---|---|---|---|---|---|---|
| **AD VALOREM TAX INFORMATION - JAMES P. DOYLE PARCEL** | | | | | | | | | |
| **Tax ID** | | | | | | | | | |
| 1 | 266.42 | 2020/2021 | $2,131,400 | $2,131,400 | 0.007657 | $16,320 | $61.26 | | |
| | | | | | | | Larger Parcel | 266.42 | $16,320 |
| **Tax ID** | **APN Assessed Size (Acres)** | **Assessment Year** | **Market Value** | **Taxable Value** | **Tax Rate** | **Total Taxes** | **Taxes Per Gross Acre** | **Subject Size (Acres)** | **Subject's Allocated Taxes** |
| Total | 266.42 | 2020/2021 | $2,131,400 | $2,131,400 | 0.007657 | $16,320 | $61.26 | | |
| | | | | | | | Remainder Parcel | 213.14 | $13,056 |

Source: Washington County Assessor and CBRE, Inc.

The only difference between the larger parcel and the remainder parcel, relative to the tax assessment, is size. The difference in size only impacts the amount of taxes paid, not the taxes paid per acre.

## ZONING & LAND USE REGULATIONS – REMAINDER PARCEL

No material differences for zoning and land use regulations are noted between the larger parcel and the remainder parcel.

## HIGHEST AND BEST USE – REMAINDER PARCEL

The Uniform Appraisal Standards for Federal Land Acquisitions states that "In cases of an insignificant taking, the remainder may be so similar to the larger parcel before the acquisition that the same highest and best use analysis and the same cost, market, and income data and analysis will remain applicable and can therefore be referenced and employed in reporting the opinion of the market value of the remainder property."[6] Such is the case with the subject. No material differences for highest and best use are noted between the before the condition and the after condition.

## LAND VALUE – REMAINDER PARCEL

The same sales relied upon in valuing the larger parcel are used in valuing the remainder parcel.

### Adjustments

The only material physical differences between the subject in the before condition and the remainder condition is size and configuration.

---

[6] Interagency Land Acquisition Conference, Uniform Appraisal Standards for Federal Land Acquisitions, 6th ed., p. 69, the Appraisal Foundation, 2017

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

SIZE ADJUSTMENT

No material difference is noted between the before condition parcel (266.42 acres) and the size of the remainder parcel (213.14 acres).  It is noted that the part taken is the more remote part of the larger parcel. Larger parcels similar to subject are often sold or "taken down" in phases, several examples of which are cited in this report. As was the case in Sale No. 7, the first "takedown" is usually the best located, most development ready (most proximate to utilities and access) of the entire tract. The most development ready parcels are typically the most valuable. The converse is also true. In this case, the subject remainder would include some of the more remote portions of the site (northern portions) that would be the last takedown parcels. I have considered these size and configuration characteristics in my analysis and have concluded that they did not have any material impact on my conclusion. No adjustment is applied.

### Remainder Parcel Conclusion

A similar value per acre conclusion is applied to the remainder parcel:

| Concluded Land Value (Remainder Parcel) | | | | |
|---|---|---|---|---|
| $ Per AC | | Subject Acs. | | Total |
| $69,000 | x | 213.14 | = | $14,706,384 |
| $73,000 | x | 213.14 | = | $15,558,928 |
| **Indicated Value:** | | | | **$15,200,000** |
| | | (Rounded $ Per AC) | | $71,316 |
| Compiled by CBRE | | | | |

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT

**CBRE**

© 2021 CBRE, Inc.

# Reconciliation of Value

In the sales comparison approach, the subject is compared to the most similar properties available that have sold recently or for which listing prices or offers are known. The sales used in this analysis provide a wide range of comparability to the subject, yet the required adjustments were based on reasonable and well-supported rationale. In addition, market participants are currently analyzing purchase prices on other properties as they relate to available substitutes in the market. Therefore, the sales comparison approach provides a reliable value indication.

Based on the foregoing, the market value of the subject has been concluded as follows:

| MARKET VALUE CONCLUSIONS IN FEE SIMPLE INTEREST AS OF MAY 28, 2021 | | | |
|---|---|---|---|
| Appraisal Premise | Size (Acres) | Value Conclusion | Value Per Acre |
| Larger Parcel (Before Acquisition) | 266.42 | $19,000,000 | $71,316 |
| Remainder Parcel (After Acquisition) | 213.14 | $15,200,000 | $71,316 |
| Acquisition Parcel (Difference Between Before & After) | 53.28 | $3,800,000 | $71,316 |
| Part Acquired | 53.28 | $3,800,000 | $71,316 |
| Damages | | $0 | |
| Compiled by CBRE, Inc. | | | |

## Hypothetical Conditions

Per the Statement of Work, the appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

- The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq). The use of the above hypothetical condition may have affected the assignment results.

  *The use of the above hypothetical condition may have affected the assignment results.*

## Extraordinary Assumption

- None noted

## Jurisdictional Exception

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) <u>Comment</u> states: "When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of value under these Standards to a specific opinion of <u>exposure time</u>, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a <u>jurisdictional exception</u> to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).

## Legal Instructions

The following legal instruction was provided to the appraiser. Applicable law must be considered, including Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

*In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

# Assumptions and Limiting Conditions

1.  Rick Smith has inspected through reasonable observation the subject property.  However, it is not possible or reasonably practicable to personally inspect conditions beneath the soil and the entire interior and exterior of the improvements on the subject property.  Therefore, no representation is made as to such matters.

2.  The report, including its conclusions and any portion of such report (the "Report"), is as of the date set forth in the letter of transmittal and based upon the information, market, economic, and property conditions and projected levels of operation existing as of such date. The dollar amount of any conclusion as to value in the Report is based upon the purchasing power of the U.S. Dollar on such date.  The Report is subject to change as a result of fluctuations in any of the foregoing.  CBRE has no obligation to revise the Report to reflect any such fluctuations or other events or conditions which occur subsequent to such date.

3.  There are no known easements or encroachments impacting the site that are considered to affect the marketability or highest and best use.  This appraisal is made considering the impact on value of the following rights-of-way and encumbrances:

    | **Encumbrances or Reservations** | 1) A 60-foot wide perpetual, non-exclusive, easement, to run with the land, over, under, across and on the Access Corridor for vehicular and pedestrian ingress and egress purposes and for the installation of underground utilities. Extends 4,502 LF from Bluff Hill Drive to subject's SWC. |
    | --- | --- |
    | | 2) 100'-wide overhead powerline utility easement benefitting PacifiCorp, Utah Power & Light Co. and Dixie Escalante Rural Electric Association, Inc. - Crosses the southern portion of the subject. |
    | | 3) 50'-wide overhead powerline utility easement benefitting PacifiCorp, Utah Power & Light Co. and Dixie Escalante Rural Electric Association, Inc. - Crosses the NWC of the subject. |
    | | 4) 50'-wide city of St. George water line easement - Crosses the NWC of the subject. |

4.  CBRE has assumed that all documents, data and information furnished by or behalf of the client, property owner, or owner's representative are accurate and correct, unless otherwise expressly noted in the Report.  Such data and information include, without limitation, numerical street addresses, lot and block numbers, Assessor's Parcel Numbers, land dimensions, square footage area of the land, dimensions of the improvements, gross building areas, net rentable areas, usable areas, unit count, room count, rent schedules, income data, historical operating expenses, budgets, and related data.  Any error in any of the above could have a substantial impact on the Report.  Accordingly, if any such errors are subsequently made known to CBRE, CBRE reserves the right to amend the Report, which may include the conclusions of the Report.  The client and intended user should carefully review all assumptions, data, relevant calculations, and conclusions of the Report and should immediately notify CBRE of any questions or errors within 30 days after the date of delivery of the Report.

5.  CBRE assumes no responsibility (including any obligation to procure the same) for any documents, data or information not provided to CBRE, including without limitation a survey of the remainder parcel.

6.  The Report contains professional opinions and is expressly not intended to serve as any warranty, assurance or guarantee of any particular value of the subject property.  Other appraisers may reach different conclusions as to the value of the subject property.  Furthermore, market value is highly related to exposure time, promotion effort, terms, motivation, and conclusions surrounding the offering of the subject property.  The Report is for the sole purpose of providing the intended user with CBRE's independent professional opinion of the value of the subject property as of the date of the Report. Nothing contained in the Report shall be construed as any direct or indirect recommendation of CBRE to buy, sell, hold, or finance the subject property.

7.  No opinion is expressed on matters which may require legal expertise or specialized investigation or knowledge beyond that customarily employed by real estate appraisers.  Any user of the Report is advised to retain experts in areas that fall outside the scope of the real estate appraisal profession for such matters.

8.  CBRE assumes no responsibility for any costs or consequences arising due to the need, or the lack of need, for flood hazard insurance.  An agent for the Federal Flood Insurance Program should be contacted to determine the actual need for Flood Hazard Insurance.

9.  Acceptance or use of the Report constitutes full acceptance of these Assumptions and Limiting Conditions and any special assumptions set forth in the Report.  It is the responsibility of the user of the Report to read in full,

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

comprehend and thus become aware of all such assumptions and limiting conditions. CBRE assumes no responsibility for any situation arising out of the user's failure to become familiar with and understand the same.

10. The Report applies to the property as a whole only, and any pro ration or division of the title into fractional interests will invalidate such conclusions, unless the Report expressly assumes such pro ration or division of interests.

11. The maps, plats, sketches, graphs, photographs, and exhibits included in this Report are for illustration purposes only and shall be utilized only to assist in visualizing matters discussed in the Report. No such items shall be removed, reproduced, or used apart from the Report.

12. The Report shall not be duplicated or provided to any unintended users in whole or in part without the written consent of CBRE, which consent CBRE may withhold in its sole discretion. Exempt from this restriction is duplication for the internal use of the intended user and its attorneys, accountants, or advisors for the sole benefit of the intended user. Also exempt from this restriction is transmission of the Report pursuant to any requirement of any court, governmental authority, or regulatory agency having jurisdiction over the intended user, provided that the Report and its contents shall not be published, in whole or in part, in any public document without the written consent of CBRE, which consent CBRE may withhold in its sole discretion. Finally, the Report shall not be made available to the public or otherwise used in any offering of the property or any security, as defined by applicable law. Any unintended user who may possess the Report is advised that it shall not rely upon the Report or its conclusions and that it should rely on its own appraisers, advisors and other consultants for any decision in connection with the subject property. CBRE shall have no liability or responsibility to any such unintended user.

Based on the foregoing, the market value of the subject has been concluded as follows:

| MARKET VALUE CONCLUSIONS IN FEE SIMPLE INTEREST AS OF MAY 28, 2021 | | | |
|---|---|---|---|
| Appraisal Premise | Size (Acres) | Value Conclusion | Value Per Acre |
| Larger Parcel (Before Acquisition) | 266.42 | $19,000,000 | $71,316 |
| Remainder Parcel (After Acquisition) | 213.14 | $15,200,000 | $71,316 |
| Acquisition Parcel (Difference Between Before & After) | 53.28 | $3,800,000 | |
| Part Acquired | 53.28 | $3,800,000 | |
| Damages | | $0 | |
| Compiled by CBRE, Inc. | | | |

## Hypothetical Conditions

Per the Statement of Work, the appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

- The following appraisal disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq). The use of the above hypothetical condition may have affected the assignment results.

  *The use of the above hypothetical condition may have affected the assignment results.*

## Extraordinary Assumption

- None noted

## Jurisdictional Exception

The *Uniform Standards of Professional Appraisal Practice* (USPAP) Standards Rule 1-2(c) <u>Comment</u> states: "When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion." This is contrary to the *Uniform Appraisal Standards for Federal Land Acquisitions* (UASFLA) Section 1.2.4, which states: "Appraisers should not *link* opinions of

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

value under these Standards to a specific opinion of <u>exposure time</u>, unlike appraisal assignments for other purposes under USPAP Standards Rule 1-2(c). This REQUIRES a <u>jurisdictional exception</u> to USPAP because, as discussed in Section 4.2.1.2, the federal definition of market value already presumes that the property was exposed on the open market for a *reasonable* length of time, given the character of the property and its market." Because the U.S. Department of the Interior and specifically the U.S. Bureau of Land Management (BLM) are one of the intended users of the appraisal, it is appropriate to apply the USPAP Jurisdictional Exception Rule and disregard USPAP Standards Rule 1-2(c).

## Legal Instructions

The following legal instruction was provided to the appraiser. Applicable law must be considered, including Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

*In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

Doyle Red Cliffs NCA Acquisition- 266.42 Acres, St. George City, Washington County, UT



© 2021 CBRE, Inc.

**ADDENDA**

© 2021 CBRE, Inc.

Addendum A

# ENGAGEMENT CONTRACT

© 2021 CBRE, Inc.

VALUATION & ADVISORY SERVICES

# Proposal and Contract for Services

**CBRE**

CBRE, Inc.
169 W 2710 S Circle, Ste. 204E
St. George, UT 84790
**www.cbre.us/valuation**

**Rick Smith, MAI, AI-GRS, ASA**
Director

January 7, 2021

Mr. Eric Clarke
Washington County Attorney
**Washington County**
33 North 100 West
St. George, UT
Phone: 435.986.2605
Email: Eric.Clarke@wcattorney.com

RE:     Assignment Agreement - Doyle Red Cliffs NCA Acquisition
        Vacant Land – 266.42 Acres (Doyle Parcel) Located
        North of the City of St. George, St. George, UT 84770

Dear Mr. Clarke:

We are pleased to submit this proposal and our Terms and Conditions for this assignment.

## PROPOSAL SPECIFICATIONS

| | |
|---|---|
| **Property Description:** | The proposed acquisition consists of a part of a single irregularly shaped tract of undeveloped land in relatively undisturbed condition, containing 266.42 acres. Situated in unincorporated Washington County, Utah, north of the City of St. George and west of the Green Springs master planned community in Washington City, the property is located within the 62,000 acre Red Cliffs Desert Reserve, which was established in 1996 to protect the federally threatened Mojave desert tortoise. |
| **Appraisal Problem:** | The BLM intends to acquire a portion of the subject 266.42-acre parcel equal in value to $3,800,000. The appraisal problem is to estimate the acreage required to equal that value. The north, east, and west boundaries of the proposed acquisition will be established by the current property boundaries. The appraisal problem requires the appraiser to determine the southern boundary, by establishing an east-west line defined by the acreage of a proposed acquisition which equals a market value of $3,800,000. |
| **Premise:** | As Is – Subject to Public Law No. 104-333, § 309(f) (Nov. 12, 1996).  That statute provides in relevant part: |
| | *In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the* [acquiring party] *shall appraise, value, and offer to acquire such lands and interests <u>without regard to the presence of a species listed as threatened or endangered</u> or <u>any proposed or</u>* |

© 2021 CBRE, Inc.

*actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).* (Emphasis added).

**Rights Appraised:**   Fee simple estate, subject to reservations of record (surface rights only).

**Client:**   U.S. Department of Interior, Appraisal and Valuation Services Office (AVSO).

**Intended Use:**   The intended use of the appraisal is "as the basis for determination of fair market value in order to assure that the Government will deal fairly and equitably with each landowner."[1] It is not intended for any other use.

**Intended Users:**   The appraisal report will be used by the Appraisal and Valuation Services Office (AVSO) and the BLM, on behalf of the United States of America.

**Reliance:**   Reliance on any reports produced by CBRE under this Agreement is extended solely to parties and entities expressly acknowledged in a signed writing by CBRE as Intended Users of the respective reports, provided that any conditions to such acknowledgement required by CBRE or hereunder have been satisfied.  Parties or entities other than Intended Users who obtain a copy of the report or any portion thereof (including Client if it is not named as an Intended User), whether as a result of its direct dissemination or by any other means, may not rely upon any opinions or conclusions contained in the report or such portions thereof, and CBRE will not be responsible for any unpermitted use of the report, its conclusions or contents or have any liability in connection therewith.

**Inspection:**   The appraiser will inspect the subject property and all of the market properties used in direct comparison, unless the AVSO Review Appraiser has approved other conditions in writing.

The appraiser will certify in the report that he extended an offer to the property owner (or the owner's representative) to accompany him during the property inspection.

The appraiser will coordinate the property inspection with the property owner and the AVSO Review Appraiser. Contact information for the property owner and the AVSO Review Appraiser must be provided at the time of contract award.

**Pre-Work Meeting:**   A pre-work meeting is required, which may be in person at the time of inspection or by electronic means at the discretion of the Review Appraiser. However, the appraiser will contact the assigned AVSO Review Appraiser at any time clarification of scope of work or assignment conditions is necessary.

---

[1] BLM Manual H-2100-1 –ACQUISITION, Chapter II - Policy and Guidance, II-15.

| | |
|---|---|
| **Valuation Approaches:** | All three traditional approaches to value will be considered. |
| **Report Type:** | Comprehensive Appraisal Report – UASFLA Compliant |
| **Scope of work:** | The Scope of Work is to provide a complete appraisal in a self-contained appraisal report.  Per the SOW, a single appraisal report will be provided.  It is expected that the primary approach to value will be a Sales Comparison Approach. |
| | The BLM intends to acquire a portion of the subject 266.42-acre parcel equal in value to $3,800,000. The appraisal problem is to estimate the acreage required to equal that value. The north, east, and west boundaries of the proposed acquisition will be established by the current property boundaries. |
| | The appraisal problem requires the appraiser to determine the southern boundary, by establishing an east-west line defined by the acreage of a proposed acquisition which equals a market value of $3,800,000. |
| | Since the purchase would be a partial acquisition. The Uniform Appraisal Standards for Federal Land Acquisitions 2016 Section 4.3.4.1, applies: |
| | *Under the Federal Rule, compensation in partial acquisitions is measured by the difference in the market value of the landowner's property before and after the government's acquisition, as discussed in Section 4.6.* |
| | Therefore, the appraiser must value the entire larger parcel, define a hypothetical parcel equal in value to $3.8 million, and appraise the remainder parcel (after extracting the hypothetical parcel from the larger parcel). |
| | The hypothetical $3.8 million parcel would be established by the difference between the larger parcel and the hypothetical remainder. |
| **Appraisal Standards:** | Uniform Appraisal Standards for Federal Land Acquisitions, 6th Edition (UASFLA), Uniform Standards of Professional Appraisal Practice (USPAP – 2020-2021 Edition). |
| **Appraisal Fee:** | $17,500 |
| **Expenses:** | Fee includes all associated expenses |
| **Retainer:** | A retainer is not required for this assignment |

© 2021 CBRE, Inc.

| | |
|---|---|
| **Payment Terms:** | Final payment is due within 30 days of delivery of the initial draft report. The fee is considered earned upon delivery of the draft report. |
| **Delivery Instructions:** | An Adobe PDF file of the draft appraisal will be sent via email to Steven C. Groh, MAI / steven_groh@ios.doi.gov (the AVSO Review Appraiser. The client (AVSO) has requested 1 final signed paper copy along with a searchable, with copying enabled, digital version to the AVSO Review Appraiser. |
| **Delivery Schedule:** | |
| **Preliminary Value:** | Not Required |
| **Initial Report:** | 60 days after the Start Date (if not sooner) |
| **Start Date:** | The appraisal process will start upon receipt of your signed agreement and the property specific data. |
| **Acceptance Date:** | These specifications are subject to modification if this proposal is not accepted within 5 business days from the date of this letter. |
| **Appraiser Qualifications:** | • The appraiser holds a valid license in the State of Utah as a Certified General Appraiser. |
| | • The appraiser has completed the educational course *Uniform Appraisal Standards for Federal Land Acquisitions 8th Edition* (UASFLA – Yellow Book). |
| **Prior Appraisal Services:** | The appraiser has provided no prior appraisals of the subject parcel. |

**Market Volatility**

The outbreak of the Novel Coronavirus (COVID-19), declared by the World Health Organization as a global pandemic on the 11th March 2020, is causing heightened uncertainty in both local and global market conditions. Our valuation is based on the information available to us at the date of valuation. You acknowledge that our reports may include clauses highlighting heightened uncertainty if appropriate, and we recommend our valuation is kept under frequent review.

Both governments and companies are initiating travel restrictions, quarantine and additional safety measures in response to the COVID-19 pandemic. If, at any point, our ability to deliver the services under this LOE are restricted due to the pandemic, we will inform you within a reasonable timeframe and work with you on how to proceed. Whilst we will endeavor to meet the required timeframe for delivery, you acknowledge any Government or company-imposed restrictions due to the virus may impede our ability to meet the timeframe and/or deliverables of this engagement, and delays may follow. Any delays or inability to deliver on this basis would not constitute a failure to meet the terms of this engagement.

When executed and delivered by all parties, this letter, together with the Terms and Conditions and the Specific Property Data Request attached hereto and incorporated herein, will serve as the Agreement for appraisal services by and between CBRE and Client. Each person signing below represents that it is authorized to enter into this Agreement and to bind the respective parties hereto.

© 2021 CBRE, Inc.

We appreciate this opportunity to be of service to you on this assignment. If you have additional questions, please contact us.

Sincerely,

**CBRE, Inc.**
**Valuation & Advisory Services**

Rick Smith, MAI, AI-GRS, ASA
Director, As Agent for CBRE, Inc.
UT Certified General Appraiser #5450513-CG00
T  435.668.0056 | rick.smith1@cbre.com

# AGREED AND ACCEPTED

**FOR WASHINGTON COUNTY:**

_____          JAN. 20 . 2021
Signature                                   Date

_____          _____
Name                                        Title

_____          _____
Phone Number                            E-Mail Address

© 2021 CBRE, Inc.

# TERMS AND CONDITIONS

1. The Terms and Conditions herein are part of an agreement for appraisal services (the "Agreement" ) between CBRE, Inc. (the "Appraiser") and the client signing this Agreement, and for whom the appraisal services will be performed (the "Client"), and shall be deemed a part of such Agreement as though set forth in full therein. The Agreement shall be governed by the laws of the state where the appraisal office is located for the Appraiser executing this Agreement.

2. Client shall be responsible for the payment of all fees stipulated in the Agreement. Payment of the appraisal fee and preparation of an appraisal report (the "Appraisal Report, or the "report") are not contingent upon any predetermined value or on an action or event resulting from the analyses, opinions, conclusions, or use of the Appraisal Report. Final payment is due as provided in the Proposal Specifications Section of this Agreement. If a draft report is requested, the fee is considered earned upon delivery of the draft report. It is understood that the Client may cancel this assignment in writing at any time prior to delivery of the completed report. In such event, the Client is obligated only for the prorated share of the fee based upon the work completed and expenses incurred (including travel expenses to and from the job site), with a minimum charge of $500. Additional copies of the Appraisal Reports are available at a cost of $250 per original color copy and $100 per photocopy (black and white), plus shipping fees of $30 per report.

3. If Appraiser is subpoenaed or ordered to give testimony, produce documents or information, or otherwise required or requested by Client or a third party to participate in meetings, phone calls, conferences, litigation or other legal proceedings (including preparation for such proceedings) because of, connected with or in any way pertaining to this engagement, the Appraisal Report, the Appraiser's expertise, or the Property, Client shall pay Appraiser's additional costs and expenses, including but not limited to Appraiser's attorneys' fees, and additional time incurred by Appraiser based on Appraiser's then-prevailing hourly rates and related fees. Such charges include and pertain to, but are not limited to, time spent in preparing for and providing court room testimony, depositions, travel time, mileage and related travel expenses, waiting time, document review and production, and preparation time (excluding preparation of the Appraisal Report), meeting participation, and Appraiser's other related commitment of time and expertise. Hourly charges and other fees for such participation will be provided upon request. In the event Client requests additional appraisal services beyond the scope and purpose stated in the Agreement, Client agrees to pay additional fees for such services and to reimburse related expenses, whether or not the completed report has been delivered to Client at the time of such request.

4. Appraiser shall have the right to terminate this Agreement at any time for cause effective immediately upon written notice to Client on the occurrence of fraud or the willful misconduct of Client, its employees or agents, or without cause upon 30 days written notice.

5. In the event Client fails to make payments when due then, from the date due until paid, the amount due and payable shall bear interest at the maximum rate permitted in the state where the office is located for the Appraiser executing the Agreement. In the event either party institutes legal action against the other to enforce its rights under this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and expenses. Each party waives the right to a trial by jury in any action arising under this Agreement.

6. Appraiser assumes there are no major or significant items or issues affecting the Property that would require the expertise of a professional building contractor, engineer, or environmental consultant for Appraiser to prepare a valid report. Client acknowledges that such additional expertise is not covered in the Appraisal fee and agrees that, if such additional expertise is required, it shall be provided by others at the discretion and direction of the Client, and solely at Client's additional cost and expense.

7. In the event of any dispute between Client and Appraiser relating to this Agreement, or Appraiser's or Client's performance hereunder, Appraiser and Client agree that such dispute shall be resolved by means of binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, and judgment upon the award rendered by an arbitrator may be entered in any court of competent jurisdiction. Depositions may be taken and other discovery obtained during such arbitration proceedings to the same extent as authorized in civil judicial proceedings in the state where the office of the Appraiser executing this Agreement is located. The arbitrator shall be limited to awarding compensatory damages and shall have no authority to award punitive, exemplary or similar damages. The prevailing party in the arbitration proceeding shall be entitled to recover its expenses from the losing party, including costs of the arbitration proceeding, and reasonable attorney's fees. Client acknowledges that Appraiser is being retained hereunder as an independent contractor to perform the services described herein and nothing in this Agreement shall be deemed to create any other relationship between

Revised July 1, 2016

© 2021 CBRE, Inc.

Client and Appraiser.  This engagement shall be deemed concluded and the services hereunder completed upon delivery to Client of the Appraisal Report discussed herein.

8.  All statements of fact in the report which are used as the basis of the Appraiser's analyses, opinions, and conclusions will be true and correct to Appraiser's actual knowledge and belief.  Appraiser does not make any representation or warranty, express or implied, as to the accuracy or completeness of the information or the condition of the Property furnished to Appraiser by Client or others.  TO THE FULLEST EXTENT PERMITTED BY LAW, APPRAISER DISCLAIMS ANY GUARANTEE OR WARRANTY AS TO THE OPINIONS AND CONCLUSIONS PRESENTED ORALLY OR IN ANY APPRAISAL REPORT, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE EVEN IF KNOWN TO APPRAISER.  Furthermore, the conclusions and any permitted reliance on and use of the Appraisal Report shall be subject to the assumptions, limitations, and qualifying statements contained in the report.

9.  Appraiser shall have no responsibility for legal matters, including zoning, or questions of survey or title, soil or subsoil conditions, engineering, or other similar technical matters.  The report will not constitute a survey of the Property analyzed.

10.  Client shall provide Appraiser with such materials with respect to the assignment as are requested by Appraiser and in the possession or under the control of Client.  Client shall provide Appraiser with sufficient access to the Property to be analyzed, and hereby grants permission for entry unless discussed in advance to the contrary.

11.  The data gathered in the course of the assignment (except data furnished by Client) and the report prepared pursuant to the Agreement are, and will remain, the property of Appraiser.  With respect to data provided by Client, Appraiser shall not violate the confidential nature of the Appraiser-Client relationship by improperly disclosing any proprietary information furnished to Appraiser.  Notwithstanding the foregoing, Appraiser is authorized by Client to disclose all or any portion of the report and related data as may be required by statute, government regulation, legal process, or judicial decree, including to appropriate representatives of the Appraisal Institute if such disclosure is required to enable Appraiser to comply with the Bylaws and Regulations of such Institute as now or hereafter in effect.

12.  Unless specifically noted, in preparing the Appraisal Report the Appraiser  will not be considering the possible existence of asbestos, PCB transformers, or other toxic, hazardous, or contaminated substances and/or underground storage tanks (collectively, "Hazardous Material) on or affecting the Property, or the cost of encapsulation or removal thereof.  Further, Client represents that there is no major or significant deferred maintenance of the Property that would require the expertise of a professional cost estimator or contractor.  If such repairs are needed, the estimates are to be prepared by others, at Client's discretion and direction, and are not covered as part of the Appraisal fee.

13.  In the event Client intends to use the Appraisal Report in connection with a tax matter, Client acknowledges that Appraiser provides no warranty, representation or prediction as to the outcome of such tax matter. Client understands and acknowledges that any relevant taxing authority (whether the Internal Revenue Service or any other federal, state or local taxing authority) may disagree with or reject the Appraisal Report or otherwise disagree with Client's tax position, and further understands and acknowledges that the taxing authority may seek to collect additional taxes, interest, penalties or fees from Client beyond what may be suggested by the Appraisal Report. Client agrees that Appraiser shall have no responsibility or liability to Client or any other party for any such taxes, interest, penalties or fees and that Client will not seek damages or other compensation from Appraiser relating to any such taxes, interest, penalties or fees imposed on Client, or for any attorneys' fees, costs or other expenses relating to Client's tax matters.

14.  Appraiser shall have no liability with respect to any loss, damage, claim or expense incurred by or asserted against Client arising out of, based upon or resulting from Client's failure to provide accurate or complete information or documentation pertaining to an assignment ordered under or in connection with this Agreement, including Client's failure, or the failure of any of Client's agents, to provide a complete copy of the Appraisal Report to any third party.

15.  LIMITATION OF LIABILITY. EXCEPT TO THE EXTENT ARISING FROM SECTION 16 BELOW, OR SECTION 17 IF APPLICABLE, IN NO EVENT SHALL EITHER PARTY OR ANY OF ITS AFFILIATE, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, OR CONTRACTORS BE LIABLE TO THE OTHER, WHETHER BASED IN CONTRACT, WARRANTY, INDEMNITY, NEGLIGENCE, STRICT LIABILITY OR OTHER TORT OR OTHERWISE, FOR ANY SPECIAL, CONSEQUENTIAL, PUNITIVE, INCIDENTAL OR INDIRECT DAMAGES, AND AGGREGATE DAMAGES IN CONNECTION WITH THIS AGREEMENT FOR EITHER PARTY (EXCLUDING THE OBLIGATION TO PAY THE FEES REQUIRED HEREUNDER) SHALL NOT EXCEED THE GREATER OF THE TOTAL FEES PAYABLE TO APPRAISER UNDER THIS AGREEMENT OR TEN THOUSAND DOLLARS ($10,000).  THIS LIABILITY LIMITATION SHALL NOT

© 2021 CBRE, Inc.

APPLY IN THE EVENT OF A FINAL FINDING BY AN ARBITRATOR OR A COURT OF COMPETENT JURISDICTION THAT SUCH LIABILITY IS THE RESULT OF A PARTY'S FRAUD OR WILLFUL MISCONDUCT.

16. Client shall not disseminate, distribute, make available or otherwise provide any Appraisal Report prepared hereunder to any third party (including without limitation, incorporating or referencing the Appraisal Report , in whole or in part, in any offering or other material intended for review by other parties) except to (i) any third party expressly acknowledged in a signed writing by Appraiser as an "Intended User" of the Appraisal Report provided that either Appraiser has received an acceptable release from such third party with respect to such Appraisal Report or Client provides acceptable indemnity protections to Appraiser against any claims resulting from the distribution of the Appraisal Report to such third party, (ii) any third party service provider (including rating agencies and auditors) using the Appraisal Report in the course of providing services for the sole benefit of an Intended User, or (iii) as required by statute, government regulation, legal process, or judicial decree. In the event Appraiser consents, in writing, to Client incorporating or referencing the Appraisal Report in any offering or other materials intended for review by other parties, Client shall not distribute, file, or otherwise make such materials available to any such parties unless and until Client has provided Appraiser with complete copies of such materials and Appraiser has approved all such materials in writing.  Client shall not modify any such materials once approved by Appraiser.  In the absence of satisfying the conditions of this paragraph with respect to a party who is not designated as an Intended User, in no event shall the receipt of an Appraisal Report by such party extend any right to the party to use and rely on such report, and Appraiser shall have no liability for such unauthorized use and reliance on any Appraisal Report.  In the event Client breaches the provisions of this paragraph, Client shall indemnify, defend and hold Appraiser, and its affiliates and their officers, directors, employees, contractors, agents and other representatives (Appraiser and each of the foregoing an "Indemnified Party" and collectively the "Indemnified Parties"), fully harmless from and against all losses, liabilities, damages and expenses (collectively, "Damages") claimed against, sustained or incurred by any Indemnified Party arising out of or in connection with such breach, regardless of any negligence on the part of any Indemnified Party in preparing the Appraisal Report.

17. In the event an Intended User incorporates or references the Appraisal Report, in whole or in part, in any offering or other material intended for review by other parties, Client shall indemnify, defend and hold each of the Indemnified Parties harmless from and against any Damages in connection with (i) any transaction contemplated by this Agreement or in connection with the appraisal or the engagement of or performance of services by any Indemnified Party hereunder, (ii) any actual or alleged untrue statement of a material fact, or the actual or alleged failure to state a material fact necessary to make a statement not misleading in light of the circumstances under which it was made with respect to all information furnished to any Indemnified Party or made available to a prospective party to a transaction, or (iii) an actual or alleged violation of applicable law by an Intended User (including, without limitation, securities laws) or the negligent or intentional acts or omissions of an Intended User (including the failure to perform any duty imposed by law); and will reimburse each Indemnified Party for all reasonable fees and expenses (including fees and expenses of counsel) (collectively, "Expenses") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, "Proceedings") arising therefrom, and regardless of whether such Indemnified Party is a formal party to such Proceeding.  Client agrees not to enter into any waiver, release or settlement of any Proceeding (whether or not any Indemnified Party is a formal party to such Proceeding) without the prior written consent of Appraiser (which consent will not be unreasonably withheld or delayed) unless such waiver, release or settlement includes an unconditional release of each Indemnified Party from all liability arising out of such Proceeding.

18. Time Period for Legal Action.  Unless the time period is shorter under applicable law, except in connection with paragraphs 16 and 17 above, Appraiser and Client agree that any legal action or lawsuit by one party against the other party or its affiliates, officers, directors, employees, contractors, agents, or other representatives, whether based in contract, warranty, indemnity, negligence, strict liability or other tort or otherwise, relating to (a) this Agreement or the Appraisal Report, (b) any services or appraisals under this Agreement or (c) any acts or conduct relating to such services or appraisals, shall be filed within two (2) years from the date of delivery to Client of the Appraisal Report to which the claims or causes of action in the legal action or lawsuit relate.  The time period stated in this section shall not be extended by any incapacity of a party or any delay in the discovery or accrual of the underlying claims, causes of action or damages.

© 2021 CBRE, Inc.

VALUATION & ADVISORY SERVICES

# Proposal and Contract for Services

# SPECIFIC PROPERTY DATA REQUEST

In order to complete this assignment under the terms outlined, CBRE, Inc., Valuation & Advisory Services, will require the following specific information for the property:

1. At this time, no additional information necessary to complete the appraisal has been identified.

If any of the requested data and information is not available, CBRE, Inc., reserves the right to extend the delivery date by the amount of time it takes to receive the requested information or make other arrangements. Please have the requested information delivered to the following:

Rick Smith, MAI, AI-GRS, ASA
Director
rick.smith1@cbre.com
CBRE, Inc.
Valuation & Advisory Services
169 W 2710 S Circle, Ste. 204E
St. George, UT 84790
(435) 668-0056

www.cbre.us/valuation



© 2021 CBRE, Inc.

# UNITED STATES DEPARTMENT OF THE INTERIOR
## OFFICE OF THE SECRETARY
### Appraisal and Valuation Services Office
#### Lakewood, CO  80225

**Appraisal Engagement Letter (non-Federal Payment)**
**Doyle Red Cliffs NCA Acquisition**
**AVIS Case No. L200107**

January 27, 2021

Dear Mr. Smith,

This agreement authorizes you to complete the appraisal services described in the attached Statement of Work on behalf of the Appraisal and Valuation Services Office (AVSO) as your sole client.

Although Washington County, Utah will be responsible for all appraisal fees and expenses associated with this assignment, AVSO remains your only client. *As such, you may not provide assignment results to any other party (including Washington County, Utah), unless and until directed to do so in writing by the AVSO review appraiser.* Violation of this covenant may disqualify you from future AVSO assignments.

The attached SOW enumerates the conditions of the assignment, which include compliance with the *Uniform Standards of Professional Appraisal Practice 2020-2021 Edition* (USPAP),the *Uniform Appraisal Standards for Federal Land Acquisitions 6*[th] *Edition* (UASFLA), and any specific instructions and/or assignment conditions set forth therein.

*You must read the Statement of Work carefully and direct any questions to the undersigned review appraiser prior to accepting this assignment.*

Although these requirements are self-explanatory, AVSO policy requires a pre-work meeting between the appraiser and the review appraiser, to discuss appraisal matters. The agency representative, the Non-Federal party, and the property owner may attend the pre-work meeting, as determined by the review appraiser.

Although the pre-work meeting between appraiser and reviewer may take place at the property inspection, in the COVID era it is unlikely that the reviewer will be able to travel to attend the inspection; however, the appraiser *is required* to invite the property owner to attend the inspection, and the appraiser also should invite the agency and the Non-Federal party.

*Neither the client agency nor the Non-Federal party may interfere with the appraisal process or attempt to influence assignment results in any way. If the appraiser encounters any such conduct, the appraiser must immediately report the interference to the AVSO review appraiser.*

© 2021 CBRE, Inc.

Rick Smith, MAI
January 27, 2021
Page 2

The appraisal fees, expenses, and timing of delivery of the appraisal to the AVSO review
appraiser will be negotiated between you and the non-Federal party. Once you have reached an
agreement, you must provide the AVSO review appraiser a copy of the fully executed
agreement.

When you have completed the appraisal, you will submit it to the review appraiser and no one
else. The review appraiser will review the appraisal and provide comments and/or suggested
edits, if necessary.

Once a final report is in hand, the Review Appraiser will prepare an appraisal review report,
rendering one of the following conclusions:

- *recommended* (as the basis for the establishment of the amount believed to be just
  compensation),

- *accepted* (meets all requirements, but not selected as recommended or approved), or

- *not accepted*.

The review appraiser will then provide the appraisal and the appraisal review to the agency,
which is *our* client. ***AVSO will not discuss the appraisal or the appraisal review with any party
other than our client agency.***

**Payment**

The rendering of a *recommended* or *accepted* determination by the review appraiser, along with
the receipt of the deliverables specified in the attached Statement of Work, shall constitute
satisfactory performance of any fee agreement between the non-Federal party and the appraiser.

The review appraiser shall notify the appraiser and the undersigned non-Federal party when
those conditions have been met, at which point the appraiser should submit and invoice for
payment to the following:

Contact:      Eric Clarke, Washington County Attorney
Office:       435.986.2605
Address:      33 North 100 West
              St George, UT 84770
E-mail:       Eric.Clarke@wcattorney.com

© 2021 CBRE, Inc.

Rick Smith, MAI
January 27, 2021
Page 3

If you have any questions, please contact me as indicated below.

Thank you for working with us on this assignment.

Sincerely,

Steven C. Groh, MAI - Review Appraiser
DOI – Office of Valuation Services (AVSO)
One Denver Federal Center, Building 46, Suite 102
PO Box 25247
Denver, CO  80225
Office:          303-969-5367
iPhone:        303-229-5060
Facsimile:     303-969-5503
Email:          steven_groh@ios.doi.gov

## APPRAISER ACCEPTANCE

Appraiser hereby understands, accepts, and agrees to being engaged by the Client (AVSO) under the terms of this agreement and the attached Statement of Work, which are conditions of this assignment. *Please sign and return to the above named review appraiser.*

  Rick Smith
_____
Appraiser

  Director
_____
Title

  CBRE, Inc.
_____
Company

_____
Signature   as agent for CBRE, Inc.

  January 27, 2021
_____
Date

Attachment: *Doyle Red Cliffs NCA Statement of Work*

© 2021 CBRE, Inc.

Addendum B

# STATEMENT OF WORK

© 2021 CBRE, Inc.

# STATEMENT OF WORK (SOW)
# DOI, APPRAISAL AND VALUATION SERVICES OFFICE – AVSO

### *NON-FEDERAL PAYMENT BY*
### *WASHINGTON COUNTY, UTAH*

*Note: Any contract awarded in connection with this SOW shall constitute an agreement between the contractor selected and Washington County, which shall bear the sole obligation of funding and disbursing payment for any and all services provided by such contractor in connection with this SOW.*

### SECTION 1 – SUBJECT IDENTIFICATION & GENERAL INFORMATION

| | |
|---|---|
| **Case Name:** | IVIS L200107 - Doyle Red Cliffs NCA Acquisition |
| **Agency File No.:** | UTU- Doyle 95204 |
| **Location:** | St. George, Utah - located north of the city of St. George in an area east of the Middleton Black Ridge and T-Bone Mesa, and west of the Green Springs master planned development. See location map on page 2. |
| **Parcel ID:** | 6600-NP-1, Washington County Assessor |
| **Zoning:** | OST-20, Washington County |
| **Acreage:** | 266.42 Acres |
| **Property Type:** | Vacant land. |
| **Case Type:** | Acquisition. |
| **Client** | U.S. Department of Interior, Appraisal and Valuation Services Office (AVSO) |
| **Intended Users:** | The appraisal report will be used by the Appraisal and Valuation Services Office (AVSO) and the BLM, on behalf of the United States of America. |
| **Intended Use:** | The intended use of the appraisal is "as the basis for determination of fair market value in order to assure that the Government will deal fairly and equitably with each landowner."[1] It is not intended for any other use. |

---

[1] BLM Manual H-2100-1 –ACQUISITION, Chapter II - Policy and Guidance, II-15.

© 2021 CBRE, Inc.

BLM Utah                          Doyle Red Cliffs NCA Acquisition                    IVIS# L200107
St. George Field Office                        (UTU-95204)                      December 3, 2020



© 2021 CBRE, Inc.

BLM Utah                 Doyle Red Cliffs NCA Acquisition              IVIS# L200107
St. George Field Office              (UTU-95204)              December 3, 2020



**Appraisal Problem**

The BLM intends to acquire a portion of the subject 266.42-acre parcel (outlined in red) equal in value to $3,800,000. The appraisal problem is to estimate the acreage required to equal that value.

The north, east, and west boundaries of the proposed acquisition will be established by the current property boundaries (in red).

The appraisal problem requires the appraiser to determine the southern boundary, by establishing an east-west line defined by the acreage of a proposed acquisition which equals a market value of $3,800,000.

Since the purchase would be a partial acquisition. The *Uniform Appraisal Standards for Federal Land Acquisitions 2016* Section 4.3.4.1, applies:

© 2021 CBRE, Inc.

*Under the Federal Rule, compensation in partial acquisitions is measured by the difference in the market value of the landowner's property before and after the government's acquisition, as discussed in Section 4.6.*

Therefore, the appraiser must value the entire larger parcel, define a hypothetical parcel equal in value to $3.8 million, and appraise the remainder parcel (after extracting the hypothetical parcel from the larger parcel).

The hypothetical $3.8 million parcel would be established by the difference between the larger parcel and the hypothetical remainder.

**Property Description**

The proposed acquisition consists of a part of a single irregularly shaped tract undeveloped land in relatively undisturbed condition, containing 266.42 acres. Situated in unincorporated Washington County, Utah, immediately north of the City of St. George and west of the Green Springs master planned community, the property is located within the 62,000 acre Red Cliffs Desert Reserve, which was established in 1996 to protect the federally threatened Mojave desert tortoise.

The Red Cliffs Desert Reserve is administered by Washington County, in partnership with the Bureau of Land Management (BLM), United States Fish and Wildlife Service (FWS), Utah Department of Natural Resources (DNR), and State of Utah School and Institutional Trust Lands Administration (SITLA).

According to the administrators, the Red Cliffs Desert Reserve is "at the merging of three great ecosystems, the Mojave Desert, the Great Basin, and the Colorado Plateau, the Reserve is biologically rich with a unique array of animals and plants. The Reserve contains the most northern populations of the desert tortoise, Gila monster, sidewinder rattlesnake, and chuckwalla – reptiles typically associated with hotter and more southerly deserts, like the Mojave."[1]

The adjacent subdivisions in the Green Springs community include Last Sun, Links, Northbridge, Northbridge Estates, Monteverde, Silverstone, La Jolla Hills, Laguna, Green Springs Cove Estates, Las Entradas, Lion's Head, Hillton Estates, and Westgate Hills.

---

[1] *http://www.redcliffsdesertreserve.com/*

© 2021 CBRE, Inc.

BLM Utah                   Doyle Red Cliffs NCA Acquisition                   IVIS# L200107
St. George Field Office                (UTU-95204)                   December 3, 2020

**Legal Description**

The subject legal description provided by Southern Utah Title in SUTC Commitment No.
213147 dated August 7, 2020 is as follows:

> *EXHIBIT A*
>
> *Legal Description*
>
> *BEGINNING AT THE NORTH QUARTER (1/4) CORNER OF SECTION 8, TOWNSHIP 42 SOUTH, RANGE 15 WEST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE S 88°37'52" E ALONG THE NORTH LINE OF SAID SECTION 2694.40 FEET TO THE NORTHEAST CORNER OF SAID SECTION; THENCE S 1°19'07" W ALONG THE EAST LINE OF SAID SECTION 1989.90 FEET; THENCE N 88°43'56" W 824.18 FEET; THENCE S 1°20'06" W 665.27 FEET TO A POINT ON THE CENTER SECTION LINE OF SAID SECTION; THENCE S 1°21'42" W 2661.38 FEET TO A POINT ON THE SOUTH LINE OF SECTION SAID SECTION; THENCE N 88°49'37" W ALONG THE SOUTH LINE OF SAID SECTION 862.07 FEET; THENCE S 1°15'45" W 333.21 FEET; THENCE N 88°51'28" W 1012.04 FEET TO THE CENTER OF SECTION 17; THENCE N 1°15'14" E 333.75 FEET TO THE SOUTH QUARTER (1/4) CORNER OF SAID SECTION; THENCE N 1°23'04" E ALONG THE CENTER SECTION LINE OF SAID SECTION 2662.73 FEET TO THE COMMON CORNER OF FRACTIONAL LOTS 6, 7, 10, AND 11; THENCE N 1°23'04" E ALONG SAID CENTER SECTION LINE 2661.69 FEET TO THE POINT OF BEGINNING.*
>
> *LESS AND EXCEPTING THEREFROM the following described property as conveyed to the United States of America by Warranty Deed recorded as Doc. No. 20160036753 , Official Washington County Records, more particularly described as follows:*
>
> *A parcel of land situated in Government Lot 2 of Section 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, being more particularly described as follows:*
>
> *BEGINNING at the 1/4 Section corner of Sections 8 and 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, marked with a stone as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, identical with South Quarter (1/4) corner of Section 8, as described in Document No. 20150002700;*
>
> *THENCE, South 88°49'37" East, on the line between Sections 8 and 17, a distance of 1029.84 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the POINT OF BEGINNING as described in Document No. 20060046423, filed October 6, 2006, in the Official Records of Washington County, Utah.*

© 2021 CBRE, Inc.

*THENCE, South 1°10'23" West, a distance of 380.50 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the Southwest corner of the portion of Lot 2 described in Document No. 20060046423, and at intersection with the North boundary of the parcel described in Document No. 840052, filed September 11, 2003, in the Official Records of Washington County, Utah.*

*THENCE, North 88°57'01" West, a distance of 1030.38 feet, along a line, identical with the North boundary of the parcel described in Document No. 840052, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, at intersection with the North and South centerline of Section 17;*

*THENCE, North 1°15'14" East, along North and South centerline of Section 17, a distance of 382.72 feet, to the POINT OF BEGINNING.*

## Property Interest

*Fee Simple* interest subject to reservations and exceptions of record (surface rights only).

## Water Rights

None noted.

## Mineral Rights

The BLM reports the following in the AVIS Request Worksheet:

> *There have not been any mineral reports completed for this private parcel. The minerals are not owned by the current landowner and therefore will not be transferred with the land. The parcel is within the Red Cliff's NCA which will not allow for mining in order to protect the natural resources of the area.*

The appraiser must confirm the veracity of such statement. A Due Diligence Mineral Preview report prepared by Maggie Silvertooth, Geologist (DME) is included in the documents attached to this solicitation as *L200107 Mineral Preview.pdf*, the conclusion of which is as follows:

> *As of the date of this report, there is no evidence to support the existence of mineral resources with development potential on the subject property. Therefore, a mineral commodity valuation is unnecessary.*

## Timber

None noted.

© 2021 CBRE, Inc.

## Title

Exceptions to clear title are enumerated in Schedule "B" of the title commitment issued by Southern Utah Title Commitment No. 213147 dated August 7, 2020, attached to the solicitation as *SUTC Commitment No. 213147.pdf*, which includes hyperlinks to supporting documents for the exceptions to title.

## Personal Property

None.

## Property Access - Physical & Legal

The BLM reports the following in the AVIS Request Worksheet:

> *The nearest public road is Cottonwood Road. Because this property is within the Red Cliff's NCA and the Red Cliff Desert Reserve, access off the county road is prohibited except for administrative uses. Access to the parcel is via walking the power line maintenance road or the water line road. There is a trailhead that starts at the Middleton Water tank at the end of E. 1200 N. It is also possible to park near the Pacificorp substation along Cottonwood Road and walk easterly to the property.*

Notwithstanding the foregoing, the appraiser must conduct a thorough investigation into the legal and physical property access, taking into consideration the applicable hypothetical condition.

## Tenancies

None noted.

## Owner Contact Information

Contact information to be provided by Washington County attorney.

## Larger Parcel

The appraiser must develop a well-supported larger parcel conclusion(s) in accordance with *UASFLA 6th Edition*, Sections 1.2.7.3.1, 1.4.6, and 2.3.3.1.2.

## Provided Subject Property Exhibits

The following documents will be provided to the appraiser.

1. *Account 0179013.pdf*
2. *Washco Map_Doyle.pdf*
3. *Record of Survey Plat 20130926.pdf*
4. *L200107 Mineral Preview.pdf*
5. *SUTC Commitment No. 213147.pdf*
6. *Doyle Red Cliffs NCA Title Documents.pdf*
7. *Red Cliffs NCA Parcel Map.pdf*

© 2021 CBRE, Inc.

<u>**SECTION 2 – APPRAISAL REQUIREMENTS & INSTRUCTIONS**</u>

**Appraisal Standards**

1.    *Uniform Standards of Professional Appraisal Practice 2020-2021 (USPAP)*

2.    *Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition (UASFLA)*

**Market Value**

*Market value is the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would have sold on the effective date of value, after a reasonable exposure time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property. [Interagency Land Acquisition Conference, Uniform Appraisal Standards for Federal Land Acquisitions, 6th ed., Section 1.2.4, p 10, The Appraisal Foundation, 2017].*

**Date of Value**

The date of value must be the latter of:

a.    *The date of the last property inspection, or*

b.    *The date upon which the appraiser has concluded his market research and analysis.*

**Extraordinary Assumptions (EA's)**

None.  If the appraiser determines that an extraordinary assumption is necessary, he/she must contact the AVSO Review Appraiser for prior written approval.

**Hypothetical Conditions (HC's)**

The appraisal must adopt the following hypothetical condition, to comply with Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996):

> *The following appraisal  disregards the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

**Jurisdictional Exceptions (JE's)**

Section 1.2.4 of *UASFLA 6th Edition* provides that the appraiser must not link an opinion of market value for federal acquisition purposes to a specific exposure time, which contravenes *USPAP Standards Rule 1-2(c)*. Therefore, the appraiser should invoke USPAP's Jurisdictional Exception Rule to comply with 49 C.F.R, Part 24.103 and the UASFLA 6th Edition.

Any other jurisdictional exceptions require approval from the AVSO Review Appraiser.

**Limiting Conditions**

© 2021 CBRE, Inc.

Any assumptions and limiting conditions that are necessary to the background of the appraisal must be stated. Any agency or special legal instructions provided to the appraiser must be referenced and a copy of such instructions must be included in the addenda of the appraisal report. The appraiser must avoid including "boilerplate" assumptions and limiting conditions.

## Placement in Report

In accordance with Standards Rule 2-2(a)(xi), the appraiser must clearly identify all Extraordinary Assumptions, Hypothetical Conditions, and Jurisdictional Exceptions, and state that their use might have affected the assignment results, wherever the final value conclusion is stated, including the Letter of Transmittal and the Summary of Salient Facts. Unauthorized hypothetical conditions, assumptions, or limiting conditions may result in disapproval of the appraisal report.

## Property Inspection

The appraiser must inspect the subject property and all of the market properties used in direct comparison, unless the AVSO Review Appraiser has approved other conditions in writing.

For appraisals with an intended use of acquisition or exchange, the appraiser must certify in the report that he/she extended an offer to the property owner (or the owner's representative) to accompany him/her during the property inspection. [Uniform Relocation Assistance & Real Property Acquisition Policies Act of 1970 (PL 91-646) as amended and the Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition (Section 1.2.6.4, page 12)].

The appraiser must coordinate the property inspection with the property owner and the AVSO Review Appraiser. Contact information for the property owner and the AVSO Review Appraiser must be provided at the time of contract award.

## Pre-Work Meeting

A pre-work meeting is required, which may be in person at the time of inspection or by electronic means at the discretion of the Review Appraiser. However, the appraiser should contact the assigned AVSO Review Appraiser *at any time* clarification of scope of work or assignment conditions is necessary.

## Controversies/Issues

None - Should the appraiser identify controversies or issues during the course of assignment, he/she must immediately notify the AVSO Review Appraiser.

## Legal Instructions

The foregoing hypothetical condition is necessary to comply with applicable law, Pub. L. No. 104-333, § 309(f) (Nov. 12, 1996), which states the following:

*In acquiring any lands and any interests in lands in Washington County, Utah, by purchase, exchange, donation or other transfers of interest, the Secretary of the Interior shall appraise, value, and offer to acquire such lands and interests without regard to the presence of a species listed as threatened or endangered or any proposed or actual designation of such property as critical habitat for a species listed as threatened or endangered pursuant to the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq).*

© 2021 CBRE, Inc.

BLM Utah                Doyle Red Cliffs NCA Acquisition                IVIS# L200107
St. George Field Office            (UTU-95204)                December 3, 2020

**Special Appraisal Instructions**

1. The appraiser must deliver an appraisal report which complies with both *USPAP 2020-2021* and *UASFLA 6th Edition*.

2. Although, the application of well-supported *quantitative* adjustments is the preferred technique, *qualitative* adjustments may be used where appropriate. The application of *qualitative* adjustments ***must*** be supported by clear, appropriate and credible analysis based on documented market research.

3. The appraiser may not communicate assignment results to any party except AVSO, until authorized to do so in writing by AVSO.

4. If the appraiser discovers material facts which differ from those provided by AVSO or encounters circumstances which prevent the appraiser from developing an unbiased appraisal, the AVSO Review Appraiser ***must*** be contacted immediately.

**General Appraisal Requirements & Instructions**

1. The appraiser must hold a valid license as a Certified General Appraiser for the jurisdiction in which the subject property is located. Valid credentials include those obtained directly from the jurisdiction, those issued under a reciprocity agreement, and/or those characterized as "temporary" under the jurisdiction's licensing and certification statutes.

2. The appraiser must have completed the education or taken the steps necessary to conduct an appraisal in full compliance with the *Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition*. UASFLA (aka the "Yellow Book").

3. The AVSO Statement of Work (SOW), and other assignment instructions must be included within the Addenda to the appraisal report.

4. The appraisal must conform to the sequence and content outlined in *Appendix C* of *UASFLA 6th Edition*.

5. The appraisal report addenda must include a completed *Appraisal Report Documentation Checklist* found in *Appendix A* of *UASFLA 6th Edition*.

6. The appraiser must appraise the subject property in its "As Is" condition, unless authorized in writing by the AVSO Review Appraiser to do otherwise.

7. The appraisal ***must*** include color photographs from a terrestrial point of view of all properties relied upon as comparable sales, unless granted a waiver by the AVSO Review Appraiser in writing to use aerial photographs, in which case the appraiser should cite the source and date of the aerial photographs..

8. All comparable sales used ***must*** be confirmed by the buyer, seller, broker, or other person having knowledge of the price, terms, and conditions of sale.[1] Documentation of each comparable sale ***must*** include the name of the buyer and seller, date of sale, legal description, type of sale instrument, document recording information, price, terms of sale, location, zoning, present use, intended use, highest and best use, and a brief physical description of the property. The appraisal ***must*** include contact information for the party or parties relied upon

---

[1] *Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition*, Section 1.5.2.2, p 26.

© 2021 CBRE, Inc.

to verify each sale (i.e. telephone number, email, etc.), along with maps clearly showing the location of the subject relative to the comparable property.

9.  The appraisal report will be reviewed for compliance with the *Uniform Standards of Professional Appraisal Practice (USPAP) 2018-2019*, the *Uniform Appraisal Standards for Federal Land Acquisitions 6th Edition (UASFLA)*, and the terms of this Statement of Work. Any inadequacies will require explanation, clarification, and/or modification, in order to produce a compliant appraisal report. If such revisions are inadequate, the review appraiser may provide subsequent review comments, allowing the contract appraiser to cure any deficiencies.

10. The appraiser must consider confidential the appraisal report and all DOI internal documents furnished to the appraiser. Refer all requests for information concerning the appraisal to the AVSO Review Appraiser.

11. AVSO will not normally accept custody of confidential information. Should appraiser find it necessary to rely on confidential information, he/she must contact the AVSO Review Appraiser for instructions. The Review Appraiser must view the information and provide further instruction to the appraiser regarding handling and storage of the confidential information.

12. While the public is not an intended user of the appraisal report, the Freedom of Information Act (FOIA) and Agency policy may result in the release of all or part of the appraisal report to others.

13. If the appraiser has performed any services regarding the subject property, he/she must so disclose in the bid proposal.

14. Plagiarism is unacceptable. At a minimum, the use of content without proper attribution will be considered misleading. The egregious commission of plagiarism will be considered fraudulent. In either case, plagiarism represents a violation of the Ethics Rule of the Uniform Standards of Professional Appraisal Practice and may result in disciplinary referral.

© 2021 CBRE, Inc.

BLM Utah                    Doyle Red Cliffs NCA Acquisition                    IVIS# L200107
St. George Field Office              (UTU-95204)                    December 3, 2020

## SECTION 3 – PERFORMANCE & SUBMISSION REQUIREMENTS

Although Washington County contracts with and dispenses payment to the independent contract appraiser, ***AVSO remains the sole client***. The contract appraiser may not provide assignment results to any other party (including Washington County), unless and until directed to do so in writing by the AVSO review appraiser. This assignment condition is memorialized in every non-Federal party payment Statement of Work. Violation of this requirement may disqualify the contract appraiser from future AVSO assignments.

Washington County must engage the appraiser to perform the work defined in this Statement of Work and provide the Review Appraiser a copy of the signed letter of engagement. Upon receipt of the agreement between the appraiser and Washington County, the Review Appraiser will provide the appraiser an AVSO Non-Federal Payment letter of engagement providing the terms under which the appraiser is authorized to perform the valuation service on behalf of AVSO. The AVSO Statement of Work, other assignment instructions, and the AVSO engagement letter must be included as addenda to the appraisal report.

Any questions regarding appraisal instructions and/or technical requirements for this solicitation assignment should be addressed to the AVSO Review Appraiser named in Section 4, where contact information for the property owner, Washington County, and the BLM is also provided.

**Performance**

The target date of delivery of the initial appraisal report to the AVSO Review Appraiser will be negotiated between the private party and the appraiser. Appraiser must provide the appraisal services within the performance period specified, and/or otherwise state an alternative date of completion. The target date of delivery must be provided to the assigned AVSO Review Appraiser.

The appraisal report submitted will be reviewed by the AVSO Review Appraiser for compliance with the terms of this Statement of Work, *UASFLA*, *USPAP*, and the Uniform Act (PL 91-646) within thirty (30) calendar days of receipt.

Review comments and/or suggestions, if any, will be provided to the appraiser, and to the extent that changes and/or corrections are required, the contract appraiser shall complete such revisions within fifteen (15) calendar days.

Once the report is reviewed and approved by AVSO, AVSO will notify Washington County that the appraisal has been approved for agency use, and the appraiser shall submit one signed final report along with a digital version (locked for editing, but searchable and with copying enabled) to the AVSO Review Appraiser.

The appraisal report and all information furnished to the appraiser are DOI internal documents and are to be considered confidential by the appraiser.  All requests for information concerning the appraisal must be referred to the AVSO Review Appraiser.

**Payment**

Payment is the sole responsibility of the private party identified below. Payment arrangements for this assignment are between the real estate appraiser and Washington County.  Neither the U.S. Department of the Interior nor its Appraisal and Valuation Services Office (AVSO) is responsible for payment for this appraisal assignment. ***AVSO is the client, even though Washington County is paying for the appraisal service.***

© 2021 CBRE, Inc.

## SECTION 4: APPRAISAL ASSIGNMENT CONTACTS

**Review Appraiser:**

Any questions regarding appraisal instructions and/or technical requirements for this solicitation should be submitted in writing via e-mail and addressed to the AVSO Review Appraiser. The AVSO Review Appraiser for this assignment is:

> **Steven C. Groh, MAI,** Review Appraiser
> DOI – Appraisal and Valuation Services Office (AVSO)
> One Denver Federal Center, Building 46, Suite 102
> PO Box 25247
> Denver, CO  80225
> Office:       303-969-5367
> iPhone:     303-229-5060
> Facsimile: 303-969-5503
> Email:        steven_groh@ios.doi.gov

**Client Bureau Contact:**

> **Stephanie Trujillo**, Realty Specialist
> BLM Utah-Intermountain Region 7
> St George Field Office
> 345 E Riverside Dr.
> St George UT 84790
> *teleworking available by email
> 435-688-3343

**Non-Federal Party Contact:**

Any evaluation, performance, or delivery criteria will be issued directly through and by the private party, Washington County. Payment arrangements for this assignment are between the real estate appraiser and the following private party:

> **Eric Clarke,** Washington County Attorney
> Office:       435.986.2605
> Address:    33 North 100 West
>                    St George, UT 84770
> E-mail:       Eric.Clarke@wcattorney.com

© 2021 CBRE, Inc.

Addendum C

# TITLE REPORT

© 2021 CBRE, Inc.



Thank you for the opportunity to be of service! Your commitment for title insurance is attached. Please contact your real estate agent or our office if you have any questions.

| | |
|---|---|
| **File #** | 213147 |
| **Property** | (Not Yet Addressed / Unimproved Land), Washington County, Utah |
| **Buyer(s)** | United States of America |
| **Seller(s)** | James P. Doyle |
| **Escrow Team** | Brad Seegmiller - Escrow Agent (435) 652-4829 \| brad@sutc.com |
| | Taylor Whiting - Escrow Team Member (435) 656-6278 \| taylor@sutc.com |
| | Office Address: 20 N. Main Street #300, St. George, UT 84770 |



## WARNING! DON'T BECOME A VICTIM OF FRAUD.

Due to the recent rise in cybercrime sweeping the real estate industry, we want you to be aware of the following important information: There have been many instances of real estate agents', brokers', attorneys' and/or consumers' email addresses being hacked/phished. The cyber-criminals forward bogus wire instructions, redirecting deposits and/or cash to close to a fraudulent bank account. Once received, the money is quickly sent offshore, where it is difficult if not impossible to retrieve.

© 2021 CBRE, Inc.

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

### COMMITMENT FOR TITLE INSURANCE
### ISSUED BY
### SOUTHERN UTAH TITLE COMPANY
### AUTHORIZED AGENT FOR OLD REPUBLIC TITLE INSURANCE COMPANY, INSURER

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, *Southern Utah Title Company* (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### COMMITMENT CONDITIONS

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



*For reference only:*

© 2021 CBRE, Inc.

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

1. **DEFINITIONS**
   (a)  "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b)  "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c)  "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d)  "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e)  "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f)  "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g)  "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h)  "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a)  the Notice;
   (b)  the Commitment to Issue Policy;
   (c)  Schedule A;
   (d)  Schedule B, Part I—Requirements;
   (e)  Schedule B, Part II—Exceptions; and
   (f)  a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



© 2021 CBRE, Inc.

**American Land Title Association**                                        **Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

**5.**     **LIMITATIONS OF LIABILITY**

(a)     The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:

(i)     comply with the Schedule B, Part I—Requirements;

(ii)    eliminate, with the Company's written consent, any Schedule B, Part II— Exceptions; or

(iii)   acquire the Title or create the Mortgage covered by this Commitment.

(b)     The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

(c)     The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

(d)     The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

(e)     The Company shall not be liable for the content of the Transaction Identification Data, if any.

(f)     In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

(g)     In any event, the Company's liability is limited by the terms and provisions of the Policy.

**6.**     **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**

(a)     Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

(b)     Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

(c)     Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

(d)     The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

(e)     Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

(f)     When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.**     **IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

*This page is only a part of a 2016 ALTA ® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



*For reference only:*
Page 3 | Commitment Number: 213147

 © 2021 CBRE, Inc.

**American Land Title Association**

**Commitment for Title Insurance**
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

8. **PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9. **ARBITRATION**

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Policy Amount is $2,000,000 or less shall be arbitrated at the option of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at <http://www.alta.org/arbitration>.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



*For reference only:*
Page 4 | Commitment Number: 213147

American Land Title Association

Commitment for Title Insurance
**Adopted 08-01-2016**
**Technical Corrections 04-02-2018**

*Transaction Identification Data for reference only:*
Commitment Number: 213147
Escrow Agent: Brad Seegmiller
Escrow Agent Utah License Number: 73873
Escrow Agent Contact: (435) 652-4829 | brad@sutc.com
Searcher: Gary Christensen
Searcher Utah License Number: 90925
Property Land Type: Vacant Land
Property Address: (Not Yet Addressed / Unimproved Land), Washington County, Utah
US Policy



### SCHEDULE A

1.  Commitment Date: August 7, 2020 at 7:00AM

2.  Policy to be issued:
    (a)   ALTA U.S. Policy 09-28-1991 (Revised 12-03-2012)
          Proposed Insured: **United States of America**
          Proposed Policy Amount: **$1,000.00**                Premium: **$200.00**

3.  The estate or interest in the Land described or referred to in this Commitment is **FEE SIMPLE**.

4.  The Title is, at the Commitment Date, vested in:
    **James P. Doyle**

5.  The Land, situated in Washington County, Utah, is described as follows:

    See attached Exhibit A-Legal Description

**Southern Utah Title Company**                    **Authorized Agent for Insurer**

By:  _____
          *Authorized Signatory*

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



*For reference only:*

## EXHIBIT A
### Legal Description

BEGINNING AT THE NORTH QUARTER (1/4) CORNER OF SECTION 8, TOWNSHIP 42 SOUTH, RANGE 15 WEST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE S 88°37'52" E ALONG THE NORTH LINE OF SAID SECTION 2694.40 FEET TO THE NORTHEAST CORNER OF SAID SECTION; THENCE S 1°19'07" W ALONG THE EAST LINE OF SAID SECTION 1989.90 FEET; THENCE N 88°43'56" W 824.18 FEET; THENCE S 1°20'06" W 665.27 FEET TO A POINT ON THE CENTER SECTION LINE OF SAID SECTION; THENCE S 1°21'42" W 2661.38 FEET TO A POINT ON THE SOUTH LINE OF SECTION SAID SECTION; THENCE N 88°49'37" W ALONG THE SOUTH LINE OF SAID SECTION 862.07 FEET; THENCE S 1°15'45" W 333.21 FEET; THENCE N 88°51'28" W 1012.04 FEET TO THE CENTER OF SECTION 17; THENCE N 1°15'14" E 333.75 FEET TO THE SOUTH QUARTER (1/4) CORNER OF SAID SECTION; THENCE N 1°23'04" E ALONG THE CENTER SECTION LINE OF SAID SECTION 2662.73 FEET TO THE COMMON CORNER OF FRACTIONAL LOTS 6, 7, 10, AND 11; THENCE N 1°23'04" E ALONG SAID CENTER SECTION LINE 2661.69 FEET TO THE POINT OF BEGINNING.

LESS AND EXCEPTING THEREFROM the following described property as conveyed to the United States of America by Warranty Deed recorded as Doc. No. 20160036753 , Official Washington County Records, more particularly described as follows:

A parcel of land situated in Government Lot 2 of Section 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, being more particularly described as follows:

BEGINNING at the 1/4 Section corner of Sections 8 and 17, Township 42 South, Range 15 West, Salt Lake Base and Meridian, Utah, marked with a stone as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, identical with South Quarter (1/4) corner of Section 8, as described in Document No. 20150002700;

THENCE, South 88°49'37" East, on the line between Sections 8 and 17, a distance of 1029.84 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the POINT OF BEGINNING as described in Document No. 20060046423, filed October 6, 2006, in the Official Records of Washington County, Utah.

THENCE, South 1°10'23" West, a distance of 380.50 feet, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, identical with the Southwest corner of the portion of Lot 2 described in Document No. 20060046423, and at intersection with the North boundary of the parcel described in Document No. 840052, filed September 11, 2003, in the Official Records of Washington County, Utah.

THENCE, North 88°57'01" West, a distance of 1030.38 feet, along a line, identical with the North boundary of the parcel described in Document No. 840052, to a point, as described by R.R. Hermandson, PLS No. 6362432, Record of Survey Plat dated September, 2016, marked with 5/8 inch rebar with cap marked Bush & Gudgell, at intersection with the North and South centerline of Section 17;

THENCE, North 1°15'14" East, along North and South centerline of Section 17, a distance of 382.72 feet, to the POINT OF BEGINNING.

*** 

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



© 2021 CBRE

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

**SCHEDULE B, PART I**
**Requirements**

All of the following Requirements must be met:

1.  Pay the agreed amounts for interest in the land and/or the mortgage or deed of trust to be insured.

2.  Pay us the premiums, fees and charges for the policy. In the event the transaction for which this commitment is furnished cancels, the minimum cancellation fee will be $120.00.

3.  Provide us with releases, reconveyances or other instruments, acceptable to us, including payment of any amounts due, removing the encumbrances shown in Schedule B - Section 2 that are objectionable to the proposed insured.

4.  Provide us with copies of appropriate agreements, resolutions, certificates, or other evidence needed to identify the parties authorized to execute the documents creating the interest to be insured.

5.  The documents creating the interest to be insured must be signed, delivered and recorded.

6.  You must tell us in writing the name of anyone not referred to in this Commitment who will receive an interest in, or who will make a loan secured by a deed of trust or mortgage secured by, the land described in this Commitment.

7.  Upon receipt and review of the necessary information listed in these requirements and related to this transaction, we reserve the right to add requirements to this Schedule or add special exceptions in Schedule B - Section 2.

8.  Provide us with any information regarding personal property taxes which may have been assessed or are due and payable which could become a lien on the real property.

9.  This Company will require the following, if necessary, to insure a loan by or conveyance from, the entity named herein: A. A copy of the Partnership Agreement, Articles of Organization, Operating Agreement and Corporation Resolution, together with all supplements or amendments thereto. B. Evidence that the entity is in good standing in the State where it was formed. C. A copy of the Trust Agreement and any amendments thereto.

10. Require assessment check with the existing Municipality and proof or full satisfaction that all Special Improvement Districts and/or Special Service Districts affecting said property be paid in full or paid current.

11. Require Acceptance and Acknowledgment of the Lack of Access, as shown on Schedule B - Section 2.

12. Require satisfactory evidence that the Special Service District (SSD) and/or Special Improvement District (SID) shown on Schedule B - Section 2, be paid current and/or paid in full.

13. Release, Reconveyance, Satisfaction or Subordination of the Deed of Trust, and Signed Authorization to Close Account (where applicable) signed by the Trustor(s), recorded as Doc. No. 20150039382 , as shown on Schedule B - Section 2.

14. Require full Satisfaction of the Judgment shown on Schedule B - Section 2, under Case No. 196504175, recorded as Doc. No. 20200002581 and as Doc. No. 20200010716 , or provide Satisfactory evidence that the Judgment Debtor shown thereon and the Vestee/Proposed Insured shown herein on Schedule A are not one and the same person/entity.

15. Require Release, Satisfaction or Acceptance of the Notice of Levy of Real Property under Civil No. 196504175, recorded as Doc No. 20200036240 , as shown on Schedule B - Section 2.

16. Require Release, Satisfaction or Acceptance of the Writ of Execution under Civil No. 196504175, recorded as Doc No. 20200036241 , as shown on Schedule B - Section 2.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA
members in good standing as of the date of use. All other uses are prohibited. Reprinted under
license from the American Land Title Association.



*For reference only:*
© 2021 CBRE
Page 7 | Commitment Number: 213147

\*\*\*

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

© 2021 CBRE

***For reference only:***

American Land Title Association

Commitment for Title Insurance
Adopted 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any facts, rights, interests, or claims which are not shown by the public records but which could be by an inspection of the land or which may be asserted by persons in possession, or claiming be in possession, thereof.

2. Easements, liens, encumbrances, or claims thereof, which are not shown by the public records.

3. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey of the land would disclose, and which are not shown by the public records.

4. Any lien, or right to a lien, imposed by law for services, labor, or material heretofore or hereafter furnished, which lien, or right to a lien, is not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) Indian treaty or aboriginal rights, including, but not limited to, easements or equitable servitudes; or, (d) water rights, claims or title to water, whether or not the matters excepted under (a), (b), (c) or (d) are shown by the public records.

6. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

7. Any service, installation, connection, maintenance or construction charges for sewer, water, electricity, or garbage collection or disposal or other utilities unless shown as an existing lien by the public records.

8. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the records or attaching subsequent to the effective date hereof but prior to the date the proposed acquires of record for value the estate or interest or mortgage thereon covered by this Commitment.

9. Claim, right, title or interest to water or water rights whether or not shown by the Public Records.

10. Rights of way for any roads, ditches, canals, or transmission lines now existing over, under, or across said property.

11. Taxes for the current year 2020, which are liens, but not yet due or payable in the estimated amount of $17,157.77, under Tax Serial No. 6600-NP-1, Account No. 0179013. (For the amount due contact the Washington County Treasurer's Office at #435-634-5711)

12. Subject to any of the herein described land affected by the United States Fish and Wildlife Services designation as critical Tortoise Habitat.

13. Less and Excepting therefrom all oil, gas and other mineral rights and rights incidental thereto. No report is hereby given as to matters affecting said oil, gas and mineral rights.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

© 2021 CBRE

*For reference only:*

American Land Title Association

14.   The herein described premises do not appear to abut a public road or highway. The Policy will not insure either access or access rights or title to adjoining property which would provide access to a public road or highway.

15.   Subject to any Reservations, Exceptions and Easements as set forth on State of Utah Patent, recorded June 14, 1990, as Entry No. 366814 , in Book 563, at Page 736, Official Washington County Records.

16.   Resolution, dated July 25, 1978, creating the Washington County Special Service District No. 1, for solid waste disposal, including the power to assess a lien upon the property herein-described, as recorded March 14, 1994, as Entry No. 460755 , in Book 802, at Pages 292-304, Official Washington County Records. (Affects All unincorporated areas of Washington County)

17.   Subject to a Use Agreement Pertaining to Construction and Maintenance of Adjoining Power Line, dated June 18, 2003, executed by and between PacifiCorp, an Oregon Corporation, doing business in Utah as Utah Power & Light Company and Dixie Escalante Rural Electric Association, Inc., a Utah Corporation, recorded June 27, 2003, as Entry No. 827112 , in Book 1558 at Page(s) 2302 - 2310, Official Washington County Records. (Affects this and other property)

18.   Deed of Trust With Assignment of Rents, dated November 6, 2015, executed by JAMES P. DOYLE, as TRUSTOR, to SOUTHERN UTAH TITLE COMPANY, as TRUSTEE, in favor of ROBERT M. BRENNAN, as BENEFICIARY, to secure the payment of $1,000,000.00 and interest, recorded November 10, 2015, as Doc No. 20150039382 , Official Washington County Records. (Affects this and other property)

Said Deed of Trust has been Reconveyed as to the other property by Deed of Partial Reconveyance, recorded October 5, 2016, as Doc. No. 20160037138 , Official Washington County Records.

19.   Judgment, as disclosed by Judgment Information Statement filed in the Fifth Judicial District Court of Utah in and For Washington County, entitled KDB Finance, LLC v. James Doyle, naming KDB Finance, LLC, as Judgment Debtor, in the amount of $1,100,258.65, under Case No. 196504175, recorded January 16, 2020, as Doc. No. 20200002581 , Official Washington County Records.

Judgment, as disclosed by Amended Judgment Information Statement filed in the Fifth Judicial District Court of Utah in and For Washington County, entitled KDB Finance, LLC, a Wyoming Limited Liability Company v. James Doyle, an individiual, naming James P. Doyle, as Judgment Debtor, in the amount of $1,169,277.63, under Case No. 196504175, recorded March 2, 2020, as Doc. No. 20200010716 , Official Washington County Records.

20.   Notice of Levy of Real Property, filed in the Fifth Judicial District Court in and For Washington County, State of Utah, entitled KDB Finance, LLC, a Utah Limited Liability Company, as Plaintiff v. James Doyle, an individual, as Defendant, under Civil No. 196504175, recorded July 14, 2020, as Doc No. 20200036240 , Official Washington County Records.

21.   Writ of Execution, filed in the Fifth Judicial District Court in and For Washington County, State of Utah, entitled KDB Finance, LLC, a Utah Limited Liability Company, as Plaintiff v. James Doyle, an individual, as Defendant, under Civil No. 196504175, recorded July 14, 2020, as Doc No. 20200036241 , Official Washington County Records.

Exceptions 1-8 will not appear in any Extended Policy and Exceptions 1-10 will not appear in any Extended Loan Policy to be issued hereunder.

Note: The names on Schedule A have been checked for judgments and, if any were found, are disclosed on Schedule B of this Commitment .

***

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance . This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

© 2021 CBRE



rev. 07/2016

| **FACTS** | WHAT DOES OLD REPUBLIC TITLE<br>DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| | |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and employment information<br>• Mortgage rates and payments and account balances<br>• Checking account information and wire transfer instructions<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Old Republic Title chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Old Republic Title share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), or respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —**<br>to offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes —**<br>information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —**<br>information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For non-affiliates to market to you** | No | We don't share |

| Questions | Go to **www.oldrepublictitle.com** (*Contact Us*) |
|---|---|

© 2021 CBRE, Inc.

| Who we are | |
| --- | --- |
| Who is providing this notice? | Companies with an Old Republic Title name and other affiliates.  Please see below for a list of affiliates. |

| What we do | |
| --- | --- |
| How does Old Republic Title protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.  For more information, visit http://www.OldRepublicTitle.com/newnational/Contact/privacy. |
| How does Old Republic Title collect my personal information? | We collect your personal information, for example, when you:<br>• Give us your contact information or show your driver's license<br>• Show your government-issued ID or provide your mortgage information<br>• Make a wire transfer<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only:<br>• Sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for non-affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing.  See the "Other important information" section below for your rights under state law. |

| Definitions | |
| --- | --- |
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with an Old Republic Title name, and financial companies such as Attorneys' Title Fund Services, LLC, Lex Terrae National Title Services, Inc., Mississippi Valley Title Services Company, and The Title Company of North Carolina.* |
| Non-affiliates | Companies not related by common ownership or control. They can be financial and non-financial companies.<br>• *Old Republic Title does not share with non-affiliates so they can market to you* |
| Joint marketing | A formal agreement between non-affiliated financial companies that together market financial products or services to you.<br>• *Old Republic Title doesn't jointly market.* |

© 2021 CBRE, Inc.

## Other Important Information

Oregon residents only:  We are providing you this notice under state law.  We may share your personal information (described on page one) obtained from you or others with non-affiliate service providers with whom we contract, such as notaries and delivery services, in order to process your transactions.  You may see what personal information we have collected about you in connection with your transaction (other than personal information related to a claim or legal proceeding).  To see your information, please click on "Contact Us" at www.oldrepublictitle.com and submit your written request to the Legal Department.  You may see and copy the information at our office or ask us to mail you a copy for a reasonable fee.  If you think any information is wrong, you may submit a written request online to correct or delete it.  We will let you know what actions we take.  If you do not agree with our actions, you may send us a statement.

## Affiliates Who May be Delivering This Notice

| | | | | |
|---|---|---|---|---|
| American First Abstract, LLC | American First Title & Trust Company | American Guaranty Title Insurance Company | Attorneys' Title Fund Services, LLC | Compass Abstract, Inc. |
| eRecording Partners Network, LLC | Genesis Abstract, LLC | Kansas City Management Group, LLC | L.T. Service Corp. | Lenders Inspection Company |
| Lex Terrae National Title Services, Inc. | Lex Terrae, Ltd. | Mara Escrow Company | Mississippi Valley Title Services Company | National Title Agent's Services Company |
| Old Republic Branch Information Services, Inc. | Old Republic Diversified Services, Inc. | Old Republic Exchange Company | Old Republic National Title Insurance Company | Old Republic Title and Escrow of Hawaii, Ltd. |
| Old Republic Title Co. | Old Republic Title Company of Conroe | Old Republic Title Company of Indiana | Old Republic Title Company of Nevada | Old Republic Title Company of Oklahoma |
| Old Republic Title Company of Oregon | Old Republic Title Company of St. Louis | Old Republic Title Company of Tennessee | Old Republic Title Information Concepts | Old Republic Title Insurance Agency, Inc. |
| Old Republic Title, Ltd. | Republic Abstract & Settlement , LLC | Sentry Abstract Company | The Title Company of North Carolina | Title Services, LLC |
| Trident Land Transfer Company, LLC | | | | |

© 2021 CBRE, Inc.

<u>**SOUTHERN UTAH TITLE COMPANY**</u>
**July 1, 2001**

We recognize and respect the privacy expectations of today's consumers and the requirements of applicable federal and state privacy laws. We believe that making you aware of how we use your non-public personal information ("Personal Information"), and to whom it is disclosed, will form the basis for a relationship of trust between us and the public that we serve. This Privacy Statement provides that explanation. We reserve the right to change this Privacy Statement from time to time consistent with applicable privacy laws.

**In the course of our business, we may collect Personal Information about you from the following sources:**

- From applications or other forms we receive from you or your authorized representative;
- From your transactions with, or from the services being performed by, us, our affiliates, or others;
- From our Internet web sites;
- From the public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others; and
- From consumer or other reporting agencies

**Our Policies Regarding the Protection of the Confidentiality and Security of Your Personal Information**

We maintain physical, electronic and procedural safeguards to protect your Personal Information from unauthorized access or intrusion. We limit access to the Personal Information only to those employees who need such access in connection with providing products or services to you or for other legitimate business purposes.

**Our Policies and Practices Regarding the Sharing of Your Personal Information**

We may share your Personal Information with our affiliates, such as insurance companies, agents, and other real estate settlement service providers. We also may disclose your Personal Information:

- to agents, title companies, exchange companies, appraisers, brokers or representatives to provide you with services you have requested;
- to third-party contractors or service providers who provide services or perform marketing or other functions on our behalf; and
- to others with whom we enter into joint marketing agreements for products or services that we believe you may find of interest.

In addition, we will disclose your Personal Information when you direct or give us permission, when we are required by law to do so, or when we suspect fraudulent or criminal activities. We also may disclose your Personal Information when otherwise permitted by applicable privacy laws such as, for example, when disclosure is needed to enforce our rights arising out of any agreement, transaction or relationship with you.

One of the important responsibilities is to record documents in the public domain. Such documents may contain your Personal Information.

**Right to Access Your Personal Information and Ability To Correct Errors Or Request Changes or Deletion**

Certain states afford you the right to access your Personal Information and, under certain circumstances, to find out to whom your Personal Information has been disclosed. Also, certain states afford you the right to request correction, amendment or deletion of your Personal Information. We reserve the right, where permitted by law, to charge a reasonable fee to cover the costs incurred in responding to such requests.

All requests must be made in writing to the following address:

Privacy Compliance Officer
Southern Utah Title Company
20 North Main #403, St. George, UT 84770

**Multiple Products or Services**

If we provide you with more than one financial product or service, you may receive more than one privacy notice from us. We apologize for any inconvenience this may cause you.

© 2021 CBRE, Inc.



## SECTION 8
### T 42 S — R 15 W
SALT LAKE BASE & MERIDIAN
SCALE: ONE INCH—400 FEET
### WASHINGTON COUNTY, UTAH

This map is for information purposes only and is in no way to be incorporated as being part of this Commitment and/or Title Insurance Policy

© 2021 CBRE, Inc.

Addenda

Addendum D

# QUALIFICATIONS

© 2021 CBRE, Inc.

# Richard C. Smith, MAI, AI-GRS, ASA

*Director, Salt Lake City | Las Vegas*

**CBRE**



Telephone     702.933.6760
Mobile         435.668.0056
Rick.Smith1@cbre.com

222 South Main St, 4th Floor
Salt Lake City, UT 84101

3993 Howard Hughes Pkwy
Suite 700
Las Vegas, NV 89169

169 W 2710 S Cir, Ste. 204E
St. George, UT 84790

## Clients Represented

- Zions Bancorp
- Western Alliance Bank
- Nevada State Bank
- U.S. Bank
- California Bank & Trust
- Bank of Arizona
- Department of Interior
- Bank of the West
- American First Credit Union
- Mutual of Omaha Bank
- Alaska USA Bank
- First Security Bank
- Chemical Bank
- Bank of George
- State Bank of Southern Utah
- Hamni Bank
- TBank
- The Conservation Fund
- The Nature Conservancy

© 2021 CBRE, Inc.

## Professional Experience

Richard C. Smith is a Director and Senior Real Estate Analyst with over 30 years of experience in real estate appraisal and consulting. Mr. Smith's experience includes a wide variant of property types including C-stores and gas stations, restaurants, bars/taverns, movie theaters, glamping facilities, hospitality properties, master planned communities, ranches and large land tracts, conservation easements, charter and private schools, senior housing, Section 8 and LIHTC apartments.

Mr. Smith's has geographical experience in Nevada, Utah, Arizona, Idaho, New Mexico, and in California along the Colorado River communities. Prior to joining CBRE in 2019, Mr. Smith was president of RCS Appraisal, Inc., a regional real estate appraisal firm serving the southwest region for over 20 years.

Mr. Smith entered the appraisal profession in 1986 in Phoenix, Arizona, where he was employed by Burke Hansen, Inc. In 1990, he was employed by Security Pacific Bank, where he began a six-year tenure working for several regional and national banks in various appraisal policy and management capacities, including Bank of America and U.S. Bancorp. In 1996, Mr. Smith left the banking profession working for nearly two years with the accounting firm of Piercy, Bowler, Taylor & Kern in Las Vegas as a manager in their real estate, hospitality, and gaming valuation division.

## Professional Affiliations / Accreditations

- Appraisal Institute – Designated Appraiser (MAI)
- Appraisal Institute – Designated Appraiser (AI-GRS)
- American Society of Appraisers – Designated Appraiser (ASA)
- Nevada Certified General Real Estate Appraiser (License No. A.0000135-CG)
- Arizona Certified General Real Estate Appraiser (License No. 30558)
- Utah Certified General Real Estate Appraiser (License No. 5450513-CG00)
- Idaho Certified General Real Estate Appraiser (License No. CGA-4041)
- New Mexico Certified General Real Estate Appraiser (License No. 03576-G)

## Education

- Arizona State University, Bachelor of Arts – Foreign Language (Spanish)
    - Graduate Study – Instructional Design
- Brigham Young University – Undergraduate Study – Organizational Communications & Foreign Language

## Specialized Training

Appraising Convenience Stores | Allocating Components in Going Concerns | Valuation of Conservation Easements | Fundamentals of Separating Real Property, Personal Property, an Intangible Business Assets | Uniform Appraisal Standards for Federal Land Acquisitions (Yellow Book) | Appraisal Review Theory

# STATE OF UTAH
# DEPARTMENT OF COMMERCE
# DIVISION OF REAL ESTATE

## ACTIVE LICENSE



**DATE ISSUED:** 08/21/2019

**EXPIRATION DATE:** 10/31/2021

**LICENSE NUMBER:** 5450513-CG00

**LICENSE TYPE:** Certified General Appraiser

**ISSUED TO:** RICHARD C SMITH
1742 COTTAM COURT
SAINT GEORGE UT 84790

_____
SIGNATURE OF HOLDER

_____
REAL ESTATE DIVISION DIRECTOR

© 2021 CBRE, Inc.

Form #2